Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' APPLICATION FOR
## ENTRY OF AN ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF AUGUST 2, 2020

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this application (the "Application") for the entry of an order (the "Order"), substantially in the

form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at http://cases.stretto.com/LeTote.  The location of the Debtors' service address is
250 Vesey Street, 22nd Floor, New York, New York 10281.

LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date (as defined herein).  In support of this Application, the Debtors submit the declaration of Steven N. Serajeddini, the president of Steven N. Serajeddini, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP, (the "Serajeddini Declaration"), which is attached hereto as **Exhibit B** and the declaration of Michael O. van den Berg, the General Counsel of Le Tote, Inc., which is attached hereto as **Exhibit C** (the "van den Berg Declaration").  In further support of this Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 13, 1984.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "BankruptcyCode"), Bankruptcy Rules 2014(a) and 2016, and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

**Background**

4.      On August 2, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 3, 2020, the Court entered an order [Docket No. 72] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On August 12, 2020, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 117].

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Ed Kremer, Chief Restructuring Officer, of Le Tote, Inc., in Support of Chapter 11 Petitions and First Day Motions*, filed on the Petition Date [Docket No. 15], incorporated herein by reference.

**Relief Requested**

6.      By this Application, the Debtors seek entry of the Order authorizing the retention and employment of Kirkland as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Kirkland effective as of March 24, 2020 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit 1 to **Exhibit A** and incorporated herein by reference.

**Kirkland's Qualifications**

7.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

8.      Kirkland has been actively involved in major chapter 11 cases and has represented

debtors in many cases, including, among others:  *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr.

E.D. Va. July 1, 2020); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va.

Mar. 18, 2020); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Sept. 18, 2017);

and *In re The Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017).[2]

9.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' businesses and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  The Debtors believe that Kirkland is both

well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient

and timely manner.

## Services to be Provided

10.     Subject to further order of the Court, and consistent with the Engagement Letter,

the Debtors request the retention and employment of Kirkland to render the following legal

services:

  a.    advising the Debtors with respect to their powers and duties as debtors in
        possession in the continued management and operation of their businesses
        and properties;

  b.    advising and consulting on the conduct of these chapter 11 cases, including
        all of the legal and administrative requirements of operating in chapter 11;

  c.    attending meetings and negotiating with representatives of creditors and
        other parties in interest;

  d.    taking all necessary actions to protect and preserve the Debtors' estates,
        including prosecuting actions on the Debtors' behalf, defending any action
        commenced against the Debtors, and representing the Debtors in
        negotiations concerning litigation in which the Debtors are involved,
        including objections to claims filed against the Debtors' estates;

---

[2]     Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application.
        Copies of these orders are available upon request to Kirkland.

e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.     performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

**Professional Compensation**

11.     Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

5

12.     Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13.     Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[3]

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $1,075-$1,845 |
| Of Counsel | $625-$1,845 |
| Associates | $610-$1,165 |
| Paraprofessionals | $245-$460 |

14.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5]

---

[3]     For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[4]     Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[5]     For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and the Committee before implementing any periodic increases, and shall file any such notice with the Court.

15.    Kirkland represented the Debtors during the 12-month period before the Petition Date, using the hourly rates listed above and in the Serajeddini Declaration. Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16.    The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

17.    It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

19.    Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal

7

research.  Computer-assisted legal research is used whenever the researcher determines that using

Westlaw is more cost effective than using traditional (non-computer assisted legal research)

techniques.

### Compensation Received by Kirkland from the Debtors

20.     Per the terms of the Engagement Letter, on March 30, 2020, the Debtors paid

$500,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment

retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v.

Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007).  Subsequently, the Debtors paid

to Kirkland additional advance payment retainer totaling approximately $3,014,536.32 in the

aggregate.  As stated in the Engagement Letter, any advance payment retainer is earned by

Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon

receipt, the Debtors no longer have a property interest in any advance payment retainer upon

Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and

will not be held in a client trust account, and the Debtors will not earn any interest on any advance

payment retainer.[6]  A chart identifying the statements setting forth the professional services

provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection

therewith, as well as the advance payment retainer transferred by the Debtors to Kirkland, prior to

the Petition Date is set forth in the Serajeddini Declaration.

21.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to

share (a) any compensation it has received or may receive with another party or person, other than

---

[6]    The Engagement Letter permits Kirkland to retain any prepetition advance payment retainer held by Kirkland as
of the Petition Date rather than applying such prepetition advance payment retainer to pay postpetition fees and
expenses.  In light of the facts and circumstances of these chapter 11 cases, Kirkland will retain any prepetition
advance payment retainer held by Kirkland as of the Petition Date and will not apply any such amounts to
postpetition fees and expenses.

with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.     As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Kirkland's advance payment retainer, the amount of Kirkland's advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

## Kirkland's Disinterestedness

23.     To the best of the Debtors' knowledge and as disclosed herein and in the Serajeddini Declaration, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Serajeddini Declaration.

24.     Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

25.     The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

[M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.    Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

27.    The Debtors submit that for all the reasons stated above and in the Serajeddini Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted.  Further, as stated in the Serajeddini Declaration, Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Serajeddini Declaration.

**Notice**

28.    The Debtors have provided notice of this Application to the following parties: (a) the U.S. Trustee, Attn:  Kathryn R. Montgomery and Lynn A. Kohen; (b) proposed counsel to the Committee; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) counsel to HBC US Holdings LLC and HBC US Propco Holdings LLC; (e) the Internal Revenue Service; (f)  the office of the attorneys general for the states in which the Debtors operate;

10

(g) the United States Attorney's Office for the Eastern District of Virginia; (h) the Securities and

Exchange Commission; (i) the National Association of Attorneys General; and (j) any party that

has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  A

copy of this Application is also available on the website of the Debtors' notice and claims agent at

https://cases.stretto.com/LeTote.  In light of the nature of the relief requested, the Debtors submit

that no other or further notice is required.

### No Prior Request

29.    No prior request for the relief sought in this Application has been made to this or

any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  August 24, 2020                    */s/ Michael O. van den Berg*
Richmond, Virginia                         Michael O. van den Berg
                                           Le Tote, Inc.
                                           General Counsel


Dated:  August 24, 2020

*/s/ Jeremy S. Williams*
**KUTAK ROCK LLP**                         **KIRKLAND & ELLIS LLP**
Michael A. Condyles (VA 27807)             **KIRKLAND & ELLIS INTERNATIONAL LLP**
Peter J. Barrett (VA 46179)                Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Jeremy S. Williams (VA 77469)              601 Lexington Avenue
Brian H. Richardson (VA 92477)             New York, New York 10022
901 East Byrd Street, Suite 1000           Telephone:    (212) 446-4800
Richmond, Virginia 23219-4071              Facsimile:    (212) 446-4900
Telephone: (804) 644-1700                  Email:         steven.serajeddini@kirkland.com
Facsimile:  (804) 783-6192
Email:      Michael.Condyles@KutakRock.com   -and-
            Peter.Barrett@KutakRock.com
            Jeremy.Williams@KutakRock.com    **KIRKLAND & ELLIS LLP**
            Brian.Richardson@KutakRock.com   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                           David L. Eaton (admitted *pro hac vice*)
*Proposed Co-Counsel to the Debtors*       Jaimie Fedell (admitted *pro hac vice*)
*and Debtors in Possession*                300 North La Salle Street
                                           Chicago, Illinois 60654
                                           Telephone:    (312) 862-2000
                                           Facsimile:    (312) 862-2200
                                           Email:         david.eaton@kirkland.com
                                                          jaimie.fedell@kirkland.com

                                           *Proposed Co-Counsel to the Debtors*
                                           *and Debtors in Possession*

## <u>EXHIBIT A</u>

**Proposed Order**

Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER AUTHORIZING THE RETENTION AND
## EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF AUGUST 2, 2020

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the

Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
       claims and noticing agent at http://cases.stretto.com/LeTote.  The location of the Debtors' service address is
       250 Vesey Street, 22nd Floor, New York, New York 10281.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

(collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules"); and the Court having reviewed the Application, the declaration of Steven N. Serajeddini, the president of Steven N. Serajeddini, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Serajeddini Declaration"), and the declaration of Michael O. van den Berg, the General Counsel of Le Tote, Inc. (the "van den Berg Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 13, 1984 and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Serajeddini Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal

2

and factual bases set forth in the Application and at the Hearing establish just cause for the relief

granted herein; and any objections to the relief requested herein having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys

effective as of the Petition Date in accordance with the terms and conditions set forth in the

Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as

described in the Application and the Engagement Letter.  Specifically, but without limitation,

Kirkland will render the following legal services:

    a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    b.      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

    c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

    d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

    f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

    g.      advising the Debtors in connection with any potential sale of assets;

h.    appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.    advising the Debtors regarding tax matters;

j.    taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.    performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.    Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.    Kirkland is authorized without further order of the Court to apply amounts from the prepetition advance payment retainer to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practice. At the conclusion of Kirkland's engagement by the Debtors, if the amount of any advance payment retainer held by Kirkland is in excess of the amount of Kirkland's outstanding and estimated fees, expenses, and costs, Kirkland will pay to the Debtors the amount by which any advance payment

4

retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.      Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

8.      Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and the Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

11.     To the extent the Application, the Serajeddini Declaration, the van den Berg Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____
Richmond, Virginia

_____
Keith L. Phillips
United States Bankruptcy Judge

## **EXHIBIT 1**

**Engagement Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

(212) 446-4800

www.kirkland.com

Steven N. Serajeddini
To Call Writer Directly:
(212) 446-5984
steven.serajeddini@kirkland.com

Facsimile:
(212) 446-4900

March 24, 2020

Michael O. van den Berg
General Counsel
250 Vesey Street, 22nd Floor
New York, NW 10281

Re:    Retention to Provide Legal Services

Dear Michael,

We are very pleased that you have asked us to represent Le Tote, Inc. and only those wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with a potential restructuring. Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.** This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties"). This Agreement sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.** The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court). The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client. The Firm's current regular hourly rates range as follows:

| Billing Category | U.S. Range |
| --- | --- |
| Partners | $1,075-$1,845 |
| Of Counsel | $625-$1,845 |
| Associates | $610-$1,165 |
| Paraprofessionals | $245-$460 |

Michael O. van den Berg
March 24, 2020
Page No. 2

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses.**   Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges.  Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties.  By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.**   The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances.  Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.**   Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $250,000.  In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses.  The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred.  Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs.  Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that:  Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests.  The fact that Client

Michael O. van den Berg
March 24, 2020
Page No. 3

has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein).  A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred.  Any unearned funds are then returned to the client.  In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses.  Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement.  Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding.  The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.**  The Engagement may be terminated by either Party at any time by written notice by or to Client.  The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work.  If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal.  If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter.  Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.**  The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must

Michael O. van den Berg
March 24, 2020
Page No. 4

inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.**  All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time.  Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years.  Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction.  It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records.  The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter.  Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")).  Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials.  For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

**Data Protection.**  You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com.  We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

**Conflicts of Interest.**  As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients.  Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution

Michael O. van den Berg
March 24, 2020
Page No. 5

mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement. Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you. You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters. Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to

Michael O. van den Berg
March 24, 2020
Page No. 6

waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding"). The attorney investment entities are passive and have no management or other control rights in such funds or companies. The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter. While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding. Please let us know if Client has any questions or concerns regarding the Passive Holdings. By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**. If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition. If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.** It is impossible to provide any promise or guarantee about the outcome of Client's matters. Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee. Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.** In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

Michael O. van den Berg
March 24, 2020
Page No. 7

**Reimbursement of Fees and Expenses.** Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement. Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding. Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.** Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware. Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.** This Agreement sets forth the Parties' entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding. This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable. Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter

Michael O. van den Berg
March 24, 2020
Page No. 8

(and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing.   Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment.  The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

Michael O. van den Berg
March 24, 2020
Page No. 9

 Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us.  Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

     Very truly yours,

     KIRKLAND & ELLIS LLP

     By: _____

     Steven N. Serajeddini
     Title:  Partner

  Agreed and accepted this 24th day of March, 2020

     Le Tote, Inc.

     By: _____
     Name: _Michael van den Berg_____
     Title: __Senior Vice President and General Counsel__

Michael O. van den Berg
March 24, 2020
Page No. 1


**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2019*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.16 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

Michael O. van den Berg
March 24, 2020
Page No. 2

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges:**  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services:**  Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**:  K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services:**  Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP

Michael O. van den Berg
March 24, 2020
Page No. 3

libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

- **Off-Site Legal Files Storage**: Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**: K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB). If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $4.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of. For e-discovery data on the Relativity platform, K&E LLP will also charge clients $4.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**: Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**: There is no client charge for standard office supplies. Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**: If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**: If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**: Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost. If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client. In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

## <u>EXHIBIT B</u>

**Serajeddini Declaration**

Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF
## STEVEN N. SERAJEDDINI IN SUPPORT OF THE DEBTORS'
## APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF AUGUST 2, 2020

I, Steven N. Serajeddini, being duly sworn, state the following under penalty of perjury:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.stretto.com/LeTote.  The location of the Debtors' service address is 250 Vesey Street, 22nd Floor, New York, New York 10281.

1.      I am the president of Steven N. Serajeddini, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").  I am the lead attorney from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of New York and the State of Illinois, and I have been admitted to practice in New York and Illinois.  There are no disciplinary proceedings pending against me.

2.      I submit this declaration (the "Declaration") in support of the Debtors' *Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of August 2, 2020* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## Kirkland's Qualifications

3.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

4.      Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others:  *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. July 1, 2020); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2

Mar. 18, 2020); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Sept. 18, 2017);

and *In re The Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017).[3]

     5.     In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' businesses and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  I believe that Kirkland is both well-qualified and

uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to Be Provided

     6.     Subject to further order of the Court and that certain engagement letter dated

March 24, 2020 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to Exhibit A

to the Application, the Debtors retained Kirkland to render, without limitation, the following legal

services:

     a.     advising the Debtors with respect to their powers and duties as debtor in possession in the continued management and operation of its businesses and properties;

     b.     advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

     c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

     d.     taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

     e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

---

[3]    Because of the voluminous nature of the orders cited in this Declaration, they are not attached to this Declaration. Copies of these orders are available upon request to Kirkland.

  f.  representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

  g.  advising the Debtors in connection with any potential sale of assets;

  h.  appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

  i.  advising the Debtors regarding tax matters;

  j.  taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

  k.  performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## **Professional Compensation**

7.  Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

4

8.    Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

9.    Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[4]

| Billing Category[5] | U.S. Range |
| --- | --- |
| Partners | $1,075-$1,845 |
| Of Counsel | $625-$1,845 |
| Associates | $610-$1,165 |
| Paraprofessionals | $245-$460 |

10.    Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

---

[4]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[5]    Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[6]    For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of:  (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business days' notice to the Debtors, the U.S. Trustee, and the Committee before implementing any periodic increases, and shall file such notice with the Court.

5

11.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

12.     To ensure compliance with all applicable deadlines in these chapter 11 cases, Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter between Kirkland and the Debtors, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

13.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Kirkland does not charge its clients for incoming facsimile transmissions.  Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research.  Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

**Compensation Received by Kirkland from the Debtors**

14.     Per the terms of the Engagement Letter, on March 30, 2020, the Debtors paid $500,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and  *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007).  Subsequently, the Debtors paid

6

to Kirkland additional advance payment retainer totaling approximately $3,014,536.32 in the aggregate.  As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any advance payment retainer.[7]  A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance payment retainer transferred by the Debtors to Kirkland, prior to the Petition Date is set forth below.

15.    During the 90-day period before the Petition Date, the Debtors paid advance payment retainer in the following amounts to Kirkland:

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Advance Payment Retainer Requested | Amount of Advance Payment Retainer Received | Resulting Advance Payment Retainer Following |
|---|---|---|---|---|---|
| Request for Additional Advance Payment Retainer | May 12, 2020 | | $200,000.00 | | $1,357,049.92 |
| Full Statement | May 13, 2020 | $922,715.62 | | | $434,334.30 |
| Receipt of Additional Advance Payment Retainer | May 14, 2020 | | | $200,000.00 | $634,334.30 |
| Transfer of Funds | May 14, 2020 | | | $14,536.32 | $648,870.62 |
| Request for Additional Advance Payment Retainer | June 2, 2020 | | $250,000.00 | | $648,870.62 |
| Receipt of Additional Advance Payment Retainer | June 3, 2020 | | | $250,000.00 | $898,870.62 |
| Request for Additional Advance Payment Retainer | June 23, 2020 | | $250,000.00 | | $898,870.62 |

---

[7]    The Engagement Letter permits Kirkland to retain any prepetition advance payment retainer held by Kirkland as of the Petition Date rather than applying such prepetition advance payment retainer to pay postpetition fees and expenses.  In light of the facts and circumstances of these chapter 11 cases, Kirkland will retain any prepetition advance payment retainer held by Kirkland as of the Petition Date and will not apply any such amounts to postpetition fees and expenses.

| | | | | | |
|---|---|---|---|---|---|
| Receipt of Additional Advance Payment Retainer | June 24, 2020 | | | $250,000.00 | $1,148,870.62 |
| Request for Additional Advance Payment Retainer | July 13, 2020 | | $300,000.00 | | $1,148,870.62 |
| Full Statement | July 13, 2020 | $715,468.72 | | | $433,401.90 |
| Receipt of Additional Advance Payment Retainer | July 17, 2020 | | | $300,000.00 | $733,401.90 |
| Full Statement | July 27, 2020 | $462,338.72 | | | $271,063.18 |
| Request for Additional Advance Payment Retainer | July 27, 2020 | | $300,000.00 | | $271,063.18 |
| Receipt of Additional Advance Payment Retainer | July 28, 2020 | | | $300,000.00 | $571,063.18 |
| Request for Additional Advance Payment Retainer | July 30, 2020 | | $350,000.00 | | $571,063.18 |
| Receipt of Additional Advance Payment Retainer | July 31, 2020 | | | $350,000.00 | $921,063.18 |
| Full Statement | July 31, 2020 | $280,481.82 | | | $640,581.36 |

16.     As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Kirkland's advance payment retainer, Kirkland's total advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

17.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

### Statement Regarding U.S. Trustee Guidelines

18.     Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the

8

Court.  Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's

requests for information and additional disclosures as set forth in the *Guidelines for Reviewing*

*Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by*

*Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST

Guidelines"), both in connection with this Application and the interim and final fee applications

to be filed by Kirkland in these chapter 11 cases.

### Attorney Statement Pursuant to Revised UST Guidelines

19.        The following is provided in response to the request for additional

information set forth in Paragraph D.1. of the Revised UST Guidelines:

a. **Question**:  Did Kirkland agree to any variations from, or alternatives to,
Kirkland's standard billing arrangements for this engagement?

**Answer**:  No. Kirkland and the Debtors have not agreed to any variations from,
or alternatives to, Kirkland's standard billing arrangements for this
engagement.  The rate structure provided by Kirkland is appropriate and is not
significantly different from (a) the rates that Kirkland charges for other
non-bankruptcy representations or (b) the rates of other comparably skilled
professionals.

b. **Question**:  Do any of the Kirkland professionals in this engagement vary their
rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**:  No. The hourly rates used by Kirkland in representing the Debtors
are consistent with the rates that Kirkland charges other comparable chapter 11
clients, regardless of the location of the chapter 11 case.

c. **Question**:  If Kirkland has represented the Debtors in the 12 months prepetition,
disclose Kirkland's billing rates and material financial terms for the prepetition
engagement, including any adjustments during the 12 months prepetition.  If
Kirkland's billing rates and material financial terms have changed postpetition,
explain the difference and the reasons for the difference.

9

**Answer**: Kirkland's current hourly rates for services rendered on behalf of the Debtors range as follows:[8]

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,075-$1,845 |
| Of Counsel | $625-$1,845 |
| Associates | $610-$1,165 |
| Paraprofessionals | $245-$460 |

Kirkland represented the Debtors from July 19, 2019 through December 31, 2019, using the hourly rates listed below.

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,025-$1,795 |
| Of Counsel | $595-$1,705 |
| Associates | $595-$1,125 |
| Paraprofessionals | $235-$460 |

d.  **Question**:  Have the Debtors approved Kirkland's budget and staffing plan, and, if so, for what budget period?

**Answer**:  Yes, for the period from August 2, 2020 through November 2, 2020.

### Kirkland's Disinterestedness

20.   In connection with its proposed retention by the Debtors in these chapter 11 cases, Kirkland undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Kirkland obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  Kirkland has searched on its electronic database for its connections to the entities listed on **Schedule 1** hereto.  In addition, after Kirkland

---

[8]   While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

10

identified all client connections with the parties in interest over a specified time period, Kirkland

circulated a survey email to all Kirkland attorneys who billed 10 or more hours to such clients

during the prior six years.  Further, beyond the individual emails, Kirkland sent a daily report of

new matters firm wide.  All Kirkland attorneys are responsible for reviewing the daily report of

new matters and raising any potential concerns with respect to new representations.  Kirkland did

not receive any answers in the affirmative to these emails.  Additionally, to the extent that I have

been able to ascertain that Kirkland has been retained within the last three years to represent any

of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to

these cases, such facts are disclosed on **Schedule 2** attached hereto.

      21.      Kirkland and certain of its partners and associates may have in the past represented,

may currently represent, and likely in the future will represent, entities that may be parties in

interest in these chapter 11 cases in connection with matters unrelated (except as otherwise

disclosed herein) to the Debtors and these chapter 11 cases.  Kirkland has searched on its electronic

database for its connection to the entities listed on **Schedule 1** attached hereto.  The information

listed on **Schedule 1** may have changed without our knowledge and may change during the

pendency of these chapter 11 cases.  Accordingly, Kirkland will update this Declaration as

necessary and when Kirkland becomes aware of additional material information.  The following

is a list of the categories that Kirkland has searched:[9]

| Schedule | Category |
| --- | --- |
| 1(a) | Debtors |
| 1(b) | Directors & Officers |
| 1(c) | 5% or More Equity Holders |
| 1(d) | Bankruptcy Judges |

---

[9]    Kirkland's inclusion of parties in the following Schedules is solely to illustrate Kirkland's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

| 1(e) | Banks/Lenders/UCC Lien Parties/Administrative Agents |
| 1(f) | Confidential Parties |
| 1(g) | HR Benefits |
| 1(h) | Insurers & Surety Bonds |
| 1(i) | Landlords |
| 1(j) | Litigation |
| 1(k) | Professionals |
| 1(l) | Taxing Authorities |
| 1(m) | Top Creditors |
| 1(n) | U.S. Trustee Personnel |
| 1(o) | Utilities |
| 1(p) | Vendors |

22.     To the best of my knowledge, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

23.     Listed on **Schedule 2** to this Declaration are the results of Kirkland's conflicts searches of the above-listed entities.[10]  For the avoidance of doubt, Kirkland will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients of Kirkland (including entities listed below under the "Specific Disclosures" section of this Declaration) unless Kirkland has an applicable waiver on file or first receives a waiver from such

---

[10]   As referenced in **Schedule 2**, the term "current client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed. Whether an actual client relationship exists can only be determined by reference to the documents governing Kirkland's representation rather than its potential listing in Kirkland's conflicts search system.  The list generated from Kirkland's conflicts search system is over-inclusive.  As a general matter, Kirkland discloses connections with "former clients" or "closed clients" for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

entity allowing Kirkland to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an action against that entity, the Debtors will be represented in such particular matter by conflicts counsel.

24.    Kirkland's conflicts search of the entities listed on **Schedules 1(a) – 1(p)** (that Kirkland was able to locate using its reasonable efforts) reveals, to the best of my knowledge, that those Kirkland attorneys and paraprofessionals who previously worked at other law firms that represented such entities in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at Kirkland.

25.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, Kirkland, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed by the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Eastern District of Virginia, except as disclosed or otherwise described herein.

26.    Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

27.    Generally, it is Kirkland's policy to disclose entities in the capacity that they first appear in a conflicts search.  For example, if an entity already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the entity appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), Kirkland does not disclose the same entity again in supplemental

13

declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

28.     From time to time, Kirkland has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Kirkland.

29.     Certain insurance companies pay the legal bills of Kirkland clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are Kirkland clients as a result of the fact that they pay legal fees on behalf of Kirkland clients.

**Specific Disclosures**

30.     As specifically set forth below and in the attached exhibits, Kirkland represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, Kirkland is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in matters unrelated to these chapter 11 cases.

**A.      Connections to Holders of Equity Interests in the Debtors.**

31.     Kirkland represented Le Tote, Inc. in its acquisition of Lord & Taylor LLC from an affiliate of Hudson's Bay Company ("HBC") in August of 2019 (the "Acquisition").  As part of the consideration for the Acquisition, HBC retained approximately 27.64 percent of the equity interests in Le Tote, Inc., and Le Tote, Inc. issued a promissory note and an inventory note in favor

of HBC.  For the avoidance of doubt, Kirkland did not represent HBC or any of its subsidiaries or affiliates in the Acquisition.

32.     Kirkland has not represented and will not represent HBC in matters related to the Debtors or their chapter 11 cases.  HBC has retained Willkie Farr & Gallagher LLP and Whiteford, Taylor & Preston LLP to represent it in these chapter 11 cases.  Accordingly, I do not believe that Kirkland's prior representation of Le Tote, Inc. in the Acquisition precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**B.      Connections to Certain Financial Counterparties.**

33.     As disclosed on **Schedule 2** attached hereto, Kirkland currently represents, and in the past has represented, Wells Fargo Bank, N.A., The Carlyle Group, L.P., Silicon Valley Bank, N.A., and/or certain of their affiliates (collectively, the "Financial Counterparties") in a variety of matters.  The Financial Counterparties comprise one or more of the following:  (a) a prepetition lender to the Debtors; (b) an entity with which the Debtors have a banking relationship; or (c) an agent under the Debtors' credit facilities.  All prior and current Kirkland representations of the Financial Counterparties have been in matters unrelated to the Debtors or these chapter 11 cases. Kirkland has not represented, and will not represent, the Financial Counterparties in connection with any matter related to the Debtors or their chapter 11 cases.  I do not believe that Kirkland's representations of the Financial Counterparties precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**C.      Connections to Officers and Directors.**

34.     As disclosed below, Kirkland currently represents, and has formerly represented, certain affiliates, subsidiaries and entities associated with the Debtors' current and recent former officers and directors.  I do not believe that Kirkland's current or prior representation of the

affiliates, subsidiaries, and entities associated with certain officers and directors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

35.     Matthew Kahn and Pamela Corrie, independent directors of Le Tote, Inc., have served, or may serve from time to time, in various management and director capacities of certain Kirkland clients or affiliates thereof.  I do not believe Kirkland's current or prior representation of clients for which Mr. Kahn and Ms. Corrie serve or have served precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

36.     David Schwartz, former director of the Debtors, has previously served as a director of Toys "R" Us Inc.  Kirkland represented Toys "R" Us Inc. in connection with its bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia.  I do not believe that Kirkland's current or prior representation of Toys "R" Us Inc. precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

**D.     Connections to Certain Landlords.**

37.     As disclosed on **Schedule 2** attached hereto, certain of the Debtors' landlords and lease counterparties, including Brookfield Asset Management Inc., Pyramid Management Group Inc., QIC Ltd., Taubman Centers Inc., TZP Group LLC, and certain of their subsidiaries and affiliates (the "Landlords"), are current, former, or closed clients of Kirkland in matters unrelated to the Debtors' of these chapter 11 cases.  Kirkland has not represented, and will not represent, such Landlords in connection with any matter related to the Debtors or their chapter 11 cases.  I do not believe that Kirkland's representation of the Landlords precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

**E.      Connections to Other Entities.**

38.      Certain potential parties in interest in these chapter 11 cases are current or former Kirkland restructuring clients, including J. C. Penney Company, Inc., Premier Brands Group Holdings LLC (formerly known as Nine West Holdings, Inc.), Centric Brands Inc. (successor in interest to BCBG Max Azria Global Holdings LLC), and certain of their subsidiaries and affiliates (collectively, the "Restructuring Clients").  Kirkland's current and prior representations of the Restructuring Clients are unrelated to the Debtors' chapter 11 cases.  Kirkland will not represent the Debtors, the Debtors' non-Debtor affiliates, or other entities associated with the Debtors in any matter related to the Restructuring Clients' restructuring matters.  Similarly, Kirkland will not represent the Restructuring Clients against the Debtors in these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of the Restructuring Clients precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

39.      As disclosed on **Schedule 2** attached hereto, Kirkland represents, and in the past has represented, GenOn Energy, Inc., and certain of its subsidiaries and affiliates ("GenOn") in their chapter 11 cases.  Certain of GenOn's subsidiaries and affiliates are Utility Providers for the Debtors.  Kirkland's current and prior representations of GenOn are unrelated to the Debtors' chapter 11 cases.  Kirkland will not represent GenOn in connection with any matter related to the Debtors or their chapter 11 cases.  I do not believe that Kirkland's current or prior representation of GenOn precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**F.      Potential M&A Transaction Counterparties.**

40.      The Debtors are in discussions with certain parties (and may be in discussions with other parties in the future) (the "Potential M&A Transaction Counterparties") regarding potential

17

M&A transactions regarding the Debtors and their businesses.  Due to the inherently competitive nature of this process, it is imperative that the identities of these potential counterparties remain confidential.  The Debtors have disclosed to the U.S. Trustee the identities of the potential counterparties and Kirkland's connections to such potential counterparties, and Kirkland believes such disclosure is sufficient and reasonable under the circumstances and at this time.  However, should the Court request disclosure of the identities of the potential counterparties, the Debtors are prepared to file with the Court under seal a version of this Declaration that contains a schedule of the potential counterparties and Kirkland's connections to such potential counterparties.  For the avoidance of doubt, Kirkland will not represent any of the potential counterparties in connection with any matter in these chapter 11 cases.

**G.      Other Chapter 11 Professionals.**

41.      As disclosed on **Schedule 2** attached hereto, Kirkland currently represents, and formerly has represented, certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors seeks to retain in connection with these chapter 11 cases.  All prior and current Kirkland representations of these professionals have been in matters unrelated to the Debtors and these chapter 11 cases.  Kirkland has not and will not represent any such professionals in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of these professionals precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

18

42.     On August 3, 2020, the Court approved Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto") as the Debtors' claims and noticing agent.[11]  As disclosed on **Schedule 2** attached hereto, Kirkland currently represents, and in the past has represented, Stretto and certain of its portfolio companies, in a variety of matters unrelated to the Debtors and these chapter 11 cases.  Kirkland has not represented, and will not represent, Stretto in any matter related to the Debtors or these chapter 11 cases.  I do not believe that Kirkland's current and prior representations of these parties preclude Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

43.     The Debtors' proposed restructuring advisor is Berkeley Research Group, LLC (together with its direct and indirect affiliates, "BRG").  As disclosed on **Schedule 2** attached hereto, Kirkland currently represents, and in the past has represented, BRG and certain of its direct or indirect affiliates in a variety of matters.  All current or prior Kirkland representations of BRG have been in matters unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, BRG in connection with any matter related to the Debtors or their chapter 11 cases.  I do not believe that Kirkland's current or prior representations of BRG preclude Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

44.     The Debtors' proposed advisors in connection with the sale of certain inventory and other assets are affiliates and/or subsidiaries of Hilco Global (together with its direct and indirect affiliates, "Hilco").  As disclosed on **Schedule 2** attached hereto, Kirkland currently represents, and in the past has represented, Hilco and certain of its direct or indirect affiliates in a variety of matters.  All current or prior Kirkland representations of Hilco have been in matters

---

[11]     *See Order Authorizing the Retention and Appointment of Stretto as Claims and Noticing Agent* [Docket No. 74].

19

unrelated to the Debtors or these chapter 11 cases. Kirkland has not represented, and will not represent, Hilco in connection with any matter related to the Debtors or their chapter 11 cases. I do not believe that Kirkland's current or prior representations of Hilco preclude Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

45.     The Debtors' proposed tax advisor for these chapter 11 cases is Deloitte Tax LLP ("Deloitte"). As disclosed on **Schedule 2** attached hereto, Kirkland represents, and formerly has represented, Deloitte and certain of its direct or indirect affiliates in a variety of matters. Kirkland has not represented, and will not represent, Deloitte in connection with any matter related to the Debtors or their chapter 11 cases. I do not believe that Kirkland's current and prior representation of Deloitte precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

46.     As disclosed on **Schedule 2** attached hereto, Kirkland represents Alvarez & Marsal, Inc. ("A&M Inc."), Alvarez & Marsal Capital, LLC ("A&M Capital"), AMCP Security Holdings L.P. / Centerra Group, LLC, Alvarez & Marsal Tax and UK LLP, and affiliated entities in matters unrelated to the Debtors and these chapter 11 cases. An entity affiliated with A&M Inc. is one of the Debtors' top 30 unsecured creditors. In addition, subject to the parameters discussed in the Kirkland Attorney and Employee Investments section of this Declaration, Kirkland person(s) have invested in one or more funds affiliated with A&M Capital. I do not believe that Kirkland's representation of these parties precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

47.     As disclosed on **Schedule 2** attached hereto, Kirkland currently represents and in the past has represented certain of the Debtors' vendors and certain of their subsidiaries and affiliates (collectively, the "Vendors"). Kirkland's current and prior representations of the

Vendors are unrelated to the Debtors' or these chapter 11 cases. Kirkland has not represented, and will not represent, the Vendors in connection with any matter related to the Debtors or their chapter 11 cases. I do not believe that Kirkland's current or prior representation of the Vendors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**H.      Kirkland Attorney and Employee Investments.**

48.     From time to time, Kirkland partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "<u>Investment Funds</u>"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases, often without Kirkland's knowledge. Each Kirkland person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Kirkland persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

49.     From time to time one or more Kirkland partners and of counsel voluntarily choose to form an entity (a "<u>Passive-Intermediary Entity</u>") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were Kirkland partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some may later become former Kirkland partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Kirkland's partners and of counsel choose to

21

participate.  The Passive-Intermediary Entity generally owns substantially less than one percent of any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales.  And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund.  To the extent the Passive-Intermediary Entity is or becomes aware of the identity of the securities purchased, sold, or held by the Investment Funds ("<u>Known Holdings</u>"), such Known Holdings are submitted to Kirkland's conflict checking system.

50.    From time to time, Kirkland partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be (or become) one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases.  Kirkland has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work, so that all Kirkland attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

## I.    Former Clerks.

51.    The following Kirkland employees had clerkships in the Eastern District of Virginia during the last three years (together, the "<u>Former Clerks</u>").  I do not believe that the Former Clerks'

22

work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

52.    Daniel A. Sinclair is a Kirkland associate for clerked with the Honorable Douglas Miller in the United States District Court for the Eastern District of Virginia from August 2018 to August 2019.  Mr. Sinclair began working at Kirkland in September 2019, and had no connection with the Debtors' chapter 11 cases while working with the Court.  I do not believe that Mr. Sinclair's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

53.    Jasmine L. Smith is a Kirkland associate for clerked with the Honorable Raymond Alvin Jackson in the United States District Court for the Eastern District of Virginia from August 2018 to August 2019.  Ms. Smith began working at Kirkland in October 2019, and had no connection with the Debtors' chapter 11 cases while working with the Court.  I do not believe that Ms. Smith's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

54.    Karthik Ravishankar is a Kirkland associate for clerked with the Honorable John F. Anderson in the United States District Court for the Eastern District of Virginia from August 2017 to September 2018.  Mr. Ravishankar began working at Kirkland in October 2018, and had no connection with the Debtors' chapter 11 cases while working with the Court.  I do not believe that Mr. Ravishankar's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**J.    Other Disclosures.**

55.    Finally, certain interrelationships exist among the Debtors.  Nevertheless, the Debtors have advised Kirkland that the Debtors' relationships to each other do not pose any

23

conflict of interest because of the general unity of interest among the Debtors.  Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude Kirkland's joint representation of the Debtors in these chapter 11 cases.

56.    Furthermore, prior to joining Kirkland, certain Kirkland attorneys represented clients adverse to Kirkland's current and former restructuring clients.  Certain of these attorneys (the "Screened Kirkland Attorneys") will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation.  Kirkland's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened Kirkland Attorneys and protecting confidential information.

57.    Under Kirkland's screening procedures, Kirkland's conflicts department distributes a memorandum to all Kirkland attorneys and legal assistants directing them as follows:  (a) not to discuss any aspects of Kirkland's representation of the Debtors with the Screened Kirkland Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding Kirkland's representation of the Debtors in a manner that avoids contact with the Screened Kirkland Attorneys; (c) to take all measures necessary or appropriate to prevent access by the Screened Kirkland Attorneys to the files or other information related to Kirkland's representation of the Debtors; and (d) to avoid contact between the Screened Kirkland Attorneys and all Kirkland personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of Kirkland's representation of the Debtors. Furthermore, Kirkland already has implemented procedures to block the Screened Kirkland Attorneys from accessing files and documents related to the Debtors that are stored in Kirkland's electronic document managing system.

24

## **Affirmative Statement of Disinterestedness**

58.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed herein.

*[Remainder of Page Intentionally Left Blank]*

25

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  August 24, 2020                          Respectfully submitted,

                                        /s/ Steven N. Serajeddini
                                        Steven N. Serajeddini
                                        as President of Steven N. Serajeddini, P.C., as
                                        Partner of Kirkland & Ellis LLP; and as Partner
                                        of Kirkland & Ellis International LLP

26

## **Schedule 1**

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Steven N. Serajeddini in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of August 2, 2020* (the "Serajeddini Declaration").[1]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP and Kirkland & Ellis International LLP reviewed each entity in its records, as more fully described in the Serajeddini Declaration, matching the incomplete or ambiguous name.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Serajeddini Declaration.

# SCHEDULE 1

## List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | Debtors |
| 1(b) | Directors & Officers |
| 1(c) | 5% or More Equity Holders |
| 1(d) | Bankrupty Judges |
| 1(e) | Banks/Lenders/UCC Lien Parties/Administrative Agents |
| 1(f) | Confidential Parties |
| 1(g) | HR Benefits |
| 1(h) | Insurers & Surety Bonds |
| 1(i) | Landlords |
| 1(j) | Litigation |
| 1(k) | Professionals |
| 1(l) | Taxing Authorities |
| 1(m) | Top Creditors |
| 1(n) | U.S. Trustee Personnel |
| 1(o) | Utilities |
| 1(p) | Vendors |

# SCHEDULE 1(a)

### **Debtors**

French Tote LLC
Le Tote, Inc.
Le Tote, LLC
Lord & Taylor LLC
LT Card Company LLC

# SCHEDULE 1(b)

## Directors & Officers

Ard, Amy
Baker, Richard
Beiswenger, Jana
Blecher, Andrew
Corrie, Pamela
Fairbairn, Nicholas
Fedorowycz, Mark
Foulkes, Helena
Gold, Stephen
Graf, Neera
Grasso, Jennifer
Grundmanis, Elliot
Harlam, Bari
Hartman, Ruth
Heaney, Patricia
Hoke, Brian
Kahn, Matthew
Khare, Vijay
Lee, Suzanne
Leigh, Janis
Levy, Jeffrey
Li, Theodore
Mader, Kerry
Metrick, Marc
Miller, Lauren
Moore, Bruce
Nesbit, Kristen
Novack, Mindy
Pather, Sayen
Perugini, Franco
Putnam, Ian
Record, Edward
Roof, Becky
Rosenthal, Lauren
Schneider, Kurt
Schwartz, David
Sundar, Shyam
Tagliani, James
Zhang, Lu

# SCHEDULE 1(c)

## 5% or More Equity Holders

Accelerate-IT Ventures Fund I, LP
Azure Capital Partners III, L.P.
HBC US Propco Holdings LLC
Northart, Brett
Tondon, Rakesh

# SCHEDULE 1(d)

## **Bankrupty Judges**

Huennekens, Kevin R.
Kenney, Brian F.
Kindred, Klienette H.
Phillips, Keith L.
Santoro, Frant J.
St. John, Stephen C.

# SCHEDULE 1(e)

## **Banks/Lenders/UCC Lien Parties/Administrative Agents**

Adoni Group Inc., The
Arkansas Federal Credit Union
B.H. Multi Color Corp.
B.H. Multi Com Corp.
Bank of America NA
Bass, Jason B.
Beekman, Bernadette
Cavallo, Steven
Central Valley Industrial Core Holdings
    LLC
Cisco Systems Capital Corp.
Citizen Watch Co. of America Inc.
City National Bank
Corporation Service Co.
Criminal Court of the City of New York
De Lage Landen Financial Services Inc.
Diamonds Forever of USA Inc.
Eloquence Corp.
GE Capital Retail Bank
GE Money Bank
HBC US Propco Holdings LLC
Hilco Merchant Resources LLC
Hill, Bijon
Horizon Credit II LLC
Horizon Technology Finance Corp.
IBM Credit LLC
IKON Financial Services
Klauber Brothers Inc.
Lali Jewelry Inc.
Le Vian Corp.
Levin, Isadora Myrna
Liquidity Capital II LP
LJM Inc.
Lord & Taylor Holdings, LLC
Marco Moore Inc.
Mulhearn, Susannah
OFI Carlyle Private Credit Fund
PersonalWeb Technologies LLC
Philadelphia Indemnity Insurance Co.
Radosti, Bina
Richline Group Inc.
Royal Jewelry Manufacturing Inc.

Rugs America Corp.
Silicon Valley Bank
Sway Ventures Fashion II LP
TCG BDC II Inc.
TCG BDC Inc.
Temkin, Mildoris
Tianhai Lace USA Inc.
Trinity Capital Fund III LP
Verderber, Maria
Wells Fargo Bank NA
Wells Fargo NA
Wildflower + Co. Inc.
Williams, Deshawn
WLXT LLC
Xeros Inc.

# SCHEDULE 1(f)

## **Confidential Parties**

[Confidential]

# SCHEDULE 1(g)

## **HR Benefits**

Benefit Express Services LLC
Ceridian HCM Inc.
Cigna Corp.
CVS Health Corp.
USI Insurance Services LLC
Voya Financial Inc.

# SCHEDULE 1(h)

### Insurers & Surety Bonds

Allianz SE
AXA SA
Beazley plc
Chubb Ltd.
Great American Insurance Co. Inc.
Hanover Insurance Group Inc., The
Liberty Mutual Insurance Co.
National Flood Insurance Program
Philadelphia Indemnity Insurance Co.
Starr Indemnity & Liability Co. Inc.
Tokio Marine Holdings Inc.
Underwriters at Lloyd's
USI Insurance Services LLC
Western World Insurance Co.

# SCHEDULE 1(i)

## **Landlords**

Bala Cynwyd Shopping Center
Bridgewater Commons
Burlington Mall
Carousel Center
Crossgates Mall
Danbury Fair Mall
Eastview Mall
Fair Oaks Mall
Freehold Raceway Mall
Garden State Plaza
King of Prussia Plaza
Livingston Mall
Mall at Rockingham Park, The
Mall in Columbia, The
Mizner Park
Natick Mall
Northbrook Court
Prudential Center
Quaker Bridge Mall
Ridge Hill Mall
Rockaway Town Square Mall
South Shore
South Shore Plaza
Twelve Oaks Mall
Walden Galleria
Walt Whitman Shops
Westfarms Mall
Westfield Trumbull
White Flint Mall
Willowbrook Mall (Wayne)
Woodfield Mall

# SCHEDULE 1(j)

## Litigation

500 Broadway LLC
Abdalghani, Ghadir
Adekoyejo, Adeyinka
Age Group Ltd.
Akinmurele, Grace
Ali, Kifah
Allen, Krystal
Amazon.com Inc.
Amoroso, Dana
Arkansas Federal Credit Union
Asefi Moghaddam, Ladan
Ashton Martel, D'Nelle
Assadi, Sara
Baeder, Patricia
Baker, Jennifer
Barba, Rosemary
BareWeb Inc.
Barrett, Marva
Batcelor, Karen
Bathie, Sandra T.
Beekman, Bernadette
Belk Inc.
Bennett, Carol
Bernard Chaus Inc.
Bethelmy, John
BHLDN.com LLC
Bledsoe, Kendra
Bloomingdale's Inc.
Blum, Jeanette
Boakye Danquah, Kwabena
BOP LLC
Bosco, Patricia M.
Bounce Exchange Inc.
Bowen, David
Buckbinder, Christine
Buna, Lidia
Capellan De Abreu, Binvenida A.
Capitani, Aurora
Casillas, Jose
Castillo, Ronald
Castro, Delsa
Century 21 Department Stores LLC

Chanel Inc.
Christain, Gladys
Cloutier, Phil
Colosi, Candice
Compass Group USA
Cook, Khadijah Z.
Cooper, Marilyn
Corrales, Ingrid
Cottman, Jannyse
Coulson, Tamara
Crafton, Diane
Crossdale, Karlene
Crump, Carl
Cruz, Evelyn
Culter, Carol A.
Cunningham, Celia
Davenjay, James
David's Bridal
Desrosiers, Cherlande
Devine, Maureen
Dibiccari, Jamie
Digrande, Josephine
Dillard's Inc.
Doneson, Elda
Dookhan, Satyawattee
Drewes, Rosemary
DSW Shoe Warehouse Inc.
Dubray-Wohner, Brandy
Dvorett, Robert
Ebron, Ronica
Edwards, Brenda
Eltelbany, Heba
Eminent Inc.
Escobar, German
Essential Brands Inc.
Evans, Willis
Evans-Greene, Debra
Facebook Inc.
Finguerra, Marie
Flores, Michael
Forem Packing Inc.
Franusiak, Anna

Gallego, Alexander
Ganguli, Shukla
Garg, Sangeeta
Garson, Hannah
Gary, Pat
Geramifar, Soheila
Gerber, Mildred
Giangreco, Lorraine
Glover, Linda M.
Gold Value International Textile Inc.
Goldberg, Renee
Goldman, Samantha
Grandas, Dolly
Granoff, Susan
Gray, Ambrose
Green, Jasmine
Greene, Debra
Gregorida, Joseph
Guertin, Jane
Gutierrez, Marie
Hajmafah, Judy
Hall, Diane D.
Harding, Allison
Hawkins, Monique
Hawkins, Stephen
HBC
Hill, Bijon
Horan, Ana
Hoxha, Luliana
Hudson's Bay Co.
Hussain, Bushra
Iliou, James
Inocencio, Lorenzo
Irrera, Anna M.
J.C. Penney Corp. Inc.
Jablonska, Krystyna
Jackson, Genifer L.
Jefferson, Crystal
Johnson, Janet
Jones, Carolyn
Joyner, Kingston
Kalik, Valerie
Kalousie, Emel
Kanakis, Chrystella
Kellwood Co.
Kelly, Eileen

Kennedy, Thomas
Kinouna, May Sarah
Klauber Brothers Inc.
Kline, Ina
Kline, Lew
Kline, Veronia
Kramer, Barbara
Kruse, Celine
Kurti, Gentjana
Lacen, Averie
Langdo, Andrew
Lasselle, Bert
Lee-Benedetto, Erica
Leganda, Gianfranco
Leo, Srieda
Levitt, Wendy
Levy Group Inc., The
Lewin, Elizabeth
LGB Inc.
Lokaj, Fatmire
Loperto, Laura
Luciano, Victoria
Lugo, Marlene
Macy's Inc.
Maduwa, Rumbi
Magee, Nathanael
Mahmoud, Pary
Marlic, Sandra
Mason, Christine
Matte-Piraino, Elizabeth
Mattera, Vivian M.
Maurer, Karin
Mayer, Linda
Mccarthy, Teresa
Mccreight, Suzanne
Mcneill, Janet
Mechmann, Luke
Meiner, Phyllis
Melon Technologies LLC
Mikulka, Brian
Milik, Afaf
Minardi, Joann
Minch, Anita
Moghaddam, Ladan A.
Mohammed, Fouzia
Moon, Soojin

Moore-Fisher, Bonnie
Mora, Kimberly
Morales, Xiomara
Mulanov, Rimma
Murray, Elizabeth
Myers, Pat
Nalbone, Mary
Nappi, Anthony
Neil, Marvin
Nicolao, Lee
Nihailovch, Natasha
Nordstrom Inc.
Olivieri, Dawn
Oswicky-Delgado, Francine
Pacific Eurotex Corp.
Parker, Claire
Pesta, Melissa
Petrantonakis, Christina
Pettengill, Rosemary
Pieros Construction Co. Inc.
Politi, Dania
Putz, Julia
Quirke-Garay, Meybolle
Rad, Soraya B.
Radosti, Bina
Ramano, Vivian
Reaction Retail LLC
Reese-Lefttridge, Racquel
Reid, Morine
Reyes, Karla
Rickhouse Media Inc.
Riemer, Veronica
Rios, Christopher
Rivera, Miguel
Robertson, Josefina
Roman, Jessica
Rorbach, Susan
Ross, Matthew
Rudolph, Alexandria
Sabatino, Frank
Sabino, Joan
Saks & Co. LLC
Saks Inc.
Salazar, Carlos
Sanchez, Susana
Sanchez-Teixeira, Amalia

Saren, Ibrahim
Schrubbe, Barbara
Scott, Janine
Seirafi, Aida
Selofsky, Toni A.
Sgambati, Ashley
Sheedy, Mary
Sivilich, Eric
Skas, Arlene
Slade, Evangeline
Smallwood, Verna
Smith, Joanne
Snyder, Janet
Sonexay, Sanaphol
SP 35 LP
Spearman-Woods, Marsha
Spensieri, Maria
Springer, Valerie
Steven Madden Ltd.
Taerim Co. Ltd.
Tarpey, Katherine
Tejada, Miriam
Temmallo, Carol
Thayer, Grace
Thorton, Diann
Tianhai Lace Co. Ltd.
Tomitz, Andrew
Toon, Troy
Tothill, Stephanie
Tracey, Elaine
Umans, Joanne
Urban Outfitters Inc.
Vazquez Calaudio, Sheila
Vectovic, Surka
Venegas-Deik, Anna
Ventura, Stephnie L.
Vesseli, Remzije
Walsh, Lisa
Ware, Wendy
White, Elda
Widger, Gabrielle
Wildflower + Co. Inc.
Winhusen, Louise A.
Wood, Judith
Woods, Delores
Xcel-CT MFG LLC

Yaldo, Mamahil
Ye, Suhua
Zhao, Jing
ZZ Fashion Corp.

# SCHEDULE 1(k)

## **Professionals**

Berkeley Research Group LLC
Choate Hall & Stewart LLP
Great American Group LLC
Hilco Trading LLC
Katten Muchin Rosenman LLP
KPMG LLP
Nfluence Partners
Otterbourg P.C.
Stretto
USI Consulting Group Inc.
Willkie Farr & Gallagher LLP

# SCHEDULE 1(l)

## Taxing Authorities

Alabama, State of, Department of Revenue
Amherst, City of (OH)
Arizona, State of, Department of Revenue
Arkansas, State of, Revenue Division
Avon Lake, City of (OH)
Avon, City of (OH)
Berea, City of (OH)
California, State of
California, State of, Department of Tax &
    Fee Administration
California, State of, Franchise Tax Board
Cleveland, City of (OH)
Cloverleaf Local School District (OH)
Colorado, State of
Colorado, State of, Department of Revenue
Connecticut, State of
Connecticut, State of, Department of
    Revenue Services, Commissioner
Delaware, State of
Elyria, City of (OH)
Florida, State of
Florida, State of, Department of Revenue
Georgia, State of
Georgia, State of, Department of Revenue
Hawaii, State of, Department of Taxation
Illinois, State of
Illinois, State of, Department of Revenue
Indiana, State of, Department of Revenue
Kentucky, Commonwealth of, Department
    of Revenue
Lorain, City of (OH)
Louisiana, State of, Department of Revenue
Maine, State of, Department of
    Administrative and Financial Services,
    Revenue Services
Maryland, State of
Maryland, State of, Comptroller of the
    Treasury
Mason, City of (OH)
Massachusetts, Commonwealth of

Massachusetts, Commonwealth of,
    Department of Family and Medical
    Leave
Massachusetts, Commonwealth of,
    Department of Revenue
Michigan, State of
Michigan, State of, Department of Treasury
Minnesota, State of
Minnesota, State of, Department of Revenue
Mississippi, State of
Mississippi, State of, Department of
    Revenue
Missouri, State of
Montgomery, County of (MD)
Nevada, State of, Department of Taxation
New Hampshire, State of
New Jersey, State of
New Jersey, State of, Division of Taxation,
    Litter Control Fee
New York, State of
New York, State of, Department of Taxation
    and Finance
New York, State of, Department of Taxation
    and Finance, PrompTax Program
North Carolina, State of
North Carolina, State of, Department of
    Revenue
North Olmsted, City of (OH)
North Ridgeville, City of (OH)
Ohio, State of
Ohio, State of, Department of Taxation
Oklahoma, State of
Oklahoma, State of, Tax Commission
Oregon, State of
Oregon, State of, Department of
    Transportation, Rail and Public Transit
    Division
Parma, City of (OH)
Pennsylvania, Commonwealth of
Pennsylvania, Commonwealth of,
    Department of Revenue
Reynoldsberg, City of (OH)

Rhode Island, State of
San Francisco, City & County of (CA)
Sheffield Lake, City of (OH)
South Carolina, State of, Department of
     Revenue
South Dakota, State of, Department of
     Revenue
St. Louis, City of (MO)
Stockton, City of (CA)
Strongsville, City of (OH)
Tennessee, State of
Tennessee, State of, Department of Revenue
Texas, State of
Utah, State of
Utah, State of, Tax Commission
Vermont, State of, Department of Taxes
Virginia, Commonwealth of
Virginia, Commonwealth of, Department of
     Taxation
Washington D.C., Department of
     Employment Services, Office of Paid
     Family Leave
Washington D.C., Office of Finance &
     Treasury
Washington, D.C.
Washington, D.C., Office of Tax & Revenue
Washington, State of
Washington, State of, Department of
     Revenue
West Virginia, State of
West Virginia, State of, Department of Tax
     & Revenue
Westlake, City of (OH)
Wisconsin, State of
Wyoming, State of
Wyoming, State of, Department of Revenue
Yonkers, City of (NY)

# SCHEDULE 1(m)

### Top Creditors

360I LLC
Alex Apparel Group Inc.
Alvarez & Marsal Private Equity
    Performance Improvement Group LLC
Berkeley Research Group LLC
Betsy & Adam Sales
Caleres Inc.
Ceridian HCM Inc.
Chanel Inc.
Christian Dior Perfumes LLC
Chubb Ltd.
Criteo Corp.
David Peyser Sportswear Inc.
ERP Logic LLC
Facebook Inc.
FLIK International Corp.
Fownes Brothers and Co.
French Connection
G-III Leather Fashions Inc.
HBC US Propco Holdings LLC
HFC Prestige Products Inc.
Highline United LLC
Jones NY
Kasper Group LLC
Kate Spade & Co.
Kiehl's Since 1851 LLC
Komar Intimates LLC
Kurt Geiger Ltd.
Levy Group/Laundry, The
Liquidity Capital II LP
L'Oreal Lancome
L'Oreal USA Inc., Designer Fragrances
    Division
Lucky Brand Bathing Suits
Manhattan Beachwear Inc.
Me Too LLC
Michael Kors Wholesale Lockbox
Nic + Zoe Co.
Nina Footwear Corp.
OFI Carlyle Private Credit Fund
Pacific Alliance USA Inc.
Polo/Ralph Lauren Corp.

Quad/Graphics Inc.
Ralph Lauren Childrenwear
Sanctuary Clothing Inc.
Steven Madden Ltd.
Supreme International Corp.
Tommy Bahama
Urban Outfitters Wholesale Inc.
V. Fraas
Wacoal America Inc.
Wells Fargo NA
Xcel-CT MFG LLC
Xscape Evenings Ltd.

# SCHEDULE 1(n)

## U.S. Trustee Personnel

Fitzgerald, John P., III
Flinchum, Peggy T.
Garber, Margaret K.
Guzinski, Joseph A.
McPherson, Theresa E.
Pecoraro, Shannon F.
Turner, June E.
Whitehurst, Kenneth, III

# SCHEDULE 1(o)

## Utilities

Albany Water & Water Supply
Approved Oil Co. of Brooklyn Inc.
Aqua Pennsylvania Inc.
Aquarion Water Co. Inc.
Aquarion Water Co. of Connecticut Inc.
Bala Electric Corp.
Baltimore Gas & Electric Co.
Boca Raton, City of (FL)
Boston Water & Sewer Commission
Braintree Electric Light Department
Braintree, Town of (MA)
Braintree, Town of (MA), Water & Sewer
    Department
Bridgewater, Township of (NJ)
Burlington, Town of (MA)
Carousel Center
Champion Energy Services LLC
Coast Fire Equipment
Comcast Corp.
Commonwealth Edison Co.
ConEdison Solutions Inc.
Connecticut Light & Power Co.
Connecticut Natural Gas Corp.
Consolidated Edison Co. of New York Inc.
Consolidated Edison Inc.
Consolidated Edison Solutions Inc.
Constellation NewEnergy Inc.
Danbury Fair Mall
Danbury, City of (CT)
Danbury, City of (CT), Tax Collector
Detroit Edison
District of Columbia Water & Sewer
    Authority
DTE Energy Inc.
Dynegy Energy Services LLC
Dynegy Inc.
Eatontown Sewerage Authority (NJ), The
EDF Energy Services LLC
Elizabethtown Gas Co.
Elizabethtown Water Services LLC
ENGIE Insight Services Inc.
Eversource Energy

Eversource Energy - Natick
Fair Oaks Mall
Fairfax, County of (VA), Water Authority
FGL Labs
FirstEnergy Corp.
Florida Power & Light Co.
Florida Public Utilities Co. Inc.
Freehold Raceway Mall
Freehold, Township of (NJ)
Garden City, Incorporated Village of (NY)
Garden State Plaza
Green Mountain Energy Co.
Hinsdale Sanitary Dist
Hudson Energy Services LLC
Infinite Energy Inc.
Intelligent Energy Corp.
Jersey Central Power & Light Co.
Jersey Gardens Mall
KeySpan Corp.
Kinetix Technology Services LLC
King of Prussia Plaza
Lawrence, Township of (NJ), Tax Office
Liberty Power Holdings LLC
Livingston, Township of (NJ)
Long Island Power Authority
Loudon, County of (VA)
Madison Commercial Fuels
Manhasset-Lakeville Water District
MidAmerican Energy Co.
Middlesex Water Co.
Moorestown, Township of (NJ)
Natick, Town of (MA)
National Grid plc
National Realty & Development Corp.
New Jersey American Water Co. Inc.
New Jersey Natural Gas Co.
New York, City of (NY), Water Board
Niagara Mohawk Power Corp.
Northbrook Court
Northbrook, Village of (IL)
Northern Illinois Gas Co.
Novi, City of (MI)

Novi, City of (MI), Water and Sewer
    Division
NSTAR
NSTAR Electric & Gas Corp.
Nyack, Village of (NY), Department of
    Water
Oakbrook, Village of (IL)
Paramus, Borough of (NJ)
Pardee Solar I LLC
PECO Energy Co.
Pennsylvania-American Water Co. Inc., The
PG&E Corp.
Philadelphia, City of (PA), Water Revenue
    Bureau
Potomac Electric Power Co.
PPL Electric Utilities Corp.
Public Service Co. of North Carolina
Public Service Electric & Gas Co.
Public Service Enterprise Group Inc.
Quaker Bridge Mall
Rochester Gas and Electric Corp.
Rockaway, Township of (NJ)
Rockland, City of (ME)
Salem, Town of (NH)
Schaumburg, Village of (IL)
South Huntington Water District
Southern Connecticut Gas Co., The
Stamford, City of (CT), Water Pollution
    Control Authority
Sterling Heights, City of (MI), Department
    181601
Stockton, City of (CA)
Suez North America Inc.
Suez Water New Jersey Inc.
Suez Water Westchester District 1
Suffolk County Water Authority Inc.
Sune KHL PSNJ LLC
SunEdison Inc.
Syracuse, City of (NY)
Syracuse, City of (NY), Department of
    Water
Taubman Auburn Hills Associates LP
Trumbull, Town of (CT), Sewer
Trumbull, Town of (CT), Water Pollution
    Control Authority
UGI Energy Services LLC

UGI Penn Natural Gas Inc.
UGI Utilities Inc.
United Illuminating Co.
Unitil Corp.
Unitil NH Gas Operations
Utility Telecom
Virginia Electric and Power Co.
Washington Gas
Washington Suburban Sanitary Commission
Waste Management Inc.
Wayne, Township of (NJ)
Westfield, Town of (NJ)
Wilkes-Barre, City of (PA)
Wilkes-Barre, City of (PA), Sewer
    Maintenance Fee
Wilkes-Barre, Township of (PA), Sewer
    Maintenance
Woodbridge, Township of (NJ), Sewer
    Utility
Wyoming Valley Sewer

# SCHEDULE 1(p)

## Vendors

360I LLC
Adidas America Inc.
Adrianna Papell Evening
AFCO
Alex Apparel Group Inc.
Alvarez & Marsal Private Equity
    Performance Improvement Group LLC
Amerex of California
BAK Girls Inc.
BCI Brands
Berkeley Research Group LLC
Betsy & Adam Sales
Bounce Exchange Inc.
Caleres Inc.
Calvin Klein Inc.
Carole Hochman Design Group Inc.
Ceridian HCM Inc.
Chanel Inc.
Christian Dior Perfumes LLC
Chubb Ltd.
Creative Imports LLC
Criteo Corp.
David Peyser Sportswear Inc.
Deloitte & Touche LLP
Designer Group
Dolce Vita Footwear Inc.
Echo Design Group Inc., The
ERP Logic LLC
Euroitaly Inc.
Facebook Inc.
FLIK International Corp.
Fownes Brothers and Co.
French Connection
GBG USA Inc.
G-III Leather Fashions Inc.
HFC Prestige Products Inc.
Highline United LLC
Hudson Clothing Inc.
Hugo Boss Fashions Inc.
Inter Parfums Luxury Brands Inc.
Jewelry Group Inc., The
Jockey International Inc.

Johnston & Murphy Co.
Jones NY
Karen Kane Inc.
Kasper Group LLC
Kate Spade & Co.
Kayser-Roth Corp.
Kiehl's Since 1851 LLC
Komar Intimates LLC
Kurt Geiger Ltd.
L2T Inc.
Lali Jewelry Inc.
Leon Max Inc.
Levi Strauss & Co.
Levy Group/Laundry, The
L'Oreal Lancome
L'Oreal USA Inc., Designer Fragrances
    Division
Lucky Brand Bathing Suits
Lucky Brand Dungarees LLC
LXR Luxe Inc.
Mamiye Brothers Inc.
Manhattan Beachwear Inc.
Marc Jacobs International LLC
Me Too LLC
Michael Kors Wholesale Lockbox
Miraclesuit by Swimshaper
Mystic Inc.
Nic + Zoe Co.
Nina Footwear Corp.
Oxford Apparel
Pacific Alliance USA Inc.
Paige Premium Denim LLC
Polo/Ralph Lauren Corp.
PricewaterhouseCoopers LLP
Quad/Graphics Inc.
Ralph Lauren Childrenwear
Ralph Lauren Footwear Inc.
S. Rothschild and Co.
Salant Corp.
Sanctuary Clothing Inc.
SDI Industries Inc.
Steven Madden Ltd.

Supreme International Corp.
Synclaire Brands Inc.
Thompson Lock & Supply Corp.
Tommy Bahama
Toms Shoes Inc.
Under Armour
UPS
Urban Outfitters Wholesale Inc.
V. Fraas
Vincent Camuto LLC
Wacoal America Inc.
Xcel-CT MFG LLC
Xscape Evenings Ltd.

**SCHEDULE 2**

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| AFCO | BB&T Corp. | Current |
| | BB&T Insurance Holdings, Inc. | Current |
| | SunTrust Banks, Inc. | Current |
| | Truist Bank | Current |
| | Truist Financial Corp. | Current |
| Allianz SE | Allianz Capital Partners GmbH | Former |
| | Pacific Investment Management Company, LLC | Current |
| Alvarez & Marsal Private Equity Performance Improvement Group LLC | A&M Capital Advisors Europe, LLP | Current |
| | A&M Capital Advisors GP, LLC | Current |
| | A&M Capital Advisors, LLC | Current |
| | A&M Capital Advisors, LP | Current |
| | A&M Capital Europe, SCSp | Current |
| | A&M Capital Europe-GP Associates, LP | Current |
| | A&M Capital Opportunities-GP Associates, LP | Current |
| | A&M Capital Partners, LLC | Current |
| | A&M Capital-GP Associates, LP | Current |
| | A&M Capital-GP Holdings, LP | Current |
| | Alvarez & Marsal AMCO Partners Fund, LP | Current |
| | Alvarez & Marsal Capital LLC | Current |
| | Alvarez & Marsal Capital, LP | Current |
| | Alvarez & Marsal Europe LLP | Current |
| | Alvarez & Marsal Inc. | Current |
| | Alvarez & Marsal Partners Buyout Fund, LP | Current |
| | Alvarez & Marsal Partners Europe Buyout Fund, LP | Current |
| | Alvarez & Marsal Partners Europe Fund, LP | Current |
| | Alvarez & Marsal Partners Fund, LP | Current |
| | Alvarez & Marsal Partners Opportunities Fund, LP | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Alvarez & Marsal Taxand UK LLP | Closed |
| Amerex of California | Paul Halpern | Closed |
| | Versa Capital Fund I Parallel, LP | Closed |
| | Versa Capital Management, LLC | Current |
| Arizona, State of, Department of Revenue | Arizona Department of Child Safety | Current |
| AXA SA | AB Commercial Real Estate Debt Series 1-A | Current |
| | AB Commercial Real Estate Debt Series 1-B | Current |
| | AB Commercial Real Estate Debt Series 1-C | Current |
| | AB Institutional Series B | Current |
| | AB Institutional Series C | Current |
| | AXA REIM SGP | Current |
| Baltimore Gas & Electric Co. Commonwealth Edison Co. Constellation NewEnergy Inc. PECO Energy Co. Potomac Electric Power Co. | Exelon Corporation | Current |
| | William A. Von Hoene, Jr. | Current |
| Bank of America NA | BA Capital Company, L.P. | Closed |
| | Banc of America Capital Investors SBIC, L.P. | Closed |
| | BancAmerica Capital Investors SBIC II, L.P. | Closed |
| | Bank of America Capital Investors LP | Closed |
| | Bank of America Corporation | Current |
| | Bank of America Merrill Lynch | Current |
| | Bank of America Securities Ltd. | Current |
| | Bank of America Ventures | Closed |
| | Bank of America, N.A. | Current |
| | Benjamin Klein | Current |
| | Merrill Lynch Capital Services, Inc. | Closed |
| | Merrill Lynch, Pierce, Fenner & Smith, Inc. | Closed |
| BareWeb Inc. | Jet.com | Closed |
| | Walmart Inc. | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Wal-Mart Stores Texas, LLC | Current |
| Belk Inc. | Belk, Inc. | Current |
| | Peter T. Morrow | Current |
| | Stefan Kaluzny | Current |
| | Sycamore Partners (Co-Invest) LLC | Closed |
| | Sycamore Partners A LP | Current |
| | Sycamore Partners Associates Co-Invest, Inc. | Closed |
| | Sycamore Partners Associates Investments LP | Closed |
| | Sycamore Partners Associates LP | Closed |
| | Sycamore Partners Associates-C, LP | Closed |
| | Sycamore Partners II, LP | Current |
| | Sycamore Partners III, LP | Current |
| | Sycamore Partners Management, L.P. | Current |
| | Sycamore Partners Torrid, LLC | Closed |
| | Sycamore Partners, LP | Closed |
| Berkeley Research Group LLC | Berkeley Research Group, LLC | Current |
| Bloomingdale's Inc. Macy's Inc. | Macy's, Inc. | Current |
| BOP LLC | Zappos.com, Inc. | Closed |
| Bridgewater Commons Mall in Columbia, The Mizner Park Natick Mall Northbrook Court Willowbrook Mall (Wayne) | Brookfield Asset Management Inc. | Current |
| | Brookfield Asset Management, LLC | Current |
| | Brookfield Business Partners LP | Current |
| | Brookfield Infrastructure Credit Fund | Current |
| | Brookfield Infrastructure Fund | Closed |
| | Brookfield Infrastructure Group LLC | Closed |
| | Brookfield Special Opportunities LLC | Current |
| | Brookfield Strategic Real Estate Partners III | Former |
| | BSREP II Bermuda GP L.P. | Closed |
| | GFI Energy Group of Oaktree Capital Management | Current |
| | GGPLP, LLC | Closed |
| | Matthew Wilson | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Oaktree Acquisition Corp. | Current |
| | Oaktree Capital Management LP | Current |
| | Oaktree Capital Management, L.P. | Current |
| | Oaktree Maritime Finance II, LLC | Current |
| | Oaktree Middle-Market Direct Lending Unlevered JPN-A 2017 Fund, L.P | Current |
| | Oaktree Power Opportunities Fund V, L.P. | Closed |
| | Oaktree Special Situations Group | Closed |
| | Oaktree Strategic Credit | Current |
| | Ronald N. Beck | Former |
| | Stephen Kaplan | Current |
| Calvin Klein Inc. | Calvin Klein, Inc. | Current |
| Carousel Center | Destiny Rescue USA, Inc. | Current |
| Crossgates Mall | Pyramid Management Holdings, LLC | Current |
| Walden Galleria | Samuel L. Katz | Current |
| | TZP Group LLC | Current |
| | TZP Growth Partners I, L.P. | Current |
| | TZP Small Cap Partners I, L.P. | Current |
| Century 21 Department Stores LLC | Abraham R. Gindi | Current |
| | Century 21, Inc. | Closed |
| | Isaac A. Gindi | Current |
| | Isaac S. Gindi | Current |
| | Raymond Gindi and Issac A. Gindi, as Executors of the Estate of Abraham Gindi | Closed |
| Champion Energy Services LLC | Calpine Corporation | Current |
| | Energy Capital Partners | Current |
| | Energy Capital Partners - Credit Solutions II | Current |
| | Energy Capital Partners - Fund III | Current |
| | Energy Capital Partners Fund II | Current |
| | Energy Capital Partners Fund III | Current |
| | Energy Capital Partners I LP | Current |
| | Energy Capital Partners I-A LP | Current |
| | Energy Capital Partners II, LP | Current |

4

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Energy Capital Partners II-A, LP | Current |
| | Energy Capital Partners II-C, LP | Current |
| | Energy Capital Partners III, LP | Closed |
| | Energy Capital Partners III-B, LP | Current |
| | Energy Capital Partners IV LP | Current |
| | Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest) II, LP | Current |
| | Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest), LP | Current |
| | Energy Capital Partners Mezzanine Opportunities Fund A, LP | Current |
| | Energy Capital Partners Mezzanine Opportunities Fund B, LP | Current |
| | Energy Capital Partners Mezzanine Opportunities Fund Offshore Feeder, LP | Current |
| | Energy Capital Partners Mezzanine Opportunities Fund, LP | Current |
| Chanel Inc. | Arnam SARL | Current |
| | John Galantic | Current |
| Christian Dior Perfumes LLC Marc Jacobs International LLC | L Catterton Singapore Pte Limited | Current |
| Cigna Corp. | Cigna Behavioral Health, Inc. | Current |
| | Cigna Corporation | Current |
| | Cigna Health and Life Insurance Company | Current |
| | Cigna Health Corporation | Current |
| | Cigna Healthcare - Mid-Atlantic, Inc. | Closed |
| | Cigna Healthcare of California Inc. | Current |
| | Cigna Healthcare of Colorado, Inc. | Closed |
| | CIGNA Healthcare of Florida, Inc. | Current |
| | CIGNA Healthcare of Georgia, Inc. | Current |
| | CIGNA HealthCare of North Carolina, Inc. | Current |
| | CIGNA HealthCare of Pennsylvania, Inc. | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | CIGNA HealthCare of South Carolina, Inc. | Current |
| | CIGNA HealthCare of St. Louis, Inc. | Current |
| | Cigna Healthcare of Tennessee, Inc. | Current |
| | CIGNA Healthcare of Texas, Inc. | Current |
| | CIGNA Healthcare, Inc. | Closed |
| | CIGNA Insurance Co. | Current |
| Cisco Systems Capital Corp. | Cisco Consumer Products LLC | Current |
| | Cisco Systems, Inc. | Current |
| | Cisco-Linksys LLC | Current |
| | Sudhir Rao | Current |
| City National Bank | BlueBay Asset Management Services Ltd. | Current |
| | RBC Select Hedge Fund Portfolio Ltd. | Closed |
| | RBC Wealth Management | Current |
| Comcast Corp. | Charter/Comcast JV | Current |
| David's Bridal | Clayton, Dubilier & Rice Fund X LP | Current |
| | Clayton, Dubilier & Rice, LLC | Current |
| Deloitte & Touche LLP | Clare Boardman and Adrian Peter Berry, as Joint Administrators of Mamas & Papas (Retail) Limited | Current |
| | Deloitte Consulting LLP | Current |
| | Deloitte LLP | Current |
| | Deloitte Tax LLP | Current |
| | Deloitte USA LLP | Current |
| Detroit Edison<br>DTE Energy Inc. | DTE Energy Company | Closed |
| District of Columbia Water & Sewer Authority<br><br>Washington D.C., Department of Employment Services, Office of Paid Family Leave<br><br>Washington D.C., Office of Finance & Treasury<br><br>Washington, D.C. | DC Superior Court Domestic Relations Panel | Current |

6

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Dynegy Energy Services LLC | Vistra Energy Corp. | Current |
| Eminent Inc. | Eminent, Inc. d/b/a Revolve Clothing | Closed |
| ENGIE Insight Services Inc. | ENGIE Energy Services Holdings Northeast LLC | Former |
| | ENGIE North America Inc. | Closed |
| | OpTerra Energy Group | Closed |
| Facebook Inc. | Facebook Payments, Inc. | Current |
| | Facebook Services, Inc. | Current |
| | Facebook Technologies LLC | Current |
| | Facebook, Inc. | Current |
| Fair Oaks Mall | Taubman Centers, Inc., Independent Directors of the Board of Directors | Current |
| Westfarms Mall | Taubman Ventures Management | Closed |
| FirstEnergy Corp. | FirstEnergy Corporation | Closed |
| Florida Power & Light Co. | ClearSky Power & Technology Fund I LLC | Closed |
| | NextEra Energy Resources, LLC | Current |
| | NextEra Energy, Inc. | Current |
| Georgia, State of
Georgia, State of, Department of Revenue | State of Georgia | Current |
| Great American Group LLC | B. Riley FBR, Inc. | Current |
| | Great American Group, LLC | Closed |
| Green Mountain Energy Co. | NRG Bowline LLC | Closed |
| | NRG California North LLC | Closed |
| | NRG California South GP LLC | Closed |
| | NRG California South LP | Closed |
| | NRG Canal LLC | Closed |
| | NRG Chalk Point LLC | Closed |
| | NRG Clearfield Pipeline Company LLC | Closed |
| | NRG Delta LLC | Closed |
| | NRG ECA Pipeline LLC | Closed |
| | NRG Energy, Inc. | Closed |
| | NRG Florida GP, LLC | Closed |
| | NRG Florida LP | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | NRG Gibbons Road LLC | Closed |
| | NRG Lovett Development I LLC | Closed |
| | NRG Lovett LLC | Closed |
| | NRG MD Ash Management LLC | Closed |
| | NRG New York LLC | Closed |
| | NRG Northeast Generation, Inc. | Closed |
| | NRG Northeast Holdings, Inc. | Closed |
| | NRG Piney Point LLC | Closed |
| | NRG Potomac River LLC | Closed |
| | NRG Potrero LLC | Current |
| | NRG Power Generation Assets LLC | Closed |
| | NRG Power Generation LLC | Closed |
| | NRG Power Midwest GP LLC | Closed |
| | NRG Power Midwest LP | Closed |
| | NRG Sabine (Delaware), Inc. | Closed |
| | NRG Sabine (Texas), Inc. | Closed |
| | NRG San Gabriel Power Generation LLC | Closed |
| | NRG Tank Farm LLC | Closed |
| | NRG Wholesale Generation GP LLC | Closed |
| | NRG Wholesale Generation LP | Closed |
| | NRG Willow Pass LLC | Closed |
| Hilco Merchant Resources LLC | Hilco Brands LLC | Closed |
| Hilco Trading LLC | Hilco Global | Current |
| | Hilco Merchant Resources | Closed |
| | Hilco Real Estate LLC | Closed |
| | Hilco Trading, LLC | Current |
| Hudson Energy Services LLC | Just Energy Group, Inc. | Closed |
| IBM Credit LLC | IBM Canada Ltd. | Closed |
| | IBM Corporation | Current |
| | Red Hat, Inc. | Current |
| IKON Financial Services | Jon Kossow | Current |
| Wells Fargo Bank NA | Wells Fargo Securities LLC | Current |
| Wells Fargo NA | | |
| Illinois, State of | Illinois Executive Ethics Commission | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Illinois, State of, Department of Revenue | Illinois Torture Inquiry and Relief Commission | Current |
| | Office of the Governor, State of Illinois | Current |
| | Office of the Illinois Governor | Closed |
| J.C. Penney Corp. Inc. | J. C. Penney Business Information Consulting (Shanghai) Co., Ltd. | Current |
| | J. C. Penney Corp. Inc. | Current |
| | J. C. Penney de Guatemala, Sociedad Anonimad | Current |
| | J. C. Penney de Honduras, S.A. | Current |
| | J. C. Penney Direct Marketing Services LLC | Current |
| | J. C. Penney Export Merchandising Corp. | Current |
| | J. C. Penney International Inc. | Current |
| | J. C. Penney Korea | Current |
| | J. C. Penney Properties LLC | Current |
| | J. C. Penney Properties, Inc. | Current |
| | J. C. Penney Purchasing Corp. | Current |
| | J. C. Penney Purchasing Hong Kong Limited | Current |
| | J. C. Penney Purchasing India Private Limited | Current |
| | J. C. Penney Services India Private Limited | Current |
| | J.C. Penney Company, Inc. | Current |
| | JCP Construction Services Inc. | Current |
| | JCP Media Inc. | Current |
| | JCP New Jersey LLC | Current |
| | JCP Procurement Inc. | Current |
| | JCP Real Estate Holdings LLC | Current |
| | JCP Real Estate Holdings, Inc. | Current |
| | JCP Realty LLC | Current |
| | JCP Telecom Systems Inc. | Current |
| | JCPenney Insurance Agency, Inc. | Current |
| | JCPenney Puerto Rico Inc. | Current |
| | JCPenney Services LLC | Current |
| | jcpSSC Inc. | Current |

9

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Kate Spade & Co. | Kate Spade & Co. | Current |
| Kellwood Co. | Contemporary Lifestyle Group, LLC | Current |
| KPMG LLP | KPMG (HK) | Current |
| | KPMG (Ireland) | Closed |
| | KPMG Auditores, S.L. | Current |
| | KPMG International Cooperative | Current |
| | KPMG Law Firm | Current |
| | KPMG LLP | Current |
| | KPMG LLP (Canada) | Current |
| | KPMG LLP (Singapore) | Current |
| Kurt Geiger Ltd. | Cinven Capital Management (V) General Partner Limited | Current |
| | Cinven Capital Management (VI) General Partner Limited | Current |
| | Cinven Capital Management (VII) General Partner Limited | Current |
| | Deborah McAlpine | Current |
| Long Island Power Authority New York, State of New York, State of, Department of Taxation and Finance New York, State of, Department of Taxation and Finance, PrompTax Program | State of New York | Current |
| Lucky Brand Bathing Suits Lucky Brand Dungarees LLC | Leonard Green & Partners LP | Current |
| | Lucky Brand Dungarees Inc. | Current |
| | Lucky Brand Dungarees LLC | Current |
| | Lucky Brand Dungarees Stores Inc. | Current |
| | Lucky Brand Dungarees Stores LLC | Current |
| | Lucky Brand LLC | Current |
| | Peter Nolan | Closed |
| MidAmerican Energy Co. Richline Group Inc. | Berkshire Hathaway Energy Co. | Current |
| | BNSF Railway | Current |
| | Precision Castparts Corp. | Closed |
| North Carolina, State of | Philip E. Berger, as a former member of the North Carolina State Board of Elections | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| North Carolina, State of, Department of Revenue | State of North Carolina | Closed |
| | Timothy K. Moore, as a former member of the North Carolina State Board of Elections | Closed |
| OFI Carlyle Private Credit Fund | Carlyle Asia Investment Advisors Limited | Current |
| TCG BDC II Inc. | Carlyle Aviation Fund Management LLC | Current |
| TCG BDC Inc. | Carlyle Energy Mezzanine Opportunities Fund II, L.P. | Current |
| | Carlyle Global Credit Investment Management LLC | Former |
| | Carlyle Group, The | Current |
| | Carlyle Infrastructure Fund, L.P. | Current |
| | Carlyle Investment Management LLC | Closed |
| | Carlyle Realty Partners III, L.P. | Closed |
| | Carlyle Realty Partners IV, L.P. | Closed |
| | Carlyle Realty Partners V, L.P. | Closed |
| | Carlyle Realty Partners, L.P. | Closed |
| | Rodney S. Cohen | Current |
| | The Carlyle Group | Current |
| | The Carlyle Group Europe - CEP IV Advisor S.a r.l. | Closed |
| Paige Premium Denim LLC | Lion Capital LLP | Current |
| | Lion/Wrinkle Holdings, Inc. | Current |
| | Paige, LLC | Current |
| Pennsylvania, Commonwealth of | Office of the General Counsel of Pennsylvania | Current |
| Pennsylvania, Commonwealth of, Department of Revenue | Office of the Governor of Pennsylvania | Current |
| | Office of the Secretary of State of Pennsylvania | Current |
| | Pennsylvania Higher Education Assistance Agency | Current |
| PG&E Corp. | Pacific Gas and Electric Company | Current |

11

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Philadelphia Indemnity Insurance Co. | HCC Insurance Holdings, Inc. | Current |
| | HCC Life Insurance Company | Closed |
| | HCC Specialty Insurance Company | Closed |
| | HCC Specialty Underwriters, Inc. | Closed |
| | Houston Casualty Company | Closed |
| PPL Electric Utilities Corp. | LG&E and KU Energy LLC | Current |
| PricewaterhouseCoopers LLP | Price Waterhouse & Co. S.R.L. | Closed |
| | PricewaterhouseCoopers Business Consulting (Shanghai) Co. Ltd. | Closed |
| | PricewaterhouseCoopers Consultores, Auditores y Compania Limitada | Closed |
| | PricewaterhouseCoopers Hong Kong Limited | Closed |
| | PricewaterhouseCoopers Limited | Closed |
| | PricewaterhouseCoopers LLP | Current |
| | PricewaterhouseCoopers LLP Ontario | Current |
| | PricewaterhouseCoopers Zhong Tian LLP | Closed |
| Public Service Co. of North Carolina | Daniel Carro | Former |
| Virginia Electric and Power Co. | Dominion Energy Questar Corporation | Closed |
| | Dominion Energy Services, Inc. | Current |
| | SCANA Corporation | Closed |
| Ridge Hill Mall | QIC Group Holdings, LLC | Current |
| | QIC Holdings, Inc. | Closed |
| | QIC Intermediate Holdings, Inc. | Closed |
| Salant Corp. | George Feldenkreis | Closed |
| | Oscar Feldenkreis | Closed |
| Silicon Valley Bank | SVB Leerink LLC | Current |
| Starr Indemnity & Liability Co. Inc. | Starr International Company, Inc. | Closed |
| | Starr Principal Holdings, LLC | Current |
| Stretto | Bankruptcy Management Solutions, Inc. | Closed |
| | Stone Point Capital LLC | Current |
| | Stretto | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| SunEdison Inc. | SunEdison, Inc. | Closed |
| Texas, State of | Greg Abbott, as Governor of Texas | Closed |
| | State of Texas | Closed |
| USI Consulting Group Inc.<br><br>USI Insurance Services LLC | Caisse de dépôt et placement du Québec | Current |
| USI Consulting Group Inc.<br>USI Insurance Services LLC | KKR Asia Limited | Current |
| | KKR Credit Advisors (EMEA) LLP | Current |
| | KKR Credit Advisors (Ireland) | Closed |
| | KKR Credit Advisors (UK) LLP | Current |
| | KKR Credit Advisors (US) LLC | Current |
| | KKR REPA AIV-2, L.P. | Closed |
| | Kohlberg Kravis Roberts & Co. LP | Current |
| | Pillarstone Europe LLP | Closed |
| Virginia, Commonwealth of<br>Virginia, Commonwealth of, Department of Taxation | M. Kirkland Cox | Closed |
| | Virginia House of Delegates | Closed |
| Washington Gas | WGL Holdings, Inc. | Current |
| Waste Management Inc. | USA Waste of California, Inc. | Closed |
| Wisconsin, State of | Wisconsin Legislature | Closed |

13

## **EXHIBIT C**

**van den Berg Declaration**

Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DECLARATION OF MICHAEL O. VAN DEN BERG
## IN SUPPORT OF THE DEBTOR'S APPLICATION
## FOR THE ENTRY OF AN ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF AUGUST 2, 2020

I, Michael O. van den Berg, General Counsel of Le Tote, Inc. being duly sworn, state the

following under penalty of perjury:

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.stretto.com/LeTote.  The location of the Debtors' service address is 250 Vesey Street, 22nd Floor, New York, New York 10281.

1.      I am the General Counsel of Le Tote, Inc. located at 250 Vesey Street, 22nd Floor, New York, New York 10281.

2.      I submit this declaration (the "Declaration") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective as of August 2, 2020* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### The Debtors' Selection of Counsel

3.      The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      To that end, the review process utilized by the Debtors here assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings.  Kirkland advised the Debtors on previous corporate transaction efforts and is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.

5.      Ultimately, the Debtors retained Kirkland because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Kirkland is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2

well qualified and uniquely able to represent the Debtor in these chapter 11 cases in an efficient and timely manner.

## Rate Structure

6.      In my capacity as General Counsel, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business.  Kirkland has informed the Debtors that its rates for bankruptcy representations are comparable to the rates Kirkland charges for non-bankruptcy representations.  As discussed below, I am also responsible for reviewing the statements regularly submitted by Kirkland, and can confirm that the rates Kirkland charged the Debtors in the prepetition period are the same as the rates Kirkland will charge the Debtors in the postpetition period.

## Cost Supervision

7.      The Debtors have approved the prospective budget and staffing plan for the period from August 2, 2020 to November 2, 2020, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Kirkland.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.  The Debtors will continue to review the statements that Kirkland regularly submits, and, together with Kirkland, amend the budget and staffing plans periodically, as the case develops.

8.      As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time

involved the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  August 24, 2020                                Respectfully submitted,

                                                       /s/ Michael O. van den Berg
                                                       Name: Michael O. van den Berg
                                                       Title:   General Counsel