Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois  60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LE TOTE, INC., *et al.*,[1] | ) Case No. 20-33332 (KLP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## DECLARATION OF MACKENZIE SHEA IN
## SUPPORT OF THE DEBTORS' MOTION FOR ENTRY
## OF AN ORDER (I) ESTABLISHING BIDDING PROCEDURES
## (II) SCHEDULING BID DEADLINES AND AUCTIONS, (III) APPROVING
## THE FORM AND MANNER THEREOF, (IV) APPROVING THE SALE OF THE
## DEBTORS' ASSETS FREE AND CLEAR, AND (V) GRANTING RELATED RELIEF

I, Mackenzie Shea, hereby state and declare as follows:

1.      I am a Managing Director at Berkeley Research Group, LLC ("BRG"), a

professional services firm with offices located at 99 High Street, 27th Floor, Boston,

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.stretto.com/letote/.  The location of the Debtors' service address is
250 Vesey Street, 22nd Floor, New York, New York 10281.

Massachusetts 02110.  The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") have retained BRG as their financial advisor in these chapter 11 cases.[2]

2.      I submit this declaration ("Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Establishing Bidding Procedures, (II) Scheduling Bid Deadlines and Auctions, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Sale of the Debtors' Assets Free and Clear, and (V) Granting Related Relief* [Docket No. 27] (the "Motion"), filed on August 2, 2020, and the proposed *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* (the "Sale Order"), filed contemporaneously herewith.[3]

3.      Although BRG is being compensated for its work as the financial advisor to the Debtors, I am not being compensated separately for this testimony.  Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by BRG professionals involved in advising the Debtors in these chapter 11 cases, or information provided to me by the Debtors or their other advisors.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

---

[2]     On September 16, 2020, the Court entered an order approving the retention of BRG as the Debtors' financial advisor in these chapter 11 cases [Docket No. 348].

[3]     Capitalized terms not defined herein shall have the meanings given to them in the Motion or the Sale Order, as applicable.

## Background and Qualifications

4.      I am a licensed attorney and have been practicing in the bankruptcy and restructuring field for approximately 15 years.  I have gained extensive knowledge and experience through both my legal and consultancy work and have led complex transactions that have covered a wide spectrum of restructuring situations and solutions, including sales, acquisitions, workouts, bankruptcies, financings, and liquidations.  I advise debtors, buyers, and official committees of unsecured creditors, with a particular focus on retail and other "4-wall" businesses.  Recently, I have worked in one of those capacities on the chapter 11 cases of The Hertz Corporation; GNC Holdings, Inc.; California Pizza Kitchen, Inc.; Century 21 Department Stores LLC; Neiman Marcus Group LTD LLC; and Town Sports International, LLC.

5.      Prior to joining BRG, I was Lead Transaction Counsel of Gordon Brothers Group, LLC ("Gordon Brothers"), serving as the "first chair" deal lawyer responsible for structuring, negotiating, documenting, and executing hundreds of millions of dollars of distressed transactions across sectors including retail, wholesale, industrial, brands, and real estate.  I worked extensively with the retail team and was involved in over one hundred chapter 11 cases, out-of-court restructurings, and store closing projects in which Gordon Brothers was a bidder, buyer, or consultant.  Prior to Gordon Brothers, I was a partner at K&L Gates, LLC in the bankruptcy and restructuring group, representing debtors, equity investors, creditor committees, secured lenders, trustees, and buyers in connection with out-of-court restructurings, chapter 11 cases, and other insolvency proceedings.

## BRG Retention

6.      BRG has been engaged as financial advisor to the Debtors and has worked closely with the Debtors since March 2020.  Since being engaged by the Debtors, BRG has rendered financial advisory services to the Debtors in connection with the Debtors' evaluation of certain

strategic alternatives and preparations for potential chapter 11 cases.   Additionally, BRG has worked closely with the Debtors' management and other advisors with respect to these strategic alternatives and has become acquainted with the Debtors' financial affairs, debt structure, operations, and related matters.

### The Prepetition Marketing Process and Stalking Horse Bidder

7.        As noted in the Motion, from the outset of these chapter 11 cases, the Debtors determined that a sale of the Debtors' assets was the best opportunity to maximize value for the benefit of the Debtors, their estates, and all other stakeholders.

8.        It is my understanding that in April 2020, the Debtors' investment bank, Nfluence Partners ("Nfluence") launched a robust marketing process for the assets related to the Le Tote business (the "Le Tote Assets").   The Debtors, with the support of their lenders, subsequently determined to expand the marketing process to the assets related to the Lord & Taylor business (the "Lord & Taylor Assets," and together with the Le Tote Assets, the "Assets") in June 2020. For approximately six months, the Debtors, with the assistance of their advisors, conducted a broad and robust sale and marketing process, which culminated in the Debtors' entry into the Stalking Horse APA, as described below.

9.        In connection with this sale and marketing process, it is my understanding that over 100 potential acquirers were contacted regarding a transaction for some or all of the Assets.   The Debtors, with the assistance of their advisors, were in frequent communication with the potential purchasers, responding to diligence requests and engaging with potential buyers on possible legal and regulatory issues associated with each bid.   At the request of the Debtors and Nfluence, I engaged in direct dialogue with certain of the potential acquirers and supplemented the sale efforts for the Lord & Taylor Assets beginning in early September 2020.

10.     The Debtors, with the assistance of their advisors, evaluated each of these indications of interest and, after further diligence and negotiations, ultimately selected ZG Apparel Group LLC to act as the stalking horse (the "Stalking Horse Bidder").  On October 9, 2020, the Debtors filed the *Notice of Selection of Stalking Horse Bidder* [Docket No. 439], whereby the Debtors announced the selection of a stalking horse bidder and entry into the asset purchase agreement (the "Stalking Horse APA").  The Stalking Horse APA contained a purchase price of $3.75 million for the intellectual property and e-commerce assets for both the Lord & Taylor and Le Tote businesses and a break-up fee of 3.0% of the purchase price (the "Break Fee").  The Stalking Horse APA was contingent upon the receipt of the Bid Protections (and subject to the post-facto court approval sought by the Motion).  The Debtors believe that the Bid Protections are reasonable, provided a price floor for the auction, were appropriate under the circumstances, and benefitted the Debtors' estates.

11.     I believe the Stalking Horse APA improved the quality and increased the number of Qualified Bids received prior to, and over the course of, the virtual auction (the "Auction").  Ultimately, the price floor set by the Stalking Horse APA directly resulted in higher price for the Assets and, thus, I believe it was a reasonable use of estate assets.

### The Auction

12.     This Court approved certain Bidding Procedures in connection with the proposed sale of the Debtors' Assets as more fully set forth in the order approving the Motion [Docket No. 269] (the "Bidding Procedures Order").  The Bidding Procedures, as modified by

subsequent notices,[4] set a bid deadline of October 8, 2020 and an Auction date of October 15, 2020 for the proposed sale of the Assets.

13.     The Debtors received three (3) Qualified Bids in advance of the Auction. In addition to the Stalking Horse bid, the Debtors received bids from the Saadia Group LLC ("Saadia") and Branded Online, Inc. ("Branded"). Both the Saadia and Branded bids exceeded the purchase price as set forth in the Stalking Horse APA, inclusive of the Break Fee. In advance of the Auction, the Debtors' advisors reached out to each of the bidders to clarify certain language in each asset purchase agreement, including which assets each bidder sought to purchase, so that the Debtors could evaluate each bid on an "apples-to-apples" basis. However, as set forth in the Bidding Procedures, the Debtors actively marketed all of their assets prior to the Auction and all bidders were provided the opportunity to make offers on all of the Debtors' assets.

14.     The Debtors determined to commence the Auction with the Branded Qualified Bid as the Baseline Bid. *See* Auction Tr. at 9.[5] The Auction took place virtually on October 15, 2020 at 10:00 a.m. (prevailing Eastern Time). The Stalking Horse Bidder, Saadia, and Branded, along with their respective advisors, were in attendance. Also in attendance, among others, were: (a) certain members of the Debtors' management team; (b) the Debtors' advisors, including representatives from Kirkland & Ellis LLP, Nfluence and BRG; (c) Otterbourg P.C., counsel to the Debtors' Prepetition ABL Lenders; (d) Choate Hall & Stewart LLP, counsel to the Debtors' Prepetition Term Lenders; and (e) Cooley LLP, counsel to the Committee.

---

[4]    *See Notice of Adjournment of Sale Hearing and Related Dates and Deadlines* [Docket No. 412] and *Notice of Adjournment of Auction* [Docket No. 443].

[5]    The Auction transcript is attached hereto as **Exhibit A**.

15.    After several rounds of bidding, the Stalking Horse Bidder (after first electing to use a pass) dropped out of the Auction while Saadia and Branded continued to bid.  After approximately 10 bids, at that time, the Debtors, in consultation with their advisors and the Consultation Parties, determined to move to a final round of sealed bids.  The Debtors did not place conditions on the assets that could be included in the sealed bids, although they did require that the sealed bids must be received by a set deadline and they could not be in the nature of a relative bid.  *See* Auction Tr. at 23-25.  The Debtors received two final sealed bids from Saadia and Branded.  The Debtors ultimately determined, in consultation with the Consultation Parties, that Saadia was the Successful Bidder, inclusive of certain modifications to the Stalking Horse APA and conditions as set forth on the record.  As set forth in the Debtors' *Notice of Successful and Backup Bidder with Respect to the Auction of the Debtors' Assets* [Docket No. 450], Saadia's winning bid contemplates the purchase of the Debtors' Assets for a base purchase price of $12 million, subject to certain adjustments.

### The Sale Was Negotiated in Good Faith and at Arms' Length and is the Best Offer Available to the Debtors

16.    I was involved in the postpetition sale and marketing efforts that ultimately led to the Auction and the proposed sale of the Assets to Saadia.

17.    As noted in the transcript of the Auction, at the beginning of the Auction, advisors for the Debtors reminded the bidders of the guidelines for the process.[6]  *See* Auction Tr. at 10-15. Advisors for the Debtors also confirmed that the parties present at the Auction, conducted via Zoom web conference, were familiar with the Bidding Procedures.  *See* Auction Tr. at 13:17-25, 14:1-9.  The advisors for the Debtors reminded the parties that, by submitting a Qualified Bid,

---

[6]    The Auction transcript is attached hereto as **Exhibit A**.

such parties agreed to serve as the Backup Bid if their Qualified Bid was the next highest or otherwise best bid after the Successful Bid.  Auction Tr. at 12:7-13.

18.      Before and during the Auction, I did not observe any conduct that indicated collusive or otherwise improper activity by the Qualified Bidders.  Also, based on discussions I observed, I believe the Debtors and the Successful Bidder are entering into a definitive purchase agreement on an arm's-length basis and in good faith.

## **Conclusion**

19.      Given the duration and scope of the Debtors' prepetition and postpetition marketing process conducted in the manner described above (including, with respect to the postpetition marketing process, in accordance with the Bidding Procedures), it is my view, that the resulting proposed sale of the Assets to Saadia is the highest or otherwise best bid presently available to the Debtors under the circumstances.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  October 19, 2020

/s/ *Mackenzie Shea*
Mackenzie Shea
Managing Director
Berkeley Research Group, LLC

## **Exhibit A**

## **Auction Transcript**

**In the Matter Of:**

*re LE TOTE, INC., et al.*

---

*VIRTUAL  AUCTION*

*October 15, 2020*

---



1

1                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
2                          RICHMOND DIVISION

3

4    In re:                    )
                               )  Chapter 11
5    LE TOTE, INC., et al.,    )
                               )  Civil Action No.
6            Debtors           )  20-33332(KLP)
                               )
7                              )  (Jointly Administered)
                               )
8

9

10

11                    AUCTION FOR THE SALE
                  OF THE DEBTORS' ASSETS
12
                     OCTOBER 15, 2020
13

14

15

16

17

18

19

20

21

22

23

24

25

2

1

2

3

4      AUCTION FOR THE SALE OF THE DEBTORS' ASSETS

5    was taken the above styled and numbered cause

6    on October 15, 2020, from 9:26 a.m. to 10:42

7    p.m., before KATERI A. FLOT-DAVIS, CSR, CCR in

8    and for the State of Texas, reported by

9    machine shorthand pursuant to the Federal

10   Rules of Civil Procedure and the provisions

11   stated on the record herein.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1           A P P E A R A N C E S

2

    FOR BRG GLOBAL:
3
    MCKENZIE SHEA
4   DAN NICKELSON
    MICHAEL VAN DER BERG
5   ED KRAMER
    BRETT WITHERELL
6

7
    FOR THE DEBTORS IN POSSESSION:
8
    DAVID L. EATON, ESQ.
9   MARSHALL SHAFFER, ESQ.
    JAIMIE FEDELL, ESQ.
10  STEPHANIE COHEN, ESQ.
    STEVEN SERAJEDDUI, ESQ.
11  CHRISTIAN ATWELL, ESQ
    BILL HALABY, ESQ.
12  AMANDA GOTTLIEV, ESQ
    CONOR MCNAMARA, ESQ.
13  PRENTIS ROBINSON, ESQ.
    Kirkland & Ellis, LLP
14  300 North La Salle Street
    Chicago, Illinois 60654
15

16
    FOR THE ZG APPAREL GROUP, LLC:
17  RICHARD SILVERSTEIN
    ROBERT NOSEK
18  MR. MANSOUR

19

20  FOR BRANDED ONLINE, INC:
    MIKE BASSIRI
21

22  FOR THE SAADIA GROUP, LLC:
    JACK SAADIA
23

24
    Also Present:
25  Adalyne Garcia, Video Monitor
    Juan De La Torres, Video Monitor/Videographer

4

1                    INDEX

2
                                              PAGE
3

4

5    Appearances........................... 3

6

7
     Reporter's Certificate................ 36
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1          P R O C E E D I N G S

2

3

4        MS. SHEA:  Good morning.

5        This is McKenzie Shea of BRG.  It

6   is 10:26 a.m.

7        I would ask the court reporter to

8   begin to begin keeping a record.

9        David, can you confirm that you can

10   hear us well enough?

11        MR. EATON:  Yes.

12        MS. SHEA:  Thank you.

13        On behalf of the debtors and its

14   advisors, Kirkland & Ellis, BRG and

15   Influence, I would like to welcome you

16   to today's auction and will make a brief

17   opening statement on the record.

18        I am McKenzie Shea of BRG and I

19   will act as our primary spokesperson

20   today.

21        We are here today in the

22   Chapter 11 cases of Le Tote, Inc., and

23   its affiliated debtors, lead Case

24   No. 20-3332, pending in the United

25   States Bankruptcy Court for the Eastern

6

1    District of Virginia.

2        With us from the company are Dan

3    Nicholson, Michael van den Berg and Ed

4    Kramer.

5        We would request that each party

6    designate and attempt to utilize one

7    speaker for their respective group.

8        Today we will be conducting an

9    auction of the debtors' intellectual

10   property and related assets pursuant to

11   the Bid Procedures Order entered at

12   Docket 269, as well as the associated

13   notices filed at Dockets 412, 442 and

14   443.

15       The debtors are not seeking to sell

16   or assign any store leases of the

17   debtors or executory contracts at this

18   time other than as expressly set forth

19   in the bids we have received.

20       Those intellectual properties and

21   related assets encompass both the

22   Le Tote sale and the Lord & Taylor sale

23   as those terms are defined in the Bid

24   Procedures Order.

25       Pursuant to the Bid Procedures

7

1   Order, the debtors selected ZG Apparel

2   Group, LLC, who we will refer to it as

3   ZAR, as the stalking horse bidder for

4   the assets, and filed a notice of such

5   on October 9th at Docket 439.

6        The stalking horse bid is a

7   qualified bid and ZAR is a qualified

8   bidder for purposes of today's auction,

9   as those terms are defined in the Bid

10  Procedures Order.

11       The debtors have received two other

12  qualified bids from qualified bidders as

13  those terms are likewise defined in the

14  Bid Procedures Order.

15       The two were received from Branded

16  Online, Inc., who we will refer to as

17  Branded Online, and Saadia Group, LLC,

18  who we will refer to as Saadia.

19       At this time I would ask each

20  bidder, through one spokesperson, after

21  I call your respective group to

22  acknowledge that they have read and are

23  familiar with the Bid Procedures Order.

24       First, starting with the stalking

25  horse bidder, ZAR.

Virtual  Auction - October 15, 2020

8

1     MR. SILVERSTEIN:  Hi.  Richard

2  Silverstein.

3     MS. SHEA:  Richard, could you

4  confirm that you're familiar with the

5  Bid Procedures Order?

6     MR. SILVERSTEIN:  Yes.

7     MS. SHEA:  Thank you.

8     Branded Online.

9     MR. BASSIRI:  Good morning.

10     This is Mike Bassiri with Branded

11  Online.  We are familiar with the bid

12  procedures.

13     Thank you.

14     MS. SHEA:  Thank you.

15     Saadia.

16     MR. SAADIA:  Yes.  This is Jack --

17  this is Jack Saadia from Saadia Group.

18  We are confirming that we are familiar

19  with the bid procedure.

20     MS. SHEA:  Thank you.

21     Of the qualified bids from those

22  three parties, the debtors have selected

23  the bid of Branded Online to be what is

24  referred to as the baseline bid for

25  purposes of opening today's auction.

9

1          A copy of the baseline bid will be

2    circulated to you momentarily by a

3    member of the Kirkland & Ellis team.

4          While you wait to receive that, we

5    are going to describe the baseline bid

6    to you.

7          MR. EATON:  McKenzie, to be clear,

8    that is going to be circulated to the

9    qualified bidders -- to the stalking

10   horse bidders.

11         MS. SHEA:  Correct.

12         MR. EATON:  We will be describing

13   it for the other attendees.

14         MS. SHEA:  Thank you.

15         The baseline bid of Branded Online

16   is in the same form of purchase

17   agreement as the stalking horse bid of

18   ZAR, with the following changes:

19         1.  The purchase price is

20   3,920,000.

21         2.  A provision that acquired

22   customer data will expressly include

23   customer data from the stores.

24         And, 3.  A provision that the

25   parties will negotiate, in good faith,

10

1   an extension to the wind-down license if

2   stores are closed due to COVID-19 during

3   the period before the license expires.

4        We believe that the agreement is

5   now the same as those submitted by ZAR

6   and by Saadia, with the sole exception

7   being the higher purchase price and

8   those two legal-in-nature changes that I

9   just mentioned.

10       The debtors believe all bidders are

11  now bidding on an apples-to-apples basis

12  for purposes of today's auction.

13       The debtors intend to conduct the

14  auction in a determined bidding order.

15       As ZAR had the stalking horse bid

16  and Branded Online has been designated

17  as the baseline bid, the first

18  opportunity to bid at the appropriate

19  time will be given to Saadia.

20       After that, we intend that

21  subsequent rounds will proceed in the

22  same order:  next to ZAR, then to

23  Branded Online, and then back to Saadia,

24  and will continue in that same order for

25  each subsequent round.

11

1     We will not accept open cry bids at

2   this time.

3     Each bidder will be allowed one

4   pass for the entirety of the auction.

5     What that means is that the pass

6   allows the bidder to be skipped in the

7   bidding order and the bidder will not be

8   required to bid again until the set

9   bidding order returns to it.

10     At this time, the bidding increment

11   will be 200,000.  Each bid and each

12   round must exceed the prior highest and

13   best bid by at least that amount.

14     The debtors will announce what that

15   required overbid amount is at each

16   opportunity to bid.

17     In terms of the breakup fee payable

18   to ZAR as stalking horse, the baseline

19   bid of Branded Online has sufficiently

20   overbid the stalking horse bid such that

21   the breakup fee amount has been covered

22   and the debtors will not give further

23   credit to payment of that amount in

24   subsequent rounds.

25     As a result, each bidder must

Virtual  Auction - October 15, 2020

12

1    simply clear the prior highest and best

2    bid by at least the 200,000 bidding

3    increment, but nothing further will be

4    deducted on account of the breakup fee

5    for determining what is then the highest

6    and best bid.

7         At conclusion of bidding the

8    debtors will designate the highest and

9    best bid as the successful bid and close

10   the auction.

11        The prior highest and best bid will

12   be the backup bid, pursuant to the

13   bidding procedures.

14        The debtors intend to select a

15   successful bidder and a back-up bidder

16   following the conclusion of today's

17   auction.

18        The designated backup bidder's

19   deposit will be returned at the earlier

20   of closing of the successful bid or

21   60 days following the auction.

22        The debtors, in consultation with

23   their advisors, their lenders and the

24   Creditors Committee, reserve the right

25   to make changes to the bid procedures at

13

1    any time.

2        We are conducting this auction

3    virtually through a Zoom platform and we

4    understand the unusualness of that.

5        Right now we are in what we call

6    the main auction room.

7        Each bidding party and consultation

8    party has their own separate breakout

9    room in which no one else can see or

10   hear what you discuss in there.

11       At various times during the

12   auction, the debtors may instruct the

13   video monitor to virtually push parties

14   to their respective breakout rooms and

15   to call them back to the main auction

16   room when the debtors so elect.

17       At this time I would ask each

18   bidder, after I call your name, to

19   confirm that you understand the

20   procedures or ask any questions.

21       First, in the same order we called

22   them last time:

23       Richard, on behalf of ZAR, do you

24   understand or have any questions?

25       MR. SILVERSTEIN:  I understand the

14

1   procedure.

2        MS. SHEA:  Thank you.

3        Mike, on behalf of Branded Online?

4        MR. BASSIRI:  We understand the

5   procedure.  Thank you.

6        MS. SHEA:  Jack, on behalf of

7   Saadia?

8        MR. SAADIA:  We understand the

9   procedure.  Thank you.

10        MR. SILVERSTEIN:  Rob Nosek is my

11   lawyer, for ZAR.  He would like to ask a

12   question.

13        MS. SHEA:  Please go ahead, Rob.

14        MR. NOSEK:  Thank you.  Robert

15   Nosek for ZAR.

16        On the -- the subsequent rounds, if

17   ZG bids, you're saying that we would not

18   get a credit for the breakup fee that we

19   would be entitled to when you're trying

20   to -- to determine what's higher or

21   better?

22        MS. SHEA:  Correct.

23        MR. NOSEK:  Okay.  Thank you.

24        MS. SHEA:  Are there any questions

25   from any of the consultation parties

Virtual  Auction - October 15, 2020

15

1   that are on the phone?

2        (No Response.)

3        MS. SHAE:  Hearing no questions, in

4   the order we prescribed the debtors now

5   intend to open bidding.

6        First bid is presented to Saadia.

7   With a 200,000 bid increment, the

8   overbid required would be 4,120,000.

9        Jack, would Saadia like to make a

10  bid at that amount?

11       MR. SAADIA:  Yes.  This is Jack.

12  4 million 120, we bid for.

13       MS. SHEA:  ZAR?  With that

14  knowledge, the leading bid, the order is

15  to you.  The bid is 4,320,000.

16       Would you like to bid at that

17  amount?

18       ATTORNEY:  Excuse me.  Can we have

19  one minute, please?

20       MS. SHEA:  Yes.

21       MR. NOSEK:  This is Robert Nosek

22  for ZAR.  Hold on one second.

23       MS. SHEA:  We are holding, Rob,

24  until you're ready.

25       MR. NOSEK:  Clarifying the issue --

16

1    and this is how we read the APA -- if we

2    participate in the bidding and we are

3    not the successful bidder, ZAR still

4    gets its breakup fee at the end,

5    correct?

6         MS. SHEA:  Yes, that is correct.

7         MR. EATON:  Yes.  Subject to court

8    approval, but that is correct.

9         MR. NOSEK:  Yes.  And subject to

10   court approval, of course.

11        MR. EATON:  Yes.

12        MR. NOSEK:  Just one more second.

13        ATTORNEY:  ZAR bids 4,320.

14        MS. SHEA:  Thank you.

15        Is that Richard?

16        ATTORNEY:  Yes, it was.

17        MS. SHEA:  Thank you.

18        Continuing with the order, the next

19   bid, with that being the current leading

20   bid, is to Branded Online.  With the

21   increment, that bid is 4,520,000.

22        Branded Online, would you like to

23   make a bid at that amount?

24        MR. BASSIRI:  This is Branded

25   Online and we have a question.

17

1        Would there be the possibility of

2    us discussing privately with one of the

3    other bidders before we make that

4    decision?

5        MS. SHEA:  I think at this time the

6    debtors are going to elect to push

7    people into a breakout room.

8        Would the video monitor please do

9    that?

10        MR. BASSIRI:  Well, we -- how do we

11    do that?

12        How do -- we would like to speak to

13    the Saadia Group.

14        Is that an option for us at this

15    time?

16        MS. SHEA:  I understood your

17    question, but the debtors need to

18    discuss that amongst ourselves.

19        So I'm asking that the video

20    monitor push everyone to their

21    respective breakout rooms so we can do

22    that.

23        MR. BASSIRI:  Okay.  I understand.

24    Thank you.

25        THE VIDEOGRAPHER:  Okay.  I'm going

18

1   to open the room now.

2         MS. SHEA:  Thank you.

3         (Brief Recess Taken.)

4         MS. SHEA:  This is McKenzie Shea at

5   BRG.  It is 11:39.

6         I would ask the court reporter to

7   go back on the record.

8         THE REPORTER:  I'm on the record.

9   Thank you.

10        MS. SHEA:  Thank you.

11        Thank you, everyone, for your

12  patience.

13        At this time the debtors are not

14  going to permit any of the bidders to

15  speak to each other.

16        Before we resume bidding, we're

17  going to ask for confirmation from

18  Branded Online.

19        Mike, would you please confirm on

20  behalf of Branded Online that you have

21  not had any discussions with any of the

22  bidders involved in the process?

23        MR. BASSIRI:  We confirm we have

24  not had any discussions.

25        MS. SHEA:  Thank you.

19

1    With that, we're going to resume

2  bidding.

3    A few reminders.  The bidding

4  increment is at least 200,000.  While

5  I'll provide that figure to you, you are

6  permitted to bid more than that.

7    Two, each bidder is allowed one

8  pass to utilize in the auction.

9    The current leading bid is at

10  4,320,000, by ZAR.

11    With that, the bidding order is to

12  Branded Online, with a minimum overbid

13  of 4,520,000.

14    Would Branded Online like to make a

15  bid in at least that amount?

16    MR. BASSIRI:  Branded Online makes

17  a bid for $4,520,000.

18    MS. SHEA:  Thank you.

19    Saadia, it is your turn in the

20  bidding order.  It would be a required

21  overbid of that leading bid of

22  4,720,000.

23    Would you like to make a bid in at

24  least that amount?

25    MR. SAADIA:  Yeah.  This is Jack.

20

```
 1   Confirm, 4,720.

 2        MS. SHEA:  Thank you, Jack.

 3        In the bidding order we are now at

 4   ZAR.  With that leading bid, the minimum

 5   overbid would be at least 4,920,000.

 6        Would ZAR like to make a bid in at

 7   least that amount?

 8        MR. MANSOUR:  We're going to use

 9   our pass right here.

10        MS. SHEA:  Pardon?  I'm sorry.

11        MR. MANSOUR:  We're going to use

12   our pass right here.

13        MS. SHEA:  Thank you.

14        Now in the bidding order at Branded

15   Online.  The prior leading bid was of

16   Saadia at the 4,720,000.

17        So the ask is now to you of an

18   overbid of 4,920,000.

19        MR. BASSIRI:  This is Branded

20   Online.  We bid $4,920,000.

21        MS. SHEA:  Thank you.

22        As a reminder, I would ask

23   everybody who is not speaking to be on

24   mute.  We're getting some background

25   noise here.
```

21

1       In the bidding order, it's now back

2   to Saadia at 5,120,000 as the required

3   overbid.

4       Would you like to bid in at least

5   that amount?

6       MR. SAADIA:  Yes, 5,120.

7       MS. SHEA:  I'm going to pause there

8   for just a minute.

9       (Pause.)

10      MS. SHEA:  Thank you.

11      In the bidding order, we're now

12  back to ZAR.  The minimum required bid

13  would be 5,320,000.

14      Would you like to make a bid in at

15  least that amount?

16      MR. MANSOUR:  We're out.  We're

17  out.  Thank you.

18      MS. SHEA:  Thank you for your

19  participation and having been the

20  stalking horse.  We thank you for that.

21      We are now, in the bidding order,

22  back to Branded Online.

23      The bid would be 5,320,000.  Would

24  you like to make a bid in that amount?

25      MR. BASSIRI:  5 million 320 for

Virtual  Auction - October 15, 2020

22

1   Branded Online.  Thank you.

2        MS. SHEA:  Thank you.

3        To Saadia now at a minimum overbid

4   of 5 million 520.

5        MR. SAADIA:  Yes.  5,520.

6        MS. SHEA:  Next to Branded Online

7   at 5,720,000.

8        Would you like to bid in that

9   amount?

10       MR. BASSIRI:  Yes.  5 million 720.

11       MS. SHEA:  To Saadia.  The minimum

12   overbid would be at least 5,920,000.

13       Would you like to bid in that

14   amount?

15       MR. SAADIA:  Yes.  5,920.

16       MS. SHEA:  Back to Saadia at a

17   minimum overbid of at least --

18       MR. WITHERELL:  No.  Branded.  Back

19   to Branded.  That was Saadia who just

20   bid.

21       MS. SHEA:  Thank you.

22       Pause one minute.

23       (Pause.)

24       MS. SHEA:  At this time the debtors

25   are going to take a break.

23

1    Juan, I would ask that you move the

2  debtors' team to their breakout room.

3    (Brief Recess Taken.)

4    MS. SHEA:  Thank you, everyone.

5  This is McKenzie Shea from BRG.  Thank

6  you for your patience.

7    The debtors appreciate the robust

8  bidding that Branded Online and Saadia

9  is have engaged in to this point.

10    During the break, the debtors

11  consulted with their consultation

12  parties and at this point in the auction

13  we are going to seek sealed bids, a one

14  and done opportunity to bid on these

15  assets.

16    To explain how it will work, we

17  will give each of the two bidders

18  15 minutes to consult amongst themselves

19  on the content of that bid.  When

20  they're prepared to submit, they will

21  e-mail that bid to a representative for

22  the debtors, which is Marshall Shaffer

23  at Kirkland & Ellis.

24    His e-mail address, which I'll read

25  twice and which I believe both bidders

24

1   already have, is M-a-r-s-h-a-l-l dot

2   S-h-a-f-f-e-r at Kirkland.com.  Once

3   again, M-a-r-s-h-a-l-l dot S-h-a-f-f-e-r

4   at Kirkland.com.

5       Importantly, the sealed bid you

6   submit must be greater than 5,920,000,

7   which is the current high bid of Saadia.

8   It must be in an amount certain, a firm

9   purchase price.  It may not be what is

10  referred to as a relative bid.

11      You may not bid one dollar more

12  than the other specified bidder.

13      With that, I would ask first,

14  Branded Online, to confirm that they

15  understand these procedures.

16      MR. BASSIRI:  This is Mike Bassiri

17  of Branded Online.

18      We do understand it.  I'm not

19  certain that we agree with it, but --

20  but we would like time to confer and

21  then get back to you whether or not we

22  agree with this process.

23      MS. SHEA:  I understand the

24  request.

25      Before we agree, Jack, on behalf of

25

1  Saadia, do you understand the

2  procedures?

3      MR. SAADIA:  I hold the same

4  position as Mike.  We were told that

5  it's going to be an open bid, not a

6  sealed bid, from the get-go, and this is

7  not what we signed up for.  But we'll

8  consult the attorney and we'll get back

9  to you.

10      MS. SHEA:  I would point each

11  bidder to the Bid Procedures Order,

12  Page 18, Page 37 of the PDF, the

13  Reservation of Rights, which allows the

14  debtors, in consultation with the

15  consultation parties, to institute

16  procedures at the auction as they see

17  fit.

18      With that, the debtors, the

19  consultation parties will remain in this

20  main auction room.  We will give the

21  bidders the opportunity to break out

22  amongst themselves, and we would ask

23  that you return in five minutes.

24      MR. BASSIRI:  McKenzie, this is

25  Mike Bassiri.

26

1        Could you confirm that this is a

2   once-and-for-all bid, meaning there will

3   be no further reopening of the bidding

4   regardless of what bids come in?

5        MS. SHEA:  That is correct.  This

6   is one and done.

7        And while I would ask each bidder

8   to confirm amongst themselves, we're not

9   going to have you come back to this main

10  auction room.

11       You can make an election to bid or

12  not, but that's not going to be

13  discussed in the main auction room.

14       MR. BASSIRI:  So are you saying

15  that we have to break out to our room,

16  within 15 minutes submit the bid, and

17  we're done?

18       MS. SHEA:  Correct.

19       MR. BASSIRI:  Okay.  Understood.

20       MR. DAYON:  This is Jeffrey Dayon

21  from the Saadia Group.

22       Will we still have the five minutes

23  and discuss it and come back into the

24  room before we break for the -- for the

25  sealed bed procedure?

27

1      MS. SHEA:  You can discuss amongst

2  yourselves, and if you request to speak

3  to the debtors, we'll allow that

4  off-line.  But they're not going to be

5  allowed back into the main auction room.

6      At this point, the debtors have

7  consulted with who they need to.

8  They're invoking their right to do

9  sealed bids.  It will be one and done.

10     MR. DAYON:  We understand that, but

11  we would still like the opportunity to

12  have a five-minute break and have

13  everybody come back.

14     MR. BASSIRI:  We agree -- we agree.

15  Branded Online.

16     MS. SHEA:  We are not -- on behalf

17  of the debtors, we are not coming back

18  to this main room.

19     You can choose not to participate,

20  but we are not going to have dialogue on

21  this point.

22     MR. EATON:  Right.

23     If you have questions, we can do it

24  off-line.

25     MS. SHEA:  Correct.  And that was

28

1   the five minutes provided to you.

2        MR. DAYON:  Well, that's what I'm

3   asking.  We want five minutes to consult

4   and then to come back into this room so

5   that if the questions affect everybody,

6   everybody can be a part of that

7   discussion.

8        MS. SHEA:  You will be allowed to

9   come into a side room with the debtor,

10  to the extent you have questions.

11       MR. BASSIRI:  What is that side

12  room?

13       MS. SHEA:  It's a breakout room

14  that would be just with the debtors,

15  which includes representatives of the

16  company.

17       MR. BASSIRI:  I understand.  I just

18  need the name of that break room.  What

19  is the name --

20       MS. SHEA:  We -- we control -- we

21  control it.

22       So send us an e-mail to the extent

23  you want to talk to us, and we will

24  bring you into a breakout room.

25       MR. BASSIRI:  E-mail to --

29

1      MS. SHEA:  To Marshall.

2      MR. BASSIRI:  Very well.

3      Would you extend the 15 minutes to

4  30 minutes, please?

5      MS. SHEA:  We will accommodate

6  that.

7      MR. BASSIRI:  Thank you.  So

8  30 minutes?

9      MS. SHEA:  Thirty minutes.

10      Juan, at this point I would ask you

11  to push everyone to their respective

12  breakout rooms.

13      THE VIDEOGRAPHER:  Okay.  No

14  problem.

15      (Brief Recess Taken.)

16      MS. SHEA:  Hi everyone.  This is

17  McKenzie Shea from BRG.

18      I first just want to ask:  Is the

19  court reporter on?

20      THE REPORTER:  Yes, I am.

21      MS. SHEA:  We would like to reopen

22  the record at 10:32.

23      The debtors received two sealed

24  bids by the 4:00 p.m. deadline.  After

25  receiving the two sealed bids the

30

1    debtors reviewed them and consulted with

2    the --

3        (Communications breakup.)

4        MS. SHEA:  This is McKenzie Shea

5    from BRG.  We appreciate everyone's time

6    this late at night.  The debtors are

7    going to make a statement into the

8    record.

9        We received two sealed bids by the

10   4:00 p.m. deadline.  After receiving the

11   two sealed bids, the debtors reviewed

12   and consulted with the consultation

13   party.

14       The sealed bid submitted by Branded

15   Online has been accepted and designated

16   as the backup bid.

17       The debtors have determined that

18   Saadia has submitted the highest and

19   otherwise best bid and will designate it

20   as the successful bid now.

21       I will read the terms of that

22   successful bid into be the record.

23       The terms of the successful bid had

24   terms when it was submitted at 4:00 p.m.

25   that required the debtors to deliberate,

31

1   to seek clarification and to consultant

2   the consultation parties.

3       The successful bid by Saadia that

4   has been accepted by the debtors is as

5   follows:

6       The purchase price is 12 million.

7       A deposit of 10 percent of that

8   amount, equivalent to 1.2 million, is

9   required to be posted by 5:00 p.m.

10  tomorrow.

11      The right to extend the closing

12  date is to November 17th with a

13  November 23rd outside date.

14      Saadia Group will receive

15  designation rights with respect to

16  contracts related solely to contracts

17  for the operation of the Le Tote and

18  Lord & Taylor eCommerce platform, the

19  lease for the Le Tote Distribution

20  Center in Stockton, and leases for the

21  equipment and machinery located in the

22  Le Tote Distribution Center in Stockton,

23  with Saadia Group to pay cure costs for

24  any such contracts designated for

25  assumption and assignment and subject to

32

1    any necessary third-party consent.

2          The purchase price is to also

3    include all owned equipment and

4    machinery located with the Le Tote

5    business wherever located today, and

6    inventory associated with the Le Tote

7    business available as of the closing.

8          The terms of the Asset Purchase

9    Agreement to memorialize this must be

10   acceptable to the debtors in their sole

11   discretion and be executed no later than

12   5:00 p.m. tomorrow, on October 16th.

13         In the event the successful bid is

14   not executed by 5:00 p.m. tomorrow, the

15   debtors will proceed with the backup bid

16   submitted by Branded Online in the

17   sealed bid round at the sale hearing on

18   October 20th.

19         With that, the debtors thank you

20   for your participation and would close

21   the auction.

22         MS. EDMONDSON:  McKenzie?

23         McKenzie, I think -- you did say

24   November 23rd is the outside date,

25   correct?

33

1        MS. SHEA:  This is McKenzie Shea

2    for BRG.

3        Jamie, can you just identify

4    yourself?

5        MS. EDMONDSON:  Yes.  Jamie

6    Edmondson on behalf of Robinson & Cole

7    on behalf of Saadia Group.

8        You did say November 23rd is the

9    outside date, correct?

10       MS. SHEA:  Correct.  That is what I

11   stated.

12       MS. EDMONDSON:  Thank you.

13       MR. DAYON:  This is Jeffrey Dayon

14   on behalf of the Saadia Group.

15       The right to extend is not the same

16   as the 17th.  It's the same as the

17   outside group.  It's the 23rd.

18       MS. SHEA:  Hold on a minute,

19   please.

20       David, and you can confirm that I

21   misspoke on that.  Both are the 23rd.

22       MR. EATON:  David Eaton, Kirkland &

23   Ellis, on behalf of the debtor.

24       Yes, confirm, the dates are the

25   23rd, the extension of the outside

34

1   dates.

2        MS. SHEA:  Thank you, David.

3        Okay.  With that, we're going to go

4   off the record at 10:42.

5        Again, we thank you everyone for

6   their participation --

7        MR. SAADIA:  I would like to ask --

8   I would like to ask one more thing.  I

9   didn't hear.

10       There is a -- other sealed bid, we

11   didn't hear what was that bid.  It was

12   not announced.

13       MR. EATON:  That's correct.

14       MS. SHEA:  It is not being

15   announced on the record.

16       MR. SAADIA:  There's a -- there's a

17   second bid or not?

18       MS. SHEA:  The Saadia bid, as

19   described on the record, has been

20   accepted as the successful bid.

21       We are not, on the record,

22   announcing the backup bid submitted by

23   Branded Online in the sealed bid round.

24       The debtors have represented to

25   you, and will confirm again now, that

35

1    Branded Online did submit a bid by the

2    4:00 p.m. deadline, and that bid has

3    been accepted as the backup bid.

4        MR. SAADIA:  Okay.  Understood.

5        MS. SHEA:  Thank you, again.

6        And I thank the court reporter,

7    Juan, Adalyne.  Greatly appreciate your

8    help today.

9        With that, if you could please end

10   the auction and close all the rooms.

11   Thank you very much.

12       (Auction concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

36

```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        RICHMOND DIVISION

 3

 4   In re:                    )
                               )  Chapter 11
 5   LE TOTE, INC., et al.,    )
                               )  Civil Action No.
 6           Debtors           )  20-33332(KLP)
                               )
 7                             )  (Jointly Administered)
                               )
 8
                   REPORTER'S CERTIFICATION
 9
                        OCTOBER 15, 2020
10

11           I, KATERI A. FLOT-DAVIS, Certified

12   Shorthand Reporter in and for the State of

13   Texas, hereby certify to the following:

14           I further certify that I am neither

15   counsel for, related to, nor employed by any

16   of the parties in the action in which this

17   proceeding was taken, and further that I am

18   not financially or otherwise interested in the

19   outcome of the action.

20      Certified to by me this _____ day of

21   _____, ____.

22

23   _____

24   KATERI A. FLOT-DAVIS, CSR 8462;

     Expiration Date: 12-31-22
25
```

Virtual Auction - October 15, 2020

| **$** | **4** | **A** |
|---|---|---|
| **$4,520,000**  19:17 | **4**  15:12 | **a.m.**  5:6 |
| **$4,920,000**  20:20 | **4,120,000**  15:8 | **accept**  11:1 |
|  | **4,320**  16:13 | **acceptable**  32:10 |
| **1** | **4,320,000**  15:15 19:10 | **accepted**  30:15 31:4 34:20 |
|  | **4,520,000**  16:21 19:13 | **accommodate**  29:5 |
| **1**  9:19 | **4,720**  20:1 | **account**  12:4 |
| **1.2**  31:8 | **4,720,000**  19:22 20:16 | **acknowledge**  7:22 |
| **10**  31:7 | **4,920,000**  20:5,18 | **acquired**  9:21 |
| **10:26**  5:6 | **412**  6:13 | **act**  5:19 |
| **10:32**  29:22 | **439**  7:5 | **address**  23:24 |
| **10:42**  34:4 | **442**  6:13 | **advisors**  5:14 12:23 |
| **11**  5:22 | **443**  6:14 | **affect**  28:5 |
| **11:39**  18:5 | **4:00**  29:24 30:10,24 | **affiliated**  5:23 |
| **12**  31:6 |  | **agree**  24:19,22,25 27:14 |
| **120**  15:12 | **5** | **agreement**  9:17 10:4 32:9 |
| **15**  23:18 26:16 29:3 |  | **ahead**  14:13 |
| **16th**  32:12 | **5**  21:25 22:4,10 | **allowed**  11:3 19:7 27:5 28:8 |
| **17th**  31:12 33:16 | **5,120**  21:6 | **amount**  11:13,15,21,23 15:10,17 |
| **18**  25:12 | **5,120,000**  21:2 | 16:23 19:15,24 20:7 21:5,15,24 22:9, |
|  | **5,320,000**  21:13,23 | 14 24:8 31:8 |
| **2** | **5,520**  22:5 | **announce**  11:14 |
|  | **5,720,000**  22:7 | **announced**  34:12,15 |
| **2**  9:21 | **5,920**  22:15 | **announcing**  34:22 |
| **20-3332**  5:24 | **5,920,000**  22:12 24:6 | **APA**  16:1 |
| **200,000**  11:11 12:2 15:7 19:4 | **520**  22:4 | **Apparel**  7:1 |
| **20th**  32:18 | **5:00**  31:9 32:12,14 | **apples-to-apples**  10:11 |
| **23rd**  31:13 32:24 33:8,17,21,25 |  | **approval**  16:8,10 |
| **269**  6:12 | **6** | **Asset**  32:8 |
|  |  | **assets**  6:10,21 7:4 23:15 |
| **3** | **60**  12:21 | **assign**  6:16 |
|  |  | **assignment**  31:25 |
| **3**  9:24 | **7** | **assumption**  31:25 |
| **3,920,000**  9:20 |  | **attempt**  6:6 |
| **30**  29:4,8 | **720**  22:10 | **attendees**  9:13 |
| **320**  21:25 |  | **attorney**  15:18 16:13,16 25:8 |
| **37**  25:12 | **9** | **auction**  5:16 6:9 7:8 8:25 10:12,14 |
|  |  |  |
|  | **9th**  7:5 |  |

11:4 12:10,17,21 13:2,6,12,15 19:8
23:12 25:16,20 26:10,13 27:5 32:21

**B**

**back** 10:23 13:15 18:7 21:1,12,22
22:16,18 24:21 25:8 26:9,23 27:5,13,
17 28:4

**back-up** 12:15

**background** 20:24

**backup** 12:12,18 30:16 32:15 34:22

**Bankruptcy** 5:25

**baseline** 8:24 9:1,5,15 10:17 11:18

**basis** 10:11

**Bassiri** 8:9,10 14:4 16:24 17:10,23
18:23 19:16 20:19 21:25 22:10 24:16
25:24,25 26:14,19 27:14 28:11,17,25
29:2,7

**bed** 26:25

**begin** 5:8

**behalf** 5:13 13:23 14:3,6 18:20 24:25
27:16 33:6,7,14,23

**Berg** 6:3

**bid** 6:11,23,25 7:6,7,9,14,23 8:5,11,
19,23,24 9:1,5,15,17 10:15,17,18
11:8,11,13,16,19,20 12:2,6,9,11,12,
20,25 15:6,7,10,12,14,15,16 16:19,
20,21,23 19:6,9,15,17,21,23 20:4,6,
15,20 21:4,12,14,23,24 22:8,13,20
23:14,19,21 24:5,7,10,11 25:5,6,11
26:2,11,16 30:14,16,19,20,22,23 31:3
32:13,15,17 34:10,11,17,18,20,22,23

**bidder** 7:3,8,20,25 11:3,6,7,25 12:15
13:18 16:3 19:7 24:12 25:11 26:7

**bidder's** 12:18

**bidders** 7:12 9:9,10 10:10 17:3
18:14,22 23:17,25 25:21

**bidding** 10:11,14 11:7,9,10 12:2,7,13
13:7 15:5 16:2 18:16 19:2,3,11,20
20:3,14 21:1,11,21 23:8 26:3

**bids** 6:19 7:12 8:21 11:1 14:17 16:13
23:13 26:4 27:9 29:24,25 30:9,11

**Branded** 7:15,17 8:8,10,23 9:15
10:16,23 11:19 14:3 16:20,22,24
18:18,20 19:12,14,16 20:14,19 21:22
22:1,6,18,19 23:8 24:14,17 27:15
30:14 32:16 34:23

**break** 22:25 23:10 25:21 26:15,24
27:12 28:18

**breakout** 13:8,14 17:7,21 23:2
28:13,24 29:12

**breakup** 11:17,21 12:4 14:18 16:4
30:3

**BRG** 5:5,14,18 18:5 23:5 29:17 30:5
33:2

**bring** 28:24

**business** 32:5,7

**C**

**call** 7:21 13:5,15,18

**called** 13:21

**Case** 5:23

**cases** 5:22

**Center** 31:20,22

**Chapter** 5:22

**choose** 27:19

**circulated** 9:2,8

**clarification** 31:1

**Clarifying** 15:25

**clear** 9:7 12:1

**close** 12:9 32:20

**closed** 10:2

**closing** 12:20 31:11 32:7

**Cole** 33:6

**Committee** 12:24

**communications** 30:3

**company** 6:2 28:16

**conclusion** 12:7,16

**conduct** 10:13

**conducting** 6:8 13:2

**confer** 24:20

**confirm** 5:9 8:4 13:19 18:19,23 20:1
24:14 26:1,8 33:20,24 34:25

**confirmation** 18:17

**confirming** 8:18

**consent** 32:1

**consult** 23:18 25:8 28:3

**consultant** 31:1

**consultation** 12:22 13:7 14:25
23:11 25:14,15,19 30:12 31:2

**consulted** 23:11 27:7 30:1,12

**content** 23:19

**continue** 10:24

**Continuing** 16:18

**contracts** 6:17 31:16,24

**control** 28:20,21

**copy** 9:1

**correct** 9:11 14:22 16:5,6,8 26:5,18
27:25 32:25 33:9,10 34:13

**costs** 31:23

**court** 5:7,25 16:7,10 18:6 29:19

**covered** 11:21

**COVID-19** 10:2

**credit** 11:23 14:18

**Creditors** 12:24

**cry** 11:1

**cure** 31:23

**current** 16:19 19:9 24:7

**customer** 9:22,23

**D**

**Dan** 6:2

**data** 9:22,23

**date** 31:12,13 32:24 33:9

**dates** 33:24 34:1

**David** 5:9 33:20,22 34:2

**Dayon** 26:20 27:10 28:2 33:13

**days** 12:21

**deadline** 29:24 30:10

**debtor** 28:9 33:23

**debtors** 5:13,23 6:15,17 7:1,11 8:22
10:10,13 11:14,22 12:8,14,22 13:12,
16 15:4 17:6,17 18:13 22:24 23:7,10,
22 25:14,18 27:3,6,17 28:14 29:23
30:1,6,11,17,25 31:4 32:10,15,19
34:24

**debtors'** 6:9 23:2

**decision** 17:4

**deducted** 12:4

**defined** 6:23 7:9,13

**deliberate** 30:25

**den** 6:3

**deposit** 12:19 31:7

**describe** 9:5

**describing** 9:12

**designate** 6:6 12:8 30:19

**designated** 10:16 12:18 30:15 31:24

**designation** 31:15

**determine** 14:20

**determined** 10:14 30:17

**determining** 12:5

**dialogue** 27:20

**discretion** 32:11

**discuss** 13:10 17:18 26:23 27:1

**discussed** 26:13

**discussing** 17:2

**discussion** 28:7

**discussions** 18:21,24

**Distribution** 31:19,22

**District** 6:1

**Docket** 6:12 7:5

**Dockets** 6:13

**dollar** 24:11

**dot** 24:1,3

**due** 10:2

**E**

**e-mail** 23:21,24 28:22,25

**earlier** 12:19

**Eastern** 5:25

**Eaton** 5:11 9:7,12 16:7,11 27:22 33:22 34:13

**ecommerce** 31:18

**Ed** 6:3

**Edmondson** 32:22 33:5,6,12

**elect** 13:16 17:6

**election** 26:11

**Ellis** 5:14 9:3 23:23 33:23

**encompass** 6:21

**end** 16:4

**engaged** 23:9

**entered** 6:11

**entirety** 11:4

**entitled** 14:19

**equipment** 31:21 32:3

**equivalent** 31:8

**event** 32:13

**everyone's** 30:5

**exceed** 11:12

**exception** 10:6

**Excuse** 15:18

**executed** 32:11,14

**executory** 6:17

**expires** 10:3

**explain** 23:16

**expressly** 6:18 9:22

**extend** 29:3 31:11 33:15

**extension** 10:1 33:25

**extent** 28:10,22

**F**

**faith** 9:25

**familiar** 7:23 8:4,11,18

**fee** 11:17,21 12:4 14:18 16:4

**figure** 19:5

**filed** 6:13 7:4

**firm** 24:8

**fit** 25:17

**five-minute** 27:12

**form** 9:16

**G**

**get-go** 25:6

**give** 11:22 23:17 25:20

**good** 5:4 8:9 9:25

**greater** 24:6

**group** 6:7 7:2,17,21 8:17 17:13 26:21 31:14,23 33:7,14,17

**H**

**hear** 5:10 13:10 34:9,11

**hearing** 15:3 32:17

**high** 24:7

**higher** 10:7 14:20

**highest** 11:12 12:1,5,8,11 30:18

**hold** 15:22 25:3 33:18

**holding** 15:23

**horse** 7:3,6,25 9:10,17 10:15 11:18, 20 21:20

**I**

**identify** 33:3

**Importantly** 24:5

**include** 9:22 32:3

**includes** 28:15

**increment** 11:10 12:3 15:7 16:21 19:4

**Influence** 5:15

**institute** 25:15

**instruct** 13:12

**intellectual** 6:9,20

**intend** 10:13,20 12:14 15:5

**inventory** 32:6

**invoking** 27:8

**involved** 18:22

**issue** 15:25

**J**

**Jack**  8:16,17 14:6 15:9,11 19:25 20:2
24:25

**Jamie**  33:3,5

**Jeffrey**  26:20 33:13

**Juan**  23:1 29:10

**K**

**keeping**  5:8

**Kirkland**  5:14 9:3 23:23 33:22

**Kirkland.com.**  24:2,4

**knowledge**  15:14

**Kramer**  6:4

**L**

**late**  30:6

**lawyer**  14:11

**Le**  5:22 6:22 31:17,19,22 32:4,6

**lead**  5:23

**leading**  15:14 16:19 19:9,21 20:4,15

**lease**  31:19

**leases**  6:16 31:20

**legal-in-nature**  10:8

**lenders**  12:23

**license**  10:1,3

**likewise**  7:13

**LLC**  7:2,17

**located**  31:21 32:4,5

**Lord**  6:22 31:18

**M**

**M-A-R-S-H-A-L-L**  24:1,3

**machinery**  31:21 32:4

**main**  13:6,15 25:20 26:9,13 27:5,18

**make**  5:16 12:25 15:9 16:23 17:3
19:14,23 20:6 21:14,24 26:11 30:7

**makes**  19:16

**MANSOUR**  20:8,11 21:16

**Marshall**  23:22 29:1

**Mckenzie**  5:5,18 9:7 18:4 23:5 25:24
29:17 30:4 32:22,23 33:1

**meaning**  26:2

**means**  11:5

**member**  9:3

**memorialize**  32:9

**mentioned**  10:9

**Michael**  6:3

**Mike**  8:10 14:3 18:19 24:16 25:4,25

**million**  15:12 21:25 22:4,10 31:6,8

**minimum**  19:12 20:4 21:12 22:3,11,
17

**minute**  15:19 21:8 22:22 33:18

**minutes**  23:18 25:23 26:16,22 28:1,3
29:3,4,8,9

**misspoke**  33:21

**momentarily**  9:2

**monitor**  13:13 17:8,20

**morning**  5:4 8:9

**move**  23:1

**mute**  20:24

**N**

**negotiate**  9:25

**Nicholson**  6:3

**night**  30:6

**noise**  20:25

**Nosek**  14:10,14,15,23 15:21,25 16:9,
12

**notice**  7:4

**notices**  6:13

**November**  31:12,13 32:24 33:8

**O**

**October**  7:5 32:12,18

**off-line**  27:4,24

**once-and-for-all**  26:2

**Online**  7:16,17 8:8,11,23 9:15 10:16,
23 11:19 14:3 16:20,22,25 18:18,20
19:12,14,16 20:15,20 21:22 22:1,6
23:8 24:14,17 27:15 30:15 32:16
34:23

**open**  11:1 15:5 18:1 25:5

**opening**  5:17 8:25

**operation**  31:17

**opportunity**  10:18 11:16 23:14
25:21 27:11

**option**  17:14

**order**  6:11,24 7:1,10,14,23 8:5 10:14,
22,24 11:7,9 13:21 15:4,14 16:18
19:11,20 20:3,14 21:1,11,21 25:11

**overbid**  11:15,20 15:8 19:12,21 20:5,
18 21:3 22:3,12,17

**owned**  32:3

**P**

**p.m.**  29:24 30:10,24 31:9 32:12,14

**Pardon**  20:10

**part**  28:6

**participate**  16:2 27:19

**participation**  21:19 32:20 34:6

**parties**  8:22 9:25 13:13 14:25 23:12
25:15,19 31:2

**party**  6:5 13:7,8 30:13

**pass**  11:4,5 19:8 20:9,12

**patience**  18:12 23:6

**pause**  21:7,9 22:22,23

**pay**  31:23

**payable**  11:17

**payment**  11:23

**PDF**  25:12

**pending**  5:24

**people**  17:7

**percent**  31:7

**period**  10:3

**permit** 18:14

**permitted** 19:6

**phone** 15:1

**platform** 13:3 31:18

**point** 23:9,12 25:10 27:6,21 29:10

**position** 25:4

**possibility** 17:1

**posted** 31:9

**prepared** 23:20

**prescribed** 15:4

**presented** 15:6

**price** 9:19 10:7 24:9 31:6 32:2

**primary** 5:19

**prior** 11:12 12:1,11 20:15

**privately** 17:2

**problem** 29:14

**procedure** 8:19 14:1,5,9 26:25

**procedures** 6:11,24,25 7:10,14,23 8:5,12 12:13,25 13:20 24:15 25:2,11, 16

**proceed** 10:21 32:15

**process** 18:22 24:22

**properties** 6:20

**property** 6:10

**provide** 19:5

**provided** 28:1

**provision** 9:21,24

**purchase** 9:16,19 10:7 24:9 31:6 32:2,8

**purposes** 7:8 8:25 10:12

**pursuant** 6:10,25 12:12

**push** 13:13 17:6,20 29:11

---

### Q

**qualified** 7:7,12 8:21 9:9

**question** 14:12 16:25 17:17

**questions** 13:20,24 14:24 15:3 27:23 28:5,10

---

### R

**read** 7:22 16:1 23:24 30:21

**ready** 15:24

**receive** 9:4 31:14

**received** 6:19 7:11,15 29:23 30:9

**receiving** 29:25 30:10

**Recess** 18:3 23:3 29:15

**record** 5:8,17 18:7,8 29:22 30:8,22 34:4,15,19,21

**refer** 7:2,16,18

**referred** 8:24 24:10

**related** 6:10,21 31:16

**relative** 24:10

**remain** 25:19

**reminder** 20:22

**reminders** 19:3

**reopen** 29:21

**reopening** 26:3

**reporter** 5:7 18:6,8 29:19,20

**representative** 23:21

**representatives** 28:15

**represented** 34:24

**request** 6:5 24:24 27:2

**required** 11:8,15 15:8 19:20 21:2,12 30:25 31:9

**Reservation** 25:13

**reserve** 12:24

**respect** 31:15

**respective** 6:7 7:21 13:14 17:21 29:11

**Response** 15:2

**result** 11:25

**resume** 18:16 19:1

**return** 25:23

**returned** 12:19

**returns** 11:9

**reviewed** 30:1,11

---

**Richard** 8:1,3 13:23 16:15

**rights** 25:13 31:15

**Rob** 14:10,13 15:23

**Robert** 14:14 15:21

**Robinson** 33:6

**robust** 23:7

**room** 13:6,9,16 17:7 18:1 23:2 25:20 26:10,13,15,24 27:5,18 28:4,9,12,13, 18,24

**rooms** 13:14 17:21 29:12

**round** 10:25 11:12 32:17 34:23

**rounds** 10:21 11:24 14:16

---

### S

**S-H-A-F-F-E-R** 24:2,3

**Saadia** 7:17,18 8:15,16,17 10:6,19, 23 14:7,8 15:6,9,11 17:13 19:19,25 20:16 21:2,6 22:3,5,11,15,16,19 23:8 24:7 25:1,3 26:21 30:18 31:3,14,23 33:7,14 34:7,16,18

**sale** 6:22 32:17

**sealed** 23:13 24:5 25:6 26:25 27:9 29:23,25 30:9,11,14 32:17 34:10,23

**seek** 23:13 31:1

**seeking** 6:15

**select** 12:14

**selected** 7:1 8:22

**sell** 6:15

**send** 28:22

**separate** 13:8

**set** 6:18 11:8

**SHAE** 15:3

**Shaffer** 23:22

**Shea** 5:4,5,12,18 8:3,7,14,20 9:11,14 14:2,6,13,22,24 15:13,20,23 16:6,14, 17 17:5,16 18:2,4,10,25 19:18 20:2, 10,13,21 21:7,10,18 22:2,6,11,16,21, 24 23:4,5 24:23 25:10 26:5,18 27:1, 16,25 28:8,13,20 29:1,5,9,16,17,21 30:4 33:1,10,18 34:2,14,18

**side** 28:9,11

**signed** 25:7

**Silverstein**  8:1,2,6 13:25 14:10

**simply**  12:1

**skipped**  11:6

**sole**  10:6 32:10

**solely**  31:16

**speak**  17:12 18:15 27:2

**speaker**  6:7

**speaking**  20:23

**spokesperson**  5:19 7:20

**stalking**  7:3,6,24 9:9,17 10:15 11:18, 20 21:20

**starting**  7:24

**stated**  33:11

**statement**  5:17 30:7

**States**  5:25

**Stockton**  31:20,22

**store**  6:16

**stores**  9:23 10:2

**subject**  16:7,9 31:25

**submit**  23:20 24:6 26:16

**submitted**  10:5 30:14,18,24 32:16 34:22

**subsequent**  10:21,25 11:24 14:16

**successful**  12:9,15,20 16:3 30:20, 22,23 31:3 32:13 34:20

**sufficiently**  11:19

---

### T

**talk**  28:23

**Taylor**  6:22 31:18

**team**  9:3 23:2

**terms**  6:23 7:9,13 11:17 30:21,23,24 32:8

**thing**  34:8

**third-party**  32:1

**Thirty**  29:9

**time**  6:18 7:19 10:19 11:2,10 13:1,17, 22 17:5,15 18:13 22:24 24:20 30:5

**times**  13:11

**today**  5:20,21 6:8 32:5

**today's**  5:16 7:8 8:25 10:12 12:16

**told**  25:4

**tomorrow**  31:10 32:12,14

**Tote**  5:22 6:22 31:17,19,22 32:4,6

**turn**  19:19

---

### U

**understand**  13:4,19,24,25 14:4,8 17:23 24:15,18,23 25:1 27:10 28:17

**understood**  17:16 26:19

**United**  5:24

**unusualness**  13:4

**utilize**  6:6 19:8

---

### V

**van**  6:3

**video**  13:13 17:8,19

**Virginia**  6:1

**virtually**  13:3,13

---

### W

**wait**  9:4

**wind-down**  10:1

**WITHERELL**  22:18

**work**  23:16

---

### Z

**ZAR**  7:3,7,25 9:18 10:5,15,22 11:18 13:23 14:11,15 15:13,22 16:3,13 19:10 20:4,6 21:12

**ZG**  7:1 14:17

**Zoom**  13:3

---