UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Le Tote, Inc., et al.,[1]                    Case No. 20-33332-KLP
                                                    Chapter 11
            Debtors.                                Jointly Administered

## MEMORANDUM OPINION

Before the Court is the motion of Wilmington Trust, National Association (the "Trust")[2] for the entry of an order "[e]stablishing standing to compel payment of rent and to assert related rights under and with respect to master lease" (the "Motion). The Trust is the holder of an $846,000,000 commercial mortgage-backed securities loan (the "Loan") made to, among others, twenty-four landlords (the "L&T Landlords")[3] of Lord & Taylor (the "Debtors" or "L&T").[4] The Motion seeks to establish the Trust's standing, as third party beneficiary, to compel the Debtors to pay all rents and other sums due the L&T Landlords under a single

---

[1] The jointly administered debtors are LT Card Company LLC, Case No. 20-33328-KLP; French Tote LLC, Case No. 20-33329-KLP; Le Tote, LLC, Case No. 20-33330-KLP; Lord and Taylor LLC, Case No. 20-33331-KLP; and Le Tote, Inc, Case No. 20-33332-KLP. The lead case is Le Tote, Inc., and the docket of each of the cases bears the notation that "[t]he docket in Case No. 20-33332 should be consulted for all matters affecting these cases."
[2] The Trust is trustee for Holders of Hudson's Bay Simon JV Trust 2015-HBS, Commercial Mortgage Pass-Through Certificates, Series 2015-HBS, acting by and through Situs Holdings, LLC, its special Servicer.
[3] The twenty-four landlords are LT Eastchester LLC, LT Ridgewood LLC, LT Stamford LLC, LT Westfield LLC, LT Garden City LLC, LT Bridgewater LLC, LT King of Prussia LLC, LT Fair Oaks LLC, LT Freehold Raceway LLC, LT Rockaway Town LLC, LT Willowbrook LLC, LT Woodfield LLC, LT Twelve Oaks LLC, LT Columbia LLC, LT Walden Galleria LLC, LT Quakerbridge Leasehold LLC, LT Garden State Leasehold LLC, LT Walt Whitman Leasehold LLC, LT Burlington Leasehold LLC, LT Livingston Leasehold LLC, LT Braintree Leasehold LLC, LT Natick Leasehold LLC, LT Bay Shore Leasehold LLC, and LT Northbrook Leasehold, LLC.
[4] The Motion seeks recovery against "Lord & Taylor," which is not a named debtor in these proceedings. As the Master Lease at issue is between the twenty-four landlords and Lord & Taylor LLC, the Court will construe the Motion as seeking to establish standing to recover against Lord & Taylor LLC. However, as this is a jointly administered case, the Court will refer to the respondent(s) as "Debtors" or "L&T," as that term is used by the parties.

1

master lease (the "Master Lease") that serves as collateral for the Loan. The Motion is opposed by the L&T Landlords[5] and the Debtors. For the reasons stated below, the Motion will be denied.

*Jurisdiction and Venue*

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and 157(a) and the general order of reference entered by the U.S. District Court for the Eastern District of Virginia on August 15, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §1408.

*Facts*

L&T leases each of twenty-four stores from the L&T Landlords pursuant to the Master Lease.[6] The Trust is not a party to the Master Lease. With respect to L&T's payment of rent, the Master Lease provides in Section 3.1(a) and (b) as follows:

> (a) Tenant will pay to Landlord in lawful money of the United States of America which shall be legal tender for the payment of public and private debts, at Landlord's address set forth on Exhibit G hereof or at such other place or to such other Person (subject to Section 3.1(b) and Section 3.1(c)) as Landlord from time to time may

---

[5] Specifically, one objection to the Motion has been submitted jointly by Hudson's Bay Company ULC, HBC US Holdings Inc., and HBC US Propco Holdings LLC (collectively, "HBC"), HBS Global Properties LLC ("HBS"), and the wholly-owned subsidiaries of HBS that are the landlords for 28 of the 38 L&T stores, including the twenty-four L&T Landlords. (ECF 353).
[6] ECF 157, #10.

2

> designate in a Notice, all Rent contemplated hereby during the Term on the basis hereinafter set forth.
>
> (b) Rent shall be payable by wire transfer or ACH transfer (or other electronic transfer method) in accordance with routing and payment instructions provided by Landlord.

The L&T Landlords are part of a consortium of landlords that are borrowers under the Loan. The original lenders were JPMorgan Chase Bank, N.A., Column Financial, Inc. and Bank of America, N.A. (collectively, the "Original Lenders"). The Original Lenders and borrowers executed a loan agreement (the "Loan Agreement") on July 22, 2015.[7] Deeds of Trust, Assignments of Leases and Rents, Security Agreements and Fixture Filing (collectively, the "Deeds of Trust") were also executed for the benefit of the Original Lenders to secure the Loan. L&T is not a party to the Loan Agreement or the Deeds of Trust.

As part of the loan transaction, L&T, as tenant, executed a Subordination, Non-Disturbance and Attornment Agreement dated July 22, 2015 (the "SNDA") with the Original Lenders.[8] Under the SNDA, L&T acknowledged that the Loan is secured in part by certain first priority fee or leasehold mortgages and by the Deeds of Trust encumbering the twenty-four locations, and it agreed to subordinate the Master Lease to the Loan. In return, the Original Lenders agreed to grant non-disturbance to L&T under the Master Lease. Among other provisions, the Master

---

[7] ECF 157, #1.
[8] ECF 157, #9.

Lease prohibits L&T and the L&T Landlords from amending or modifying the Master Lease in violation of the Loan Agreement.

Section 4(a) of the SNDA specifies that: "Landlord hereby instructs Tenant, and Tenant hereby covenants and agrees, to pay all rents, additional rents and all other sums due to Landlord pursuant to the Lease to [a specified bank] account via electronic funds transfer. . . " (the "Lockbox"). In § 9 of the SNDA, the term "Landlord", as it is used in the agreement, is defined as "the present landlord under the [Master Lease] and such landlord's successors in interest under the [Master Lease], but shall not mean or include the Lender."  Section 35.2 of the Master Lease provides that L&T "shall not take any action if such action would constitute a violation, breach or default of any of the terms of the Current Loan Documents; *provided, that*, [L&T] shall not be required to fulfill any of [the L&T Landlords'] direct obligations under the Current Loan Documents, including, without limitation, the obligation to make payments of debt service or any other obligation that does not directly relate to leasing and operating the Demised Premises."  In November 2015, the Original Lenders consummated a securitization of rated securities secured by the Loan and assigned their right, title, and interest in and to the Loan to the Trust.

Pursuant to § 4 of the SNDA, L&T agreed that all rents under the Master Lease would be paid directly to the lender-controlled Lockbox. From inception of

4

the Loan through March 2020, all rent that became payable under the Master Lease was paid to the Lockbox.

In 2019, HBC[9] sold L&T to Le Tote.[10] As part of the sale transaction, HBC Propco, HBC's subsidiary, agreed in favor of Le Tote to pay rent due under the Master Lease for the twenty-four L&T stores at issue for a period of three years.[11] The Trust was not a party to the sale or the rent payment agreement.

In April of this year, L&T defaulted on paying rent under the Master Lease. No rents have been paid since then, either by the Debtors or HBC Propco. As a result, the L&T Landlords defaulted on the Loan, and the Loan was subsequently accelerated. The Trust has not initiated foreclosure proceedings on the Loan nor has it sought the appointment of a receiver in state court.

*Analysis*

In its Motion, the Trust offers various theories to establish standing to enforce the payment obligations under the Master Lease. First, in recognition that the Trust is not a party to the Master Lease, it asserts that the SNDA creates an independent payment obligation of L&T to pay rent directly to the Trust. Section 4(a) of the SDNA, upon which the Trust relies in advancing its argument that privity of the obligation to pay rent exists between itself and L&T, states that

---

[9] HBC is the majority owner of HBS, which, in turn, owns the L&T Landlords.
[10] Asset Purchase Agreement, ECF 166, #9.
[11] The Trust speculates that HBC may have an incentive to cause the L&T Landlords to collude with L&T to the detriment of the Trust; however, no evidence of collusion was presented.

5

payment of any rent obligations "due to the [L&T Landlord(s)] pursuant to the [Master Lease be made] to [a specified lockbox] . . . ." HBC and the Debtors counter that this language provides only the mechanism for payment of rent but does not establish an independent right for the Trust to stand in the shoes of the L&T Landlords or otherwise demand payment under the Master Lease. *See, e.g., CWCapital Asset Mgmt. LLC v. Chicago Props., LLC,* No. 07 C 5029, 2009 WL 2972473, at *2 (N.D. Ill. Sept.11, 2009), *rev'd on other grounds*, 610 F.3d 497 (7th Cir. 2010) (execution of an SNDA did not vest lender with substantive rights to enforce its borrower's lease). The Court agrees with HBC and the Debtors.

The Master Lease, the only document under which L&T is obligated to pay rent, states clearly that L&T has no direct obligation to the Trust. Section 35.2 of the Master Lease states that L&T "shall not be required to fulfill any of [the L&T Landlords'] direct obligations . . . including, without limitation, the obligation to make payments of debt service . . ." to the Trust. Here, the Master Lease payments that the Trust seeks to recover from L&T represent debt service that L&T is expressly not obligated to pay to the Trust. L&T's obligation under the SNDA to pay rent to the Lockbox applies only to the extent rents are "due to the Landlord." As further evidence that the Trust may not demand payment from L&T under the Master Lease, the SNDA expressly defines Landlord as "the present landlord under the [Master Lease] . . . *but shall not mean or include Lender.*" (emphasis added).

6

The SNDA does not amend the language of the Master Lease by creating a separate, enforceable obligation to pay rent to the Trust; rather, it only requires that any rent paid be remitted via the Lockbox.

Next, the Trust asserts that it has rights as third party beneficiary of the Master Lease that grant it the authority to enforce the Master Lease against L&T. In doing so, the Trust points to language in Article XXXV of the Master Lease that requires L&T to take no action that would constitute a violation of the terms of the loan documents between the Trust and the L&T Landlords including specific prohibitions against modifying the Master Lease.  *See* §§ 35.2, 35.19 of the Master Lease. Nothing in Article XXXV, nor elsewhere in the Master Lease, confers any right to the Trust to demand payment of rent.  The rent provisions in the Master Lease are contained in Article III, which expressly includes the right of the L&T Landlords under Section 3.2(b) of the Master Lease "to change the payment date of the monthly installments of Fixed Annual Rent."  Again, the Trust is obfuscating its right to collect loan payments from the L&T Landlords with the exclusive right of the L&T Landlords to collect rent from L&T.

The parties agree that New York law governs the Master Lease.  New York law permits third parties to enforce a contract in two situations: (1) "when the third party is the only one who could recover for the breach;" or (2) "when it is otherwise clear from the language of the contract that there is an intent to permit

7

enforcement by the third party." *Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 94 N.E.3d 456, 30 N.Y.3d 704, 709 (2018) (internal citation omitted). Neither of those circumstances is present here. The Master Lease expressly provides rights to the L&T Landlords, not to the Trust, in the event of a breach, and the Master Lease does not include language demonstrating any intent, express or implied, to permit enforcement by the Trust. Article XXXV of the Master Lease affords certain protections to the Trust but it does not establish a clear intent to permit enforcement by the Trust of L&T's obligation to pay rent.

New York law places the burden of proof on a party seeking to enforce a contract as the third party beneficiary to demonstrate that the contract it seeks to enforce was made for its benefit. *See Flemington Natl. Bank & Trust Co. (N.A.) v. Domler Leasing Corp.*, 410 N.Y.S.2d 75 (App. Div. 1978), *aff'd*, 48 N.Y.2d 678 (1979). The Trust has failed to carry that burden. The operative contract is the Master Lease, which makes no reference to the Trust, its predecessor, or any potential third party beneficiary. The Trust has failed to carry its burden of proof and has not demonstrated that it has the right as third party beneficiary to demand payment of rent directly from the Debtors.

The Trust also contends that its rights as a secured creditor under the Uniform Commercial Code enable it to enforce the L&T Landlords' rights under the Master Lease against L&T. U.C.C. § 9-109(a) provides that Article 9 applies

8

to a transaction "that creates a security interest in personal property or fixtures by contract." U.C.C. § 9-109(a) (Am. L. Inst. & Unif. L. Comm'n 2010). As further evidence that Article 9 only applies to security interests in personal property, U.C.C. § 9-109(d)(11) states that Article 9 does not apply to "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder . . . ." U.C.C. § 9-109(d)(11) (Am. L. Inst. & Unif. L. Comm'n 2010). Thus, a security interest in a real property lease or assignment of rents under a real property lease, as in the present case, would typically be excluded from Article 9's provisions. *See Resol. Tr. Corp. v. Binford*, 114 N.M. 560, 568, 844 P.2d 810, 818 (1992) (real estate leasehold assigned as security is not subject to Article 9).

      The Trust disputes that the UCC is inapplicable by pointing to § 9-109(a)(11)(D), which provides an exception "to the extent that provision [for the creation or transfer of an interest in or lien on real property] is made for security agreements covering personal and real property in Section 9-604." The Trust contends that UCC §9-604 applies because the Master Lease is not only a real property lease but is also a contract, and, to the extent it is a contract, it contains contract rights and general intangibles. As a consequence, the Trust maintains that under § 9-604(a)(1), it may enforce its security interest in these intangible contract rights so long as it does not enforce its rights as to the real property. The Trust fails to cite any case law to support its argument that, despite

§ 9-109(d)(11)'s express exclusion of real property leases "*or rents thereunder*" from the provisions of Article 9, it may nevertheless avail itself of the enforcement provisions of UCC § 9-607 in order to compel the payment of rent. The Court chooses not to ignore the plain language of §9-109(a)(11) where, as in this case, the secured creditor is seeking to collect rents due under a real property lease. Because the essence of the Trust's Motion is to obtain authority to compel payment of rent, it has failed to show that the provisions of § 9-604 are applicable. Therefore, standing is not conferred to the Trust under the UCC.

Finally, the Trust challenges HBC and L&T's position that the assignment of rents provision contained in the Deeds of Trust establishes only a lien on rent payments rather than title to the rents.[12] Contrary to the Trust's assertion, HBC's reliance upon *In re S. Side House, LLC*, 474 B.R. 391 (Bankr. E.D.N.Y. 2012) is not misplaced. In *S. Side House*, the court held that the assignment of rents at issue provided the lender with a lien on the rents but that "title to the rents remain[ed] with the borrower." *Id*. at 403.[13] Here, as in *S. Side House*, the assignment of the

---

[12] In an earlier pleading in connection with the Debtors' request for rent deferral, the Trust asserted that it has a lien on rent payments. ECF 195.

[13] In *Soho 25 Retail, LLC v. Bk. of Am. (In re Soho 25 Retail, LLC)*, Adv. No. 11-1286 (SHL), 2011 WL 1333084, at *6 (Bankr. S.D.N.Y. Mar. 31, 2011), Judge Lane summarized New York law as follows:
> Indeed, the majority of New York state cases are of the view that an absolute assignment is not permitted, regardless of the language in the agreement. *See, e.g., Lt Propco, LLC v. Carousel Ctr. Co., L.P.*, 68 A.D.3d 1695, 1696 (N.Y.App. Div. 4th Dep't 2009) ("Because New York operates under a lien theory as opposed to a title theory with respect to mortgages, the language used in the assignment instrument itself is not determinative of what rights are actually transferred."); *Suderov v. Ogle*, 149 Misc.2d 906, 909 (N.Y.App. Term 1991) ("Whenever property is transferred, no matter in what form or by what conveyance, as security for a debt, the conveyance creates a mortgage and

Master Lease and any rents due thereunder was for collateral purposes and did not transfer the right to collect rents to the Trust.[14] Under New York law, the Trust does not have title to the rents by virtue of the assignments.

HBC posits that "the outcome of the Motion will determine whether [L&T] is currently obligated to pay rent to the [L&T Landlords]—which has offered to forbear from enforcing . . . rent obligations during these proceedings to facilitate the efficient disposition of this bankruptcy—or to [the Trust] which is effectively the landlords' lender---which did not take any action against [L&T] [sic] prior to

---

the parties are subject only to the obligations of a mortgagor and mortgagee."); *Dream Team Assocs. v. Broadway City*, 2003 N.Y. Slip Op 50894U, 2003 WL 21203342, 2003 N.Y. Misc. LEXIS 592, at *6 (N.Y.Civ.Ct. May 7, 2003) ("When a lease is assigned as security for a mortgage, no matter what language is used in the instrument of assignment, no transfer of title to the lease can be effected*.*"); *Ganbaum v. Rockwood Realty Corp.*, 62 Misc.2d 391, 393 (N.Y.Sup.Ct.1970) ("[A]n assignment of rents clause in a mortgage is not self-executing, but becomes effective only upon foreclosure or upon the appointment of a receiver of the rents of the mortgaged property."). *See also Mooney v. Byrne*, 163 N.Y. 86, 93 (N.Y.1900) ("[A] conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee."); *Carr v. Carr*, 52 N.Y. 251, 260 (N.Y.1873) ("[W]henever property is transferred, no matter in what form or by what conveyance, as a security for a debt, the transferred takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees."). *But see Harris v. Lesster*, 35 A.D. 462, 467 (N.Y.App.Div.1898), appeal dismissed, 159 N.Y. 533 (1899) (finding an assignment described as "further security" to be "perfectly compatible" with an absolute assignment effectuated prior to the appointment of a receiver); *Schlesinger v. Sanford Main Shopping Center, Inc.*, 37 Misc.2d 840, 845 (N.Y.Sup.Ct.1962) ("It has been held that the appointment of a receiver or the actual possession of the premises by the mortgagee are not essential to effectuate a valid assignment of rents, and that such assignment may be accomplished by special agreement.").

In this case, the Trust did not seek appointment of a receiver nor did it commence foreclosure proceedings prior to filing the Motion. Under the majority of New York cases, the assignment, in whatever form, would not transfer title to the Master Lease to the Trust. This Court will apply the majority view.

[14] The Trust states that the issue is not necessarily one of New York law because there are twenty-four mortgages containing rent assignments recorded in nine different states and the law of the state where the respective property is located governs each mortgage. However, the Trust has also expressed a concern that the L&T Landlords may consent to a resolution on something other than an indivisible, non-severable basis, in violation of the Loan Agreement. The Trust fails to reconcile its desire to preserve the non-severability provision with the implication of having the Master Lease include leaseholds located in multiple states. Given the non-severability provision in the Loan Agreement, the failure of the Trust to seek severance in connection with the Motion and the parties' choice of law provisions, the Court will apply New York law exclusively.

11

this proceeding and has not yet even initiated a foreclosure action following an alleged event of default on its loan . . . ."[15]  HBC's statement perfectly illustrates the Debtors' dilemma—who is the proper party with whom to negotiate matters concerning the Master Lease?  The Debtors plead that they "cannot owe identical monetary obligations to two separate and competing creditors,"[16] citing § 502(e)(1)(B) of the Bankruptcy Code, 11 U.S.C.§ 502(e)(1)(B), which prohibits double recoveries.[17]

    Aside from the legal implications, there are significant practical consequences when multiple parties compete over control of one side to a dispute. A large chapter 11 bankruptcy is generally more likely to be successful when parties are able to resolve issues through negotiation rather than by engaging in prolonged, extensive litigation.  When a landlord seeking to negotiate an assumption or rejection of its lease and its lender are unable to agree on the best course of action but both claim authority to bind the landlord, the debtor is placed

---

[15] Memorandum of Hudson's Bay Company ULC, et al, in Opposition to Wilmington Trust's Motion, ECF # 353, p.2.

[16] Debtors' Memorandum, ECF # 358, p, 2.

[17] Section 502(e)(1)(B) provides that a court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B).  The goal of Section 502(e)(1)(B) is to prevent "redundant recoveries on identical claims against insolvent estates in violation of the fundamental [Bankruptcy] Code policy fostering equitable distribution among all creditors of the same class." *In re Caribbean Petroleum Corp.*, No. 10-12553(KG), 2012 WL 1899322, at *2 (Bankr. D. Del. May 24, 2012), *aff'd*, 566 F. App'x 169 (3d Cir. 2014).

in an untenable position. Debtors in possession must know who has final authority to commit to a resolution. In this case, with the Trust having failed to take the steps necessary to stand in the shoes of the L&T Landlords, such authority must remain with the L&T Landlords.

## Conclusion

In the Motion, the Trust claims that it has the right to participate in the bankruptcy proceedings as a party in interest pursuant to § 1109(b) of the Bankruptcy Code, 11 U.S.C. § 1109(b), an assertion neither HBC nor the Debtors contest. However, granting the expanded rights that the Trust seeks, including the ability to compel payment of rent when the L&T Landlords may have negotiated a resolution with the Debtors that does not please the Trust, is unworkable. Until such time as the Trust has established its authority as the controlling party under the Master Lease, it may be heard only as an interested party. Accordingly, the Motion will be denied.

Signed: October 30, 2020

                                                  /s/ Keith L. Phillips
                                    United States Bankruptcy Judge

                                    Entered on Docket: October 30, 2020

Copies:

Paul A. Driscoll
Zemanian Law Group
City Center, Suite 201
223 East City Hall Avenue

Norfolk, VA 23510

Robert B. Kaplan
Jeffer Mangels Butler & Mitchell LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813

Nicolas De Lancie
Jeffer Mangels Butler & Mitchell LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813John C. Longmire (admitted pro hac vice)

Thomas M. Geher
Jeffer Mangels Butler & Mitchell LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813

John C. Longmire
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Jeffrey B. Korn
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Agustina G. Berro
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Brittany M. Wagonheim
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Christopher A. Jones
Whiteford, Taylor & Preston L.L.P.
Two James Center

1021 E. Cary Street, Suite 1700
Richmond, VA 23219

Vernon E. Inge, Jr.
Whiteford, Taylor & Preston L.L.P.
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219

Corey S. Booker
Whiteford, Taylor & Preston L.L.P.
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219

Steven N. Serajeddini, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Ave.
New York, NY 10022

David L. Eaton
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle St.
Chicago, Ill. 60654

A. Katrine Jakola, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle St.
Chicago, Ill. 60654

John R. Worth
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle St.
Chicago, Ill. 60654

Jaimie Fedell

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle St.
Chicago, Ill. 60654

Michael A. Condyles
Kutak Rock LLP
901 East Byrd St., Suite 1000
Richmond VA 23210-4071Peter J. Barrett

Peter J. Barrett
Kutak Rock LLP
901 East Byrd St., Suite 1000
Richmond VA 23210-4071

Jeremy S. Williams
Kutak Rock LLP
901 East Byrd St., Suite 1000
Richmond VA 23210-4071

Brian H. Richardson
Kutak Rock LLP
901 East Byrd St., Suite 1000
Richmond VA 23210-4071

John P. Fitzgerald, III
Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219