Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle  Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF LE TOTE, INC. AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

having:

      a.      commenced, on August 2, 2020 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/letote/.  The location of the Debtors' service address is 250 Vesey Street, 22nd Floor, New York, New York 10281.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

Bankruptcy Court for the Eastern District of Virginia (the "<u>Bankruptcy Court</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

b.    continued to operate their businesses and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.    filed,[3] on August 2, 2020, the *Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 24], the *Disclosure Statement for Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 25], and the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. 26];

d.    filed, on August 2, 2020, the *Debtors' Motion for Entry of an Order (I) Establishing Bidding Procedures, (II) Scheduling Bid Deadlines and Auctions, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Sale of the Debtors' Assets Free and Clear, and (V) Granting Related Relief* [Docket No. 27];

e.    obtained, on August 28, 2020, the entry of the *Order (I) Establishing Bidding Procedures, (II) Scheduling Bid Deadlines and Auctions, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 269] (the "<u>Bidding Procedures Order</u>") approving the bidding procedures;

f.    obtained, on October 22, 2020, the entry of the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 473] (the "<u>Sale Order</u>") approving the sale of certain of the Debtors' assets (the "<u>Asset Sale</u>").

g.    filed, on February 1, 2021, the *Second Amended Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 879] (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") and the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 880] (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>");

h.    obtained, on February 5, 2021, the entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith,*

---

[3]    Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*(IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 905] (the "<u>Disclosure Statement Order</u>") approving the Disclosure Statement, solicitation procedures (the "<u>Solicitation Procedures</u>"), and related notices, forms, and ballots (collectively, the "<u>Solicitation Packages</u>");

i.  obtained, on February 5, 2021, the entry of the *Order (I) Authorizing and Approving the HBC Settlement by and Among the Debtors and the HBC Secured Parties to the HBC Settlement and (II) Granting Related Relief* [Docket No. 900] (the "<u>9019 Order</u>") approving a settlement (the "<u>HBC Settlement</u>") of potential claims and causes of action that the estates held against HBC US Propco Holdings LLC and HBC US Holdings Inc. (together, the "<u>HBC Parties</u>");

j.  caused the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed on February 9, 2021 in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Bankruptcy Local Rules</u>"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 910] (the "<u>Solicitation Affidavit</u>");

k.  caused notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>") to be published, on February 10, 2021, in *The New York Times* (national edition) as evidenced by the *Proof of Publication* [Docket No. 911] (the "<u>Publication Affidavit</u>");

l.  filed, on March 1, 2021, the *Plan Supplement for the Second Amended Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 990] (as modified, amended, or supplemented from time to time, the "<u>Plan Supplement</u>") and, on March 3, 2021, caused notice of the filing of the Plan Supplement to be distributed and delivered certain solicitation and Plan Supplement documents via email and first class mail in accordance with paragraph 15 of the Disclosure Statement Order, as evidenced by, among other things, the related *Affidavit of Service* [Docket No. 1008];

m.  filed, on March 23, 2021, the *Debtors' Memorandum of Law of in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 1081] (as amended, the "<u>Confirmation Brief</u>");

n.  filed, on March 23, 2021, the *Declaration of Ed Kremer, Chief Restructuring Officer of Le Tote, Inc., in Support of the Debtors' Second Amended Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 1083] (the "<u>Kremer Declaration</u>");

o.  filed, on March 23, 2021, the *Declaration of Brett Witherell in Support of Confirmation of the Debtors' Second Amended Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 1084] (the "<u>Witherell Declaration</u>");

p. filed, on March 23, 2021, the *Certification of Stretto Regarding Tabulation of Votes in Connection with the Second Amended Joint Chapter 11 Plan of Le Tote, Inc. and Its Debtor Affiliates* [Docket No. 879] (the "Voting Report").

The Bankruptcy Court having:

a. entered the Bidding Procedures Order on August 28, 2020;

b. entered the Sale Order on October 22, 2020;

c. entered the Disclosure Statement Order on February 5, 2021;

d. set March 10, 2021, at 5:00 p.m., prevailing Eastern Time as the deadline for voting on the Plan;

e. set March 10, 2021, at 5:00 p.m., prevailing Eastern Time as the deadline for filing objections in opposition to the Plan;

f. set March 18, 2021, at 1:00 p.m., prevailing Eastern Time as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Voting Report, the Confirmation Hearing Notice, the Solicitation Affidavit, Publication Affidavit,, and all filed pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

h. held the Confirmation Hearing;

i. heard the statements and arguments made by counsel with respect to Confirmation;

j. considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

k. entered rulings on the record at the Confirmation Hearing held on March 24, 2021 (the "Confirmation Ruling");

l. overruled any and all objections to the Plan and Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

m. taken judicial notice of all papers, pleadings, and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the record of the Chapter 11 Cases and the the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing, including, without limitation, the Kremer Declaration, the Witherell Declaration, and the Voting Report establish just cause for the relief granted in this Confirmation Order, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  The Debtors confirm their consent, pursuant to

Bankruptcy Rule 7008, to entry of a final order by the Bankruptcy Court in connection with Confirmation to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue in this Bankruptcy Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.**    **Eligibility for Relief.**

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.**    **Commencement and Joint Administration of the Chapter 11 Cases.**

4.    On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 72], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

**E.**    **Appointment of the Creditors' Committee.**

5.    On August 12, 2020, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 117] to represent the interests of unsecured creditors of the Debtors in the Chapter 11 Cases.

F.      **Objections Overruled.**

6.      All parties have had a full and fair opportunity to litigate all issues raised in the

objections to Confirmation of the Plan, or which might have been raised, and the objections have

been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set

forth in this Confirmation Order.  Any resolution or disposition of objections to Confirmation

explained or otherwise ruled upon by the Bankruptcy Court on the record at the Confirmation

Hearing is hereby incorporated by reference.  Unless otherwise expressly provided herein, all

unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

All objections to Confirmation not filed and served prior to the deadline for filing objections to the

Plan, if any, are hereby deemed waived and shall not be considered by the Bankruptcy Court.

G.      **Disclosure Statement Order.**

7.      On February 5, 2021, the Court entered the Disclosure Statement Order, which,

among other things, approved (a) the Disclosure Statement as containing adequate information

within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) the

Solicitation Procedures; (c) the Solicitation Packages; (d) March 10, 2021, at 5:00 p.m., prevailing

Eastern Time as the deadline for objecting to the Plan (the "Confirmation Objection Deadline")

and for voting to accept or reject the Plan (the "Voting Deadline"); and (e) March 18, 2021, at

1:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the

Confirmation Hearing.

H.      **Burden of Proof—Confirmation of the Plan.**

8.      The Debtors, as proponents of the Plan, have met their burden of proving the

applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

of the evidence, which is the applicable evidentiary standard for Confirmation.  Further, the

Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing

evidence.  Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**I.      Transmittal and Mailing of Materials; Notice.**

9.      As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan are in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules, and the procedures set forth in the Disclosure Statement Order.  The Debtors provided due, adequate, and sufficient notice of the Confirmation Objection Deadline, the Voting Deadline, and the Confirmation Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**J.      Solicitation.**

10.      The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.  The period during which Holders of claims in classes entitled to vote on the Plan were to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.  The Solicitation Packages provided the opportunity for voting creditors to opt out of the releases.

K.    **Voting Report.**

11.    Before the Confirmation Hearing, the Debtors filed the Voting Report, which was

admitted into evidence during the Confirmation Hearing.  As described in the Voting Report, the

procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure

Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and

all other applicable rules, laws, and regulations.

12.    As set forth in the Plan, Holders of Claims in Class 3 (Seller Note Secured Claim)

and Class 4 (General Unsecured Claims) (collectively the "Voting Classes") were eligible to vote

on the Plan in accordance with the Solicitation Procedures.  Holders of Claims or Interests in

Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 6

(Intercompany Interests) (collectively, the "Deemed Accepting Classes") are Unimpaired and

conclusively presumed to accept the Plan and, therefore, were not entitled to vote to accept or

reject the Plan.  Holders of Claims in Class 5 (Intercompany Claims) either are Unimpaired and

conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and

conclusively deemed to have rejected the Plan, and, therefore, are not entitled to vote to accept or

reject the Plan.  Holders of Claims or Interests in Class 7 (Le Tote Interests) and Class 8

(Section 501(b) Claims) (collectively, the "Deemed Rejecting Classes") are Impaired and

conclusively deemed to have rejected the Plan, and, therefore, are not entitled to vote to accept or

reject the Plan.

13.    As evidenced by the Voting Report, Class 3 voted to accept the Plan, in accordance

with section 1126 of the Bankruptcy Code.  Notwithstanding the Voting Report, by virtue of the

vote of Liquidity Capital as set forth in paragraph 115 herein, Class 4 has voted to reject the Plan.

14.    Based on the foregoing, and as evidenced by the Voting Report, at least one

Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has

voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the
Bankruptcy Code.

**L.      Plan Supplement.**

15.      The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan,
and the filing and notice of the documents included in the Plan Supplement are adequate and proper
in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the
Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases.  No other
or further notice is or will be required with respect to the Plan Supplement unless otherwise
provided for in this Confirmation Order or the Plan.   All documents included in the Plan
Supplement are integral to, part of, and incorporated by reference into the Plan.  The terms of all
such documents remain subject to the conditions set forth in Article IX of the Plan.  In the event
that any term in any such Plan Supplement document conflicts with or is inconsistent in any respect
with the terms of the Plan, the terms of the Plan shall control.  Subject to the terms of the Plan, and
compliance with the Bankruptcy Code and the Bankruptcy Rules, the Debtors reserve the right to
alter, amend, update, or modify the Plan Supplement through and including the Effective Date.

**M.      Modifications to the Plan.**

16.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan
since the commencement of solicitation described or set forth herein constitute technical changes
or changes with respect to particular Claims or Interests made with the agreement of the Holders
of such Claims or Interests and do not materially and adversely affect the treatment of any such
Claims or Interests.   Pursuant to Bankruptcy Rule 3019, these modifications do not require
additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes
under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests
be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

Accordingly, all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**N.      Bankruptcy Rule 3016.**

17.      The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**O.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

18.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**1.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

19.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**(a) Sections 1122 and 1123(a)(1)—Proper Classification.**

20.      Article III of the Plan provides for the separate classification of Claims and Interests into eight Classes (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, the TSA Shortfall Claim, and Independent Director Fee Claims, which are addressed in Article II of the Plan and are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons

exist for the separate classification of such Classes of Claims and Interests.  The classifications

were not implemented for any improper purpose and do not unfairly discriminate between, or

among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims

or Interests that are substantially similar to the other Claims or Interests within that Class.

Accordingly, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy

Code.

### (b) Section 1123(a)(2)—Specification of Unimpaired Classes.

21.    Article III of the Plan specifies that Claims and Interests in the Deemed Accepting

Classes are Unimpaired under the Plan and Claims and Interests in Class 5 are either Impaired or

Unimpaired under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2)

of the Bankruptcy Code.

22.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims,

Priority Tax Claims, Professional Fee Claims, fees due and payable pursuant to section 1930 of

Title 28 of the United States Code before the Effective Date, the TSA Shortfall Claim, and

Independent Director Fee Claims will be paid in full in accordance with the terms of the Plan,

although these Claims are not separately classified under the Plan.

### (c) Section 1123(a)(3)—Specified Treatment of Impaired Classes.

23.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.

Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (d) Section 1123(a)(4)—No Discrimination.

24.    Article III of the Plan provides the same treatment to each Claim or Interest in any

particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed

to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies

the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(e)  Section 1123(a)(5)—Adequate Means for Plan Implementation.**

25.    The Plan and the various documents included in the Plan Supplement provide

adequate and proper means for the Plan's execution and implementation, including:  (a) the sources

of consideration for Plan distributions and Waterfall Recovery; (b) the execution and delivery of

any appropriate agreements, documents, securities, and instruments contemplated under the Plan

(or necessary or desirable to effect the transactions contemplated under the Plan); (c) the general

settlement of of all Claims, Interests, Causes of Action, and controversies released, settled,

compromised, or otherwise resolved pursuant to the Plan pursuant to section 1123 of the

Bankruptcy Code; (d) the distribution of estate assets; (e) the retention of certain Causes of

Actions; (f) the identity and terms of compensation of the Plan Administrator; (g) the assumption

and/or rejection of Executory Contracts and Unexpired Leases, including the Assumption Orders;[4]

(h) the cancellation of certain existing agreements, obligations, instruments, and Interests; (i) the

vesting of the assets of the Debtors' Estates in the Post-Effective Date Debtors to be administered

by Plan Administrator; and (j) the execution, delivery, filing, or recording of all contracts,

securities, instruments, releases, and other agreements or documents in furtherance of the Plan.

Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

---

[4]    "Assumption Orders" means the *Amended Order Approving the Assumption and Assignment of a Certain
Unexpired Lease* [Docket No. 1013] and the *Order Approving the Assumption and Assignment of Certain
Unexpired Lease* [Docket No. 799].

**(f)  Section 1123(a)(6)—Non-Voting Equity Securities.**

26.    The Plan does not provide for the issuance of equity or other securities of the
Debtors, including non-voting equity securities.  Accordingly, the Plan satisfies the requirements
of section 1123(a)(6) of the Bankruptcy Code.

**(g)  Section 1123(a)(7)—Directors and Officers.**

27.    In accordance with Articles IV.I and IV.L of the Plan, as of the Effective Date, the
existing board of directors or managers, as applicable, of the Debtors shall be dissolved without
any further action required on the part of the Debtors.  Following the Effective Date, the
Independent Directors of the Debtors shall retain authority solely with respect to matters related
to Professional Fee Claim requests by Professionals acting at their authority and direction in
accordance with the terms of the Plan and the Plan Administrator shall be appointed as the sole
manager, sole director, and sole officer of the Post-Effective Date Debtors, subject to the powers
and authority of the Plan Administrator Oversight Board.  The selection of the Plan Administrator
and the process therefore is consistent with the interests of Holders of Claims and Interests and
public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the
Bankruptcy Code.

**(h)  Section 1123(b)—Discretionary Contents of the Plan.**

28.    The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy
Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the
Plan satisfies section 1123(b).

**i.    Impairment/Unimpairment of Any Class of Claims or Interests.**

29.    Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class

of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

30.    Article V of the Plan provides for the rejection of the Debtors' Executory Contracts

and Unexpired Leases in existence as of the Confirmation Date, effective as of the Effective Date

(except as otherwise provided in the Plan), unless such Executory Contract or Unexpired Lease:

(a) was previously rejected, assumed, or assumed and assigned by the Debtors; (b) is listed on the

Schedule of Assumed Executory Contracts and Unexpired Leases; (c) is the subject of a motion to

assume Executory Contracts or Unexpired Leases that is pending as of the Effective Date; (d) is

to be assumed in connection with any sale transaction; (e) is a contract, instrument, release,

indenture, or other agreement or document entered into in connection with the Plan; or (f) is a

D&O Liability Insurance Policy.

**iii.    Compromise and Settlement.**

31.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and in

consideration for the distributions and other benefits provided under the Plan and with the support

of the various creditors, stakeholders, and other parties in interest, including the Committee, the

provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of

Action, as applicable, and controversies released, settled, compromised, or otherwise resolved

pursuant to the Plan.  Those settlements and compromises are fair, equitable, and reasonable and

approved as being in the best interests of the Debtors and their Estates.

32.    The Plan incorporates an integrated compromise and global settlement of numerous

Claims, issues, and disputes implemented to achieve a beneficial and efficient resolution of the

Chapter 11 Cases for all parties in interest.  Accordingly, except as otherwise set forth in the Plan

or herein, in consideration for the distributions and other benefits provided under the Plan,

including the release, exculpation, and injunction provisions, the Plan constitutes a good faith

compromise and settlement of all claims and controversies resolved pursuant to the Plan.  Each

component of the compromise and settlement, including the treatment of Claims and Interests

pursuant to the Plan, is an integral, integrated, and inextricably linked part of the Plan.

### iv.  Releases by Debtors.

33.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of

claims and Causes of Action by the Debtors described in Article VIII.D of the Plan

(the "Debtor Release") represent a valid exercise of the Debtors' business judgment under

Bankruptcy Rule 9019.  The Debtors' or Post-Effective Date Debtors' pursuit of any such

claims against the Released Parties is not in the best interests of the estates' various constituencies

because the costs involved would likely outweigh any potential benefit from pursuing such claims.

The Debtor Release is fair and equitable and complies with the absolute priority rule.

34.    Class 3 voted in favor of the Plan, including the Debtor Release.  The Plan,

including the Debtor Release, was negotiated at arm's-length and in good faith by sophisticated

parties represented by able counsel and financial advisors.  The Debtor Release is therefore the

result of an arm's-length negotiation process.

35.    The Debtor Release is:  (a) in exchange for the good and valuable consideration

provided by the Released Parties; (b) a good faith settlement and compromise of the claims

released by the releases in Article VIII.D of the Plan; (c) in the best interests of the Debtors and

all Holders of Claims and Interests; (d) fair, equitable and reasonable; (e) given and made after

reasonable investigation by the Debtors and after notice and opportunity for hearing; and (f) a bar

to any of the Debtors asserting any claim released by the releases in Article VIII.D against any of the Released Parties.

36.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

### v.    Release by Holders of Claims and Interests.

37.    The release by the Releasing Parties (the "Third-Party Release"), set forth in Article VIII.E of the Plan, is an essential provision of the Plan.  The Third-Party Release is: (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Releasing Parties; (d) materially beneficial to, and in the best interests of, the Debtors, their estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release against any of the Released Parties; and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

38.    The Released Parties have made a substantial contribution to the Debtors' reorganization.  Furthermore, the Third-Party Release is consensual as the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan, and voting creditors and interest holders were given the opportunity to opt out of the Third-Party Release, and the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots.  There is an

identity of interests between the Debtors and the entities that will benefit from the Third-Party Release. Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and Plan process, share a common goal with the Debtors in seeing the Plan succeed.

39.    The scope of the Third-Party Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third-Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Debtors, as evidenced by the Solicitation Affidavit, provided sufficient notice of the Third-Party Release, and no further or other notice is necessary. The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration. In light of the foregoing, the Third-Party Release is approved.

### vi.    Exculpation.

40.    The exculpations described in Article VIII.F of the Plan (the "<u>Exculpation</u>") are essential to the Plan and appropriate under applicable law because they were proposed in good faith, formulated following extensive good-faith, arm's-length negotiations with key constituents, and appropriately tailored to protect the Exculpated Parties from unnecessary litigation. Each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the Exculpation shall have no effect on the liability of any entity for claims related to any act or omission that constitutes willful misconduct, actual fraud, or gross negligence, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance

with the applicable laws.  The Exculpation, including its carve-out for willful misconduct, actual

fraud, or gross negligence is consistent with established practice in this jurisdiction and others.

### vii.  Injunction.

41.    The injunction provisions set forth in Article VIII.H of the Plan are essential to the

Plan and are necessary to implement the Plan and to preserve, and enforce the discharge, the Debtor

Release, the Third-Party Release, and the Exculpation, and are appropriately tailored to achieve

these purposes.

### viii. Preservation of Causes of Action.

42.    Article IV.O of the Plan appropriately provides that any Causes of Action,

including any actions specifically enumerated in the Schedule of Retained Causes of Action, shall

remain with the Post-Effective Date Debtors.  As set forth in Articles IV.H and IV.I of the Plan,

the Plan Administrator, subject to the powers and authority of the Plan Administrator Oversight

Board, may enforce and prosecute such claims, interests, rights, and privileges in an efficacious

manner and only to the extent the benefits of such enforcement or prosecution are reasonably

believed to outweigh the costs associated therewith.

43.    No Entity may rely on the absence of a specific reference in the Plan, the Plan

Supplement, or the Disclosure Statement to any such Cause of Action against them as any

indication that the Debtors will not pursue any and all available Causes of Actions against them.

No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion,

claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action

upon, after, or as a consequence of the Confirmation or Consummation.

44.    The provisions regarding the preservation Causes of Action and Retained Causes

of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and

reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

### ix. Lien Releases.

45.     Article VIII.D of the Plan appropriately provides that, except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  The provisions of the release of Liens are necessary to implement the Plan, and they are appropriate, fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests.

46.     Except as otherwise specifically provided in the Plan, in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or executed in connection therewith, to implement the Plan, it is necessary that all mortgages, deeds of trust, Liens, pledges, encumbrances, or other security interests against any property of the Debtors' estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall revert to the Debtors and their successors and assigns (the "Lien Releases") without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  requested by the Debtors, Post-Effective Date Debtors, or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges,

and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.  The provisions of the Lien Releases are appropriate, fair, equitable and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

### x.    Additional Plan Provisions.

47.    The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of indemnification obligations, and the retention of court jurisdiction.

### 2.    Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.

48.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

49.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

50.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the

protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.F of the Plan.

51.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan

**3.    Section 1129(a)(3)—Plan Proposed in Good Faith.**

52.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, and the process leading to its formulation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  The Debtors' good faith is evident from the facts and the record of these Chapter 11 Cases, the Plan, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

53.    The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors, officers and managers, the HBC Parties, and the other constituencies involved in the Chapter 11 Cases  and are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases with the belief that

the Debtors were in need of restructuring and the Plan was negotiated and proposed with the intention of maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**4.  Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

54. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**5.  Section 1129(a)(5)—Directors, Officers, and Insiders.**

55. Because the Plan provides for the resignation of all existing members of the board of directors or managers as of the Effective Date, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors. To the extent section 1129(a)(5) applies to the Debtors during the Wind-Down, they have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Plan Administrator.

**6.  Section 1129(a)(6)—Rate Changes.**

56. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**7.  Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

57. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the

Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests

of their creditors and equity Holders and the requirements of section 1129(a)(7) of the Bankruptcy

Code are satisfied.

**8.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Classes.**

58.      The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to

have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 3 voted to

accept the Plan.  Class 4 voted to reject the Plan.  Class 5, Intercompany Claims, may be Impaired

or Unimpaired, but the Plan provides that no distributions will be made on account of such Claims.

Class 6, Intercompany Interests, is Unimpaired solely to maintain the Debtors' corporate structure

during the Wind Down. Therefore, there are no Classes of Claim or Interests junior to Class 4 that

receive distributions under the Plan.  Although section 1129(a)(8) has not been satisfied with

respect to Class 4 and the Deemed Rejecting Classes, the Plan does not discriminate unfairly and

is fair and equitable with respect to Class 4 and the Deemed Rejecting Classes and, thus, satisfies

section 1129(b) of the Bankruptcy Code as described further below.

**9.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

59.      The treatment of Administrative Claims, Allowed Professional Fee Claims, and

Priority Tax Claims, under Article II of the Plan satisfies the requirements of, and complies in all

respects with, section 1129(a)(9) of the Bankruptcy Code.

**10.     Section 1129(a)(10)—Acceptance by At Least One Impaired Class.**

60.      As evidenced by the Voting Report, Class 3 voted to accept the Plan by the requisite

numbers and amounts of Claims, determined without including any acceptance of the Plan by any

insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the

Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**11.    Section 1129(a)(11)—Feasibility of the Plan.**

61.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation (other than as contemplated by the Plan) or the need for further financial reorganization, except as set forth in the Plan; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

**12.    Section 1129(a)(12)—Payment of Statutory Fees.**

62.    Article II.C of the Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by the applicable Debtor on or after the Effective Date until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code

**13.    Section 1129(a)(13), (14), (15), and (16)—Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

63.    The Debtors do not owe any retiree benefits, domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**14.      Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired
Classes.**

64.      Notwithstanding the fact that Class 4 (General Unsecured Claims) and the Deemed

Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section

1129(b)(1) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the

Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and

equitable with respect to Class 4 and the Deemed Rejecting Classes.  The Plan has been proposed

in good faith, is reasonable and no holder of any Claim or Interest that is junior to Class 4 will

receive or retain any property under the Plan on account of such junior Claim or Interest.  Although

Class 5 (Intercompany Claims) may be unimpaired and Class 6 (Intercompany Interests) is

unimpaired, the Plan provides that "no distributions shall be made on account of any such

Intercompany Claims" and that Intercompany Interests are unimpaired "solely to maintain the

Debtors' corporate structure."  Furthermore, no holder of any Claim or Interest that is senior to

Class 4 or the Deemed Rejecting Classes will receive or retain property under the Plan having a

value more than the Allowed amount of such senior Claim or Interest.  Accordingly, the Plan is

fair and equitable to all holders of Claims and Interests in Class 4 and the Deemed Rejecting

Classes.  *Third*, the Plan does not discriminate unfairly with respect to Class 4 and the Deemed

Rejecting Classes because similarly situated creditors and interest holders will receive

substantially similar treatment on account of their Claims and Interests irrespective of Class.  The

Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept

the Plan.  After entry of this Confirmation Order and upon the occurrence of the Effective Date,

the Plan shall be binding upon the members of Class 4 and the Deemed Rejecting Classes.

15.     **Section 1129(c)⸺Only One Plan.**

65.     Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

16.     **Section 1129(d)⸺Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

66.     No Governmental Unit or any other party has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

17.     **Section 1129(e)⸺Not Small Business Cases.**

67.     The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

18.     **Section 1125(e)⸺Good Faith Solicitation.**

68.     The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**P.      Satisfaction of Confirmation Requirements.**

69.     Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**Q.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

70.     The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

**R.     Implementation.**

71.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement and the HBC Settlement, including the Assumption Orders contemplated thereby, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.   The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests.   The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.   The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**S.     Executory Contracts and Unexpired Leases.**

72.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Confirmation Date, the Plan provides for the rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date.   The Debtors' determinations regarding the rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are

in the best interests of the Debtors, their estates, Holders of Claims and Interests and other parties

in interest in the Chapter 11 Cases.

**T.     Good Faith.**

73.     The Debtors have proposed the Plan in good faith, with the legitimate and honest

purpose of maximizing the value of the Debtors' estates for the benefit of their stakeholders.  The

Plan is the product of extensive collaboration among the Debtors, the HBC Parties, and key

stakeholders and accomplishes this goal.  Accordingly, the Debtors or the Post-Effective Date

Debtors, as applicable, have been, are, and will continue acting in good faith if they proceed to

(a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated

thereby, and (b) take the actions authorized and directed or contemplated by this Confirmation

Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the

objectives and purposes of the Bankruptcy Code.

**U.     The HBC Settlement.**

74.     The HBC Settlement and the Assumption Orders contemplated thereby and as

approved by the Court  consistent with section 365(f) of the Bankruptcy Code are integral and vital

components of the Plan, and are necessary for confirmation and consummation of the Plan.  Entry

into the HBC Settlement, including the Assumption Orders, represented the reasonable exercise of

sound and prudent business judgement and was in the best interest of the Debtors, their Estates,

and all Holders of Claims or Interests.  The HBC Settlement and the Assumption Orders were a

material inducement to the consensual resolution embodied in the Plan.  The findings of fact,

conclusions of law, and decretal paragraphs contained in the 9019 Order are incorporated herein

by reference, are an integral part this Confirmation Order, and are hereby ratified in their entirety.

**ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

75.    This Confirmation Order confirms the Plan in its entirety as modified herein.

76.    All Holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.  All Holders of Administrative Claims that did not object to confirmation of the Plan are presumed to have accepted their treatment under the Plan.

77.    The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, and any related document or exhibit shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to: (a) the Debtors; (b) the Creditors' Committee; (c) the HBC Parties, and (d) all Holders of Claims and Interests.

78.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.    Findings of Fact and Conclusions of Law.**

79.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order

(including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Bankruptcy Court, it is adopted as such.

**B.      Solicitation.**

80.      Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**C.      Post-Confirmation Modification of the Plan.**

81.      Subject to the limitations and terms contained in Article X.A and X.B of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of the Bankruptcy Court.

**D.      Immediate Binding Effect.**

82.      Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement are immediately effective and enforceable and deemed binding on the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests have, or are deemed to have, accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to

Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**E.    Effectiveness of All Actions.**

83.    The Debtors are hereby authorized to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan.

**F.    General Settlement of Claims and Interests.**

84.    Pursuant to section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan. All distributions made to holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

85.    The entry of the 9019 Order constituted a finding by the Bankruptcy Court that (a) the Restructuring Committee conducted an extensive, good faith, and independent investigation into and analysis of the potential claims and causes of action resolved pursuant to the HBC Settlement; (b) the documents related thereto were negotiated, proposed, and entered into by the Debtors at arm's length, in good faith, and without collusion or fraud; (c) the terms and conditions are fair and reasonable and are not being entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding any of the Debtors or any of their creditors; and (d)  the settlement was supported by adequate consideration.

G.    **Sources of Plan Consideration.**

86.    The Post-Effective Date Debtors shall use Available Cash, consisting of  revenues and proceeds of the Asset Sale and proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date, including the Commercial Tort Proceeds and Urban Proceeds, to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims in accordance with Article III of the Plan.

H.    **Restructuring Transactions.**

87.    The Debtors and the Plan Administrator are authorized, without further order of the Bankruptcy Court, subject to the terms of the Plan, Plan Supplement, and Plan Administrator Agreement, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under or in connection with the Plan that are consistent with and pursuant to the terms and conditions of the Plan and Plan Supplement, including:  (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; and (e) all

other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

88.     All actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions are hereby authorized.

## I.      Vesting of Assets.

89.     Except as otherwise provided in this Confirmation Order, the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated therein or in the Plan Supplement, on the Effective Date, the Plan Administrator Assets shall vest in the Post-Effective Date Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances.

90.     On and after the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the Plan Administrator may use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## J.      Plan Administrator.

91.     The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and as otherwise provided in this Confirmation Order.

92.     The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of

the persons acting as managers and officers of the Debtors shall be deemed to have resigned, solely

in their capacities as such, and the Plan Administrator shall be appointed as the sole manager and

sole officer of the Debtors and shall succeed to the powers of the Debtors' managers and officers.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and

shall act for, the Debtors.  For the avoidance of doubt, the foregoing shall not limit the authority

of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the

employment of any former manager or officer.

93.    The powers of the Plan Administrator shall, subject to the powers and authority of

the Plan Administrator Oversight Board, include any and all powers and authority to implement

the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the

businesses and affairs of the Debtors as set forth in the Plan and the Plan Supplement, as applicable.

**K.      Wind-Down.**

94.    On and after the Effective Date, the Plan Administrator will be authorized, subject

to the authority of the Plan Administrator Oversight Board, to implement the Plan and any

applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and

authority to take any action necessary to wind down and dissolve the Debtors' Estates.

95.    As soon as practicable after the Effective Date, the Plan Administrator shall, subject

to the authority of the Plan Administrator Oversight Board, shall take such actions as the Plan

Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.

Any certificate of dissolution or equivalent document may be executed by the Plan Administrator

without need for any action or approval by the shareholders or board of directors or managers of

any Debtor.  From and after the Effective Date, except with respect to Post-Effective Date Debtors

as set forth herein, the Debtors (a) for all purposes shall be deemed to have withdrawn their

business operations from any state in which the Debtors were previously conducting, or are

registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled all Interests pursuant to this Plan, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

**L.      Cancellation of Notes, Instruments, Certificates, and Other Documents.**

96.      On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of any Debtor under the Credit Agreement Documents and any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised. Notwithstanding the foregoing, (x) no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date, (y) the Seller Note shall continue in effect solely for the purpose

of allowing the HBC Parties to receive the distributions provided for under the Plan, and (z) the

Le Tote APA shall continue in effect solely for the purpose of the continuing indemnification

obligations as set forth in Article V.E of the Plan.

**M.    Corporate Action.**

97.    Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan

and entry of this Confirmation Order, all actions contemplated by the Plan (including any action

to be undertaken by the Debtors or the Plan Administrator, as applicable) shall be deemed

authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any

requirement for further action by Holders of Claims or Interests, the Debtors, the Plan

Administrator, or any other Entity or Person.  All matters provided for in the Plan involving the

corporate structure of the Post-Effective Date Debtors shall be deemed to have occurred and shall

be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

98.    As of the Effective Date, the existing board of directors or managers, as applicable,

of the Debtors shall be dissolved without any further action required on the part of the Debtors or

the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers,

directors, managers, or managing members of any Debtor shall be dismissed without any further

action required on the part of any such Debtor, the equity holders of the Debtors, the officers,

directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all

respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after

the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

**N.    Claims Register.**

99.    Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that

has been amended or superseded, may be adjusted or expunged on the Claims Register by the

Debtors, without an objection having to be Filed and without any further notice to or action, order,

or approval of the Bankruptcy Court.  The Debtors shall provide any Holder of such a Claim or Interest with fourteen days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result of a Claim or Interest being paid, satisfied, amended or superseded.

**O.      Preservation of Causes of Action.**

100.     Pursuant to Article IV.O of the Plan, the Retained Causes of Action shall vest in the Post-Effective Date Debtors.  Pursuant to Article IV.I of the Plan, the Plan Administrator, subject to the powers and authority of the Plan Administrator Oversight Board, may enforce and prosecute Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith.

101.     The Debtors have granted certain releases to the Released Preference Action Parties with respect to Preference Actions and such Preference Actions, if any, against the Released Preference Action Parties shall not vest in the Post-Effective Date Debtors.

**P.      Release, Exculpation, Discharge, and Injunction Provisions.**

102.     The release, exculpation, discharge, injunction, opt out, and related provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein except as otherwise provided in this Confirmation Order.

**Q.      Subordination.**

103.     Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Bankruptcy Court, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests

in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**R.      Release of Liens.**

104.    Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  In addition, the ABL Agent, the Term Loan Agent, and the HBC Parties shall execute and deliver all documents reasonably requested by the Debtors, Post-Effective Date Debtors, or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

**S.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

105.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

106.     Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval
of such assumptions, assignments, and rejections, including the assumption of the Executory
Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a)
and 1123 of the Bankruptcy Code.   Assumptions or rejections of Executory Contracts and
Unexpired Leases pursuant to the Plan are effective as of the Effective Date.   Any motions to
assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be
subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.   Each
Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any
order of the Bankruptcy Court, which has not been assigned to a third party before or on the
Confirmation Date, shall revest in and be fully enforceable by the Debtors in accordance with its
terms, except as such terms are modified by the provisions of the Plan or any order of the
Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

107.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order,
any Proof of Claim arising from the rejection of the Propco Lease is deemed disallowed and
expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any
other Entity and Holders of such Claims may not receive any distributions on account of such
Claims.

108.     Except as otherwise provided in this Confirmation Order, any and all objections or
reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease
under the Plan, if any, are overruled on their merits.

**T.     Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired
Leases.**

109.     Any monetary defaults under an Executory Contract or Unexpired Lease to be
assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the

Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (i) the amount of any Cure Claim; (ii) the ability of the Post-Effective Date Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment. Notwithstanding the foregoing, nothing herein shall prevent the Post-Effective Date Debtors from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

110.    Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  All liabilities reflected in the Schedules and any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that this paragraph 110 shall not apply to the Consulting Agreement (as defined

in the Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, (IV) Authorizing and Approving the Store Closing Procedures, and (v) Granting Related Relief [Docket No. 266]) and any Proof of Claim Filed with respect to the Consulting Agreement.

**U.    Waiver.**

111.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

**V.    Authorization to Consummate.**

112.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

**W.    The HBC Settlement.**

113.    The HBC Settlement has been approved by the Bankruptcy Court.  The Plan incorporates and implements the HBC Settlement, including the Assumption Orders contemplated thereby, a compromise and settlement of numerous issues and disputes between and among the Debtors and the HBC Parties designed to achieve a reasonable and effective resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth in the 9019 Order, the HBC Settlement

constitutes a settlement of all potential issues and Claims between and among the Debtors and the

HBC Parties.

### X.    Post-Confirmation Fees and Expenses.

114.    Except as otherwise specifically provided in the Plan, from and after the

Confirmation Date, the Debtors shall, in the ordinary course of business and without any further

notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and

documented legal, professional, or other fees and expenses incurred by the Professionals.  Any

requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy

Code in seeking retention or compensation for services rendered is hereby terminated, and the

Post-Effective Date Debtors or the Plan Administrator, as applicable, may employ and pay any

professional in the ordinary course of business without any further notice to, or action, order, or

approval of, the Bankruptcy Court.

### Y.    Liquidity Capital II L.P.

115.    Notwithstanding the Voting Report, the Class 4 (General Unsecured Claim) vote of

Liquidity Capital II L.P. ("Liquidity Capital") shall be deemed to reject the Plan.  Furthermore,

Liquidity Capital shall be deemed to opt out of the release in Article VIII.E of the Plan.

Accordingly, notwithstanding any provision of the Plan or this Confirmation Order, Liquidity

Capital shall not be a Released Party or a Releasing Party under the Plan.    For the avoidance of

doubt, Liquidity Capital does not object to confirmation of the Plan.

### Z.    Capital One Program Agreement.

116.    For the avoidance of doubt, (a) nothing in the Plan or this Confirmation Order shall

waive, discharge, release, or otherwise impair any claims, defenses, interests, rights, or causes of

action of Capital One, the Debtors, or the Post-Effective Date Debtors (the "Program Agreement

Parties") with respect to that certain Co-Branded and Private Label Credit Card Program

43

Agreement dated as of October 22, 2014 and terminated on February 1, 2021 (as amended, the "Program Agreement"), and the Program Agreement Parties shall retain all of their respective claims (including but not limited to any Cure Claim for obligations that survive termination of the Program Agreement), defenses, interests, rights (including without limitation any right of setoff), or causes of action  with respect to the Program Agreement against the other Program Agreement Parties and (b) Capital One is neither a Released Party nor a Releasing Party under the Plan.

## AA.    Compass Group USA.

117.    Notwithstanding anything to the contrary in this order or the Plan, nothing in this order or the Plan (including, but not limited to, paragraphs 102 and 138 of this Confirmation Order and Articles VIII.G and VIII.J of the Plan) shall impair, waive, enjoin, or otherwise affect any right of recoupment or setoff belonging to Compass Group USA, Inc. d/b/a Flik International Corp ("Compass"), any right of Compass to exercise any such right, or any defenses of the Debtors with respect to any right of recoupment or setoff belonging to Compass, and all such rights and defenses of Compass and the Debtors are expressly preserved for subsequent determination on their merits and shall be unaffected by confirmation of the Plan.

## BB.    Federal Realty Investment Trust, Pyramid Management Group, LLC, and The Macerich Company.

118.    Notwithstanding Article II.A of the Plan, Federal Realty Investment Trust, Pyramid Management Group, LLC, and The Macerich Company are not deemed to consent to receive treatment for any Administrative Claim held by such claimant that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code and, notwithstanding Article V.B or Article VII.F of the Plan, any proof of Claim filed by Federal Realty Investment Trust, Pyramid Management Group, LLC, or The Macerich Company shall not be automatically deemed disallowed; *provided*,

however, that the Debtors retain all rights to object to any such Claim on any grounds, including that such Claim was filed late.

**CC.     United States of America Internal Revenue Service.**

119.     For the avoidance of doubt, Allowed Administrative Claims and Priority Tax Claims of the Internal Revenue Service ("IRS") shall be paid in accordance with section 503(b)(1)(B), (C), and (D), and 1129(a)(9)(C) of the Bankruptcy Code.  The IRS shall not be required to file proofs of Administrative Claims, nor seek or obtain prior authorization for such Claims.  Administrative Claims and Priority Tax Claims of the IRS shall be paid in the ordinary course of business when due.  Nothing in the Plan or this Confirmation Order shall enjoin the IRS from assessing a liability against a "responsible person" under I.R.C. § 6672 and the IRS has the authority to determine any person working for the Debtors as a responsible person under I.R.C. § 6672.  Nothing in the Plan shall enjoin the IRS from collecting a liability against a responsible person under I.R.C. § 6672.  The rights of the IRS to exercise any right of setoff are unaffected by the Plan.  The respective rights and defenses of the Debtors or any person alleged or determined to be a responsible person are expressly reserved with respect to any such Claims or assessments of liability against the Debtors or any responsible persons by the IRS.

**DD.     Connecticut Department of Revenue Services.**

120.     For the avoidance of doubt, Allowed Administrative Claims and Priority Tax Claims of the Connecticut Department of Revenue Services shall be paid in accordance with section 503(b)(1)(B), (C), and (D), and 1129(a)(9)(C) of the Bankruptcy Code; *provided* that the Debtors retain all rights to object to any such Claim on any grounds.

**EE.     Compensation and Benefits Programs.**

121.     On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall pay all compensation and benefit obligations under any present compensation, benefit, or

incentive programs, including any programs approved pursuant to an Order of the Bankruptcy Court.

**FF.    Compliance with Tax Requirements.**

122.    In connection with the Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  All Persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

**GG.    Exemption from Certain Taxes and Fees.**

123.    Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments

executed in connection with any disposition or transfer of assets contemplated under the Plan, shall

not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**HH.    Insurance Policies.**

124.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order,

Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party

beneficiary or other covered party of any of the Debtors' insurance policies with respect to such

policies (including the D&O Policies), nor shall anything contained herein or therein (a) constitute

or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses,

held by such insurers under any insurance policy, applicable law, equity, or otherwise, or

(b) establish, determine, or otherwise imply any liability or obligation, including any coverage

obligation, of any insurer.

**II.    Documents, Mortgages, and Instruments.**

125.    Each federal, state, commonwealth, local, foreign, or other governmental agency is

authorized to accept any and all documents, mortgages, and instruments necessary or appropriate

to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and

this Confirmation Order.

**JJ.    Nonseverability of Plan Provisions Upon Confirmation.**

126.    Each term and provision of the Plan is:  (a) valid and enforceable pursuant to its

terms; (b) integral to the Plan and may not be deleted or modified without the consent of the

Debtors; and (c) nonseverable and mutually dependent.

**KK.    Notice of Subsequent Pleadings.**

127.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of

all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the

following  parties:    (a) the  Post-Effective  Date  Debtors  and  their  counsel;  (b) the  Plan

Administrator; (c) the U.S. Trustee; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Post-Effective Date Debtors or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

**LL.  Post-Confirmation Reports.**

128.    After the Effective Date, the Debtors shall not have any obligation to file with the Bankruptcy Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Bankruptcy Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the Debtors will comply with the U.S. Trustee's quarterly reporting requirements until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**MM.  Plan Classification Controlling.**

129.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**NN.    Choice of Law.**

130.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.  The State of New York has (a) a substantial relationship to the parties and to the underlying transactions embodied by the Plan, and (b) a material interest in the determination of matters concerning the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan.

**OO.    Applicable Nonbankruptcy Law.**

131.    The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**PP.    Waiver of Filings.**

132.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

**QQ.    Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

133.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Plan Supplement, and the Disclosure Statement.  For the avoidance of doubt, this Confirmation Order authorizes the implementation of the Plan in accordance with its terms.

**RR.    Notices of Confirmation and Effective Date.**

134.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven Business Days after the Effective Date, the Post-Effective Date Debtors shall cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; provided, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

135.    To supplement the notice procedures described in the preceding sentence, no later than ten Business Days after the Effective Date, the Debtors shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition).  Mailing and publication of the Notice of Confirmation in the time and manner

set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

136.    The Notice of Confirmation will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**SS.    Dissolution of the Committee.**

137.    Except to the extent provided in the Plan, on the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals for the limited purposes set forth in Article XII.D of the Plan.

**TT.    Effect of Non-Occurrence of Conditions to the Effective Date.**

138.    If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**UU.    Substantial Consummation.**

139.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

**VV.    Injunctions and Automatic Stay.**

140.    Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the

Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall

remain in full force and effect with respect to the Debtors until the closing of these Chapter 11

Cases.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in

full force and effect in accordance with their terms.

**WW.    References to and Omissions of Plan Provisions.**

141.    References to articles, sections, and provisions of the Plan are inserted for

convenience of reference only and are not intended to be a part of or to affect the interpretation of

the Plan.  The failure to specifically include or to refer to any particular article, section, or provision

of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article,

section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its

entirety, except as expressly modified herein, and incorporated herein by this reference.

**XX.    Headings.**

142.    Headings utilized herein are for convenience and reference only, and do not

constitute a part of the Plan or this Confirmation Order for any other purpose.

**YY.    Effect of Conflict.**

143.    Except as set forth in the Plan, to the extent that any provision of the Disclosure

Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits,

schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are

in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided,

however, with respect to any conflict or inconsistency between the Plan and the Confirmation

Order, the Confirmation Order shall govern; provided, however, to the extent the Plan or

Confirmation Order is inconsistent with the HBC Settlement or the 9019 Order with respect to

provisions of the Plan that explicitly refer to or incorporate the HBC Settlement, the HBC

Settlement shall govern solely with respect to such provisions of the Plan (but solely as to the

parties to the HBC Settlement).

**ZZ.    Retention of Jurisdiction.**

144.    The Bankruptcy Court retains jurisdiction over the Chapter 11 Cases, all matters

arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XI,

and other applicable provisions of the Plan.

**AAA.  Waiver of 14-Day Stay**

145.    Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable,

Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and

not subject to any stay.

**BBB.  Final Order.**

146.    This Confirmation Order is a Final Order and the period in which an appeal must

be filed will commence upon entry of this Confirmation Order.

147.    This Confirmation Order is effective as of the date of entry of this order.

Dated:  Mar 24 2021
Richmond, Virginia

/s/ Keith L Phillips
_____
The Honorable Keith L. Phillips
United States Bankruptcy Judge

Entered On Docket: Mar 24 2021

WE ASK FOR THIS:

/s/ *Jeremy S. Williams*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

- and -

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

*Co-Counsel to the Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/    *Jeremy S. Williams*

## Exhibit A

**Plan**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

SECOND AMENDED JOINT CHAPTER 11 PLAN
OF LE TOTE, INC. AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER,
ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION
OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS
SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY
CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

Dated: March 23, 2021

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/letote/. The location of the Debtors' service address is 250 Vesey Street, 22nd Floor, New York, New York 10281.

## TABLE OF CONTENTS

## CONTENTS

**INTRODUCTION** ...........................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
AND GOVERNING LAW** .............................................................................................................1
A.      Defined Terms. ...................................................................................................................1
B.      Rules of Interpretation. ....................................................................................................13
C.      Computation of Time. ......................................................................................................13
D.      Governing Law. ................................................................................................................13
E.      Reference to Monetary Figures. .......................................................................................13
F.      Controlling Document. .....................................................................................................14

**ARTICLE II ADMINISTRATIVE CLAIMS,  PROFESSIONAL FEE CLAIMS, AND PRIORITY
TAX CLAIMS** ..............................................................................................................................14
A.      Administrative Claims and Priority Tax Claims. .............................................................14
B.      Professional Compensation. .............................................................................................15
C.      Statutory Fees. ..................................................................................................................16
D.      TSA Shortfall Claim. ........................................................................................................16
E.      Independent Director Fee Claims. ....................................................................................16

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...........................16
A.      Summary of Classification. ..............................................................................................16
B.      Treatment of Claims and Interests. ..................................................................................17
C.      Special Provision Governing Unimpaired Claims. ..........................................................19
D.      Elimination of Vacant Classes. ........................................................................................19
E.      Voting Classes; Presumed Acceptance by Non-Voting Classes. .....................................19
F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ...............................19
G.      Subordinated Claims. .......................................................................................................20
H.      Controversy Concerning Impairment. ..............................................................................20

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................................20
A.      General Settlement of Claims. ..........................................................................................20
B.      The HBC Settlement. ........................................................................................................20
C.      Cancellation of Securities and Agreements. ....................................................................20
D.      Exemption from Certain Taxes and Fees. ........................................................................21
E.      Sources of Plan Consideration and Priority Waterfall. ...................................................21
F.      Restructuring Transactions. ..............................................................................................21
G.      Corporate Action. .............................................................................................................22
H.      Post-Effective Date Debtors. ............................................................................................22
I.      Plan Administrator. ...........................................................................................................22
J.      Wind Down. ......................................................................................................................24
K.      Continued HBC Support. ..................................................................................................25
L.      Dissolution and Board of Directors. .................................................................................26
M.      Management Payments. .....................................................................................................26
N.      Effectuating Documents; Further Transactions. ..............................................................26
O.      Preservation of Causes of Action. ....................................................................................26
P.      Closing the Chapter 11 Cases. ..........................................................................................27

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ......................27
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ....................27
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. .....................27
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................28

D.      D&O Policies. ...........................................................................................................................28
E.      Indemnification Obligations .....................................................................................................29
F.      Termination Agreements. ..........................................................................................................29
G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...................29
H.      Reservation of Rights. ...............................................................................................................29
I.      Nonoccurrence of Effective Date. .............................................................................................29

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................30**
A.      Timing and Calculation of Amounts to Be Distributed. ...........................................................30
B.      Rights and Powers of the Disbursing Agent. ............................................................................30
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..............................30
D.      Compliance with Tax Requirements/Allocations. .....................................................................32
E.      Allocation of Plan Distributions Between Principal and Interest. .............................................32
F.      Setoffs and Recoupment. ..........................................................................................................32
G.      Claims Paid or Payable by Third Parties. .................................................................................32
H.      Indefeasible Distributions. ........................................................................................................33

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS ..............................................................................................................................33**
A.      Allowance of Claims and Interests. ..........................................................................................33
B.      Claims and Interests Administration Responsibilities. ..............................................................33
C.      Estimation of Claims and Interests. ..........................................................................................34
D.      Adjustment to Claims or Interests without Objection. ..............................................................34
E.      Time to File Objections to Claims. ...........................................................................................34
F.      Disallowance of Claims. ...........................................................................................................34
G.      Amendments to Claims. ............................................................................................................35
H.      No Distributions Pending Allowance. .......................................................................................35
I.      Distributions After Allowance. .................................................................................................35
J.      Single Satisfaction of Claims. ..................................................................................................35

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ......................35**
A.      Discharge of Claims and Termination of Interests. ...................................................................35
B.      Term of Injunctions or Stays. ...................................................................................................36
C.      Release of Liens. .......................................................................................................................36
D.      Releases by the Debtors. ...........................................................................................................36
E.      Releases by Holders of Claims and Interests. ...........................................................................37
F.      Exculpation. ..............................................................................................................................38
G.      Injunction. .................................................................................................................................38
H.      Limited Substantive Consolidation. ..........................................................................................39
I.      Protection Against Discriminatory Treatment. .........................................................................39
J.      Recoupment. ..............................................................................................................................40
K.      Subordination Rights. ...............................................................................................................40
L.      Reimbursement or Contribution. ...............................................................................................40

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ..........40**
A.      Conditions Precedent to the Effective Date. .............................................................................40
B.      Waiver of Conditions. ...............................................................................................................41
C.      Substantial Consummation. .......................................................................................................41
D.      Effect of Non-Occurrence of Conditions to the Effective Date. ...............................................41

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...............................41**
A.      Modification and Amendments. .................................................................................................41
B.      Effect of Confirmation on Modifications. .................................................................................42
C.      Revocation or Withdrawal of the Plan. .....................................................................................42

**ARTICLE XI RETENTION OF JURISDICTION** ............................................................................ 42

**ARTICLE XII MISCELLANEOUS PROVISIONS** ....................................................................... 44
A.  Immediate Binding Effect. ..................................................................................................... 44
B.  Additional Documents. ........................................................................................................... 44
C.  Payment of Statutory Fees. .................................................................................................... 44
D.  Dissolution of Statutory Committees. .................................................................................... 44
E.  Reservation of Rights. ............................................................................................................ 44
F.  Successors and Assigns. ......................................................................................................... 45
G.  Service of Documents. ........................................................................................................... 45
H.  Enforcement of Confirmation Order. ..................................................................................... 46
I.  Compensation and Benefits Programs. ................................................................................... 46
J.  Entire Agreement. ................................................................................................................... 46
K.  Exhibits. ................................................................................................................................. 46
L.  Nonseverability of Plan Provisions. ....................................................................................... 46
M.  Votes Solicited in Good Faith. ............................................................................................... 47
N.  Waiver. ................................................................................................................................... 47

## INTRODUCTION

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  The Debtors propose this joint chapter 11 Plan.  The Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests is set forth in Article III of the Plan.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, the Restructuring Transactions, and certain related matters.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    **Defined Terms.**

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*9019 Motion*" means the *Debtors' (I) Motion for Entry of an Order (A) Authorizing and Approving the HBC Settlement By and Among the Debtors and the HBC Secured Parties and (B) Granting Related Relief and (II) Objection to the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee to Prosecute Certain Claims, Challenges, and Causes of Action Related to the HBC Secured Parties* [Docket No. 796].

2.    "*9019 Order*" means the Bankruptcy Court order approving the 9019 Motion Filed at Docket No. 900.

3.    "*ABL Agent*" means Wells Fargo Bank, National Association, in its capacity as administrative and collateral agent under the ABL Credit Agreement.

4.    "*ABL Credit Agreement*" means that certain Credit Agreement, dated as of November 8, 2019 (as amended by Amendment No. 1 to the Credit Agreement, dated as of January 9, 2020, and Amendment No. 2 to the Credit Agreement, dated as of March 23, 2020, and as further amended, restated, supplemented, or otherwise modified from time to time), by and among Le Tote., as lead borrower, French Tote, Le Tote, LLC and L&T, as additional borrowers, LT Card, as guarantor party thereto, the ABL Agent, and the ABL Lenders.

5.    "*ABL Lenders*" means each of the lenders from time to time party to the ABL Credit Agreement.

6.    "*ABL Termination Agreement*" means that certain agreement dated December 21, 2020, by and between ABL Agent and the Debtors documenting the repayment in full and termination of the ABL Credit Agreement.

7.    "*Administrative Claim Objection Bar Date*" means the deadline for filing objections to requests for payment of Administrative Claims (other than (x) requests for payment of Professional Fee Claims and (y) Administrative Claims that are Allowed pursuant to the Plan), which shall be the later of (a) 60 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of the Administrative Claims; provided that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

8.    "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; (d) the TSA Shortfall Claim; and (e) the Independent Director Fee Claims.

9.      "*Administrative Claims Bar Date Order*" means the *Order (I) Setting a Bar Date for Filing of Administrative Claims, (II) Establishing Administrative Claims Procedures, (III) Approving the Form and Manner of Filing Proofs of Administrative Claims, (IV) Approving Notice of the Administrative Claims Bar Date, and (V) Granting Related Relief*, entered at Docket No. 600, establishing a bar date for certain Administrative Claims.

10.      "*Administrative Claims Bar Date*" means the applicable deadline by which all requests for Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtors, which is either (i) with respect to Administrative Claims subject to the Administrative Claims Bar Date Order, January 4, 2021, at 4:00 p.m., prevailing Eastern Time, (ii) with respect to all other Administrative Claims (other than Professional Fee Claims, the TSA Shortfall Claim, and the Independent Director Fee Claims), 30 days after the Effective Date, or (iii) with respect to Professional Fee Claims, 45 days after the Effective Date; *provided* that Filing a request for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not requires such Filing.

11.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

12.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtors pursuant to the Bar Date Order) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, the Bar Date Order, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim allowed pursuant to the Plan or a Final Order; or (d) a Claim under a tax voluntary disclosure agreement program; *provided that* with respect to a Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim has been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "*Allow*" and "*Allowing*" shall have correlative meanings.

13.      "*Asset Purchase Agreement*" means that certain asset purchase agreement, dated as of October 16, 2020, by and among the Debtors, as sellers, and Saadia Group LLC, as purchaser.

14.      "*Asset Sale*" means the asset sale implemented pursuant to the Asset Purchase Agreement and approved by the Sale Order.

15.      "*Available Cash*" means all Cash of the Debtors or Post-Effective Date Debtors, as applicable, on or after the Effective Date and thereafter all Cash of the Debtors and Post-Effective Date Debtors from all sources, including, without limitation, the revenues and proceeds of the Asset Sale and proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date, including the Commercial Tort Proceeds and Urban Proceeds, available for use and distribution in accordance with the priorities set forth herein.

16.      "*Avoidance Actions*" means any and all causes of action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

17.      "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

18.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

19.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Virginia, or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the Eastern District of Virginia.

20.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

21.      "*Bar Date Order*" means the order of the Bankruptcy Court entered on August 27, 2020 [Docket No. 253].

22.      "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

23.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

24.      "*Causes of Action*" means any and all actions, claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "*Causes of Action*" includes: (a) any rights of setoff, counterclaims, or recoupments and any claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all claims or defenses including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign Law fraudulent transfer or similar claims; and (g) any Avoidance Action.

25.      "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

26.      "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

27.      "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by a Final Order of the Bankruptcy Court or the Plan; *provided that* if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

28.      "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Post-Effective Date Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to Claims.

29.      "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice and Claims Agent.

30.      "*Class*" means a category of holders of Claims or Interests as set forth in Article III of the Plan under section 1122(a) of the Bankruptcy Code.

31.      "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance.

32.      "*Commercial Tort Claims*" means any commercial tort claims or Causes of Action owned by the Debtors arising on or before the Petition Date that remained outstanding as of the Petition Date, including those asserted in the Urban Outfitters Litigation, other than Causes of Action released pursuant to the Plan.

33.      "*Commercial Tort Proceeds*" means the Cash proceeds, if any, of any Commercial Tort Claims, *less* any fees, expenses, and disbursements of the Plan Administrator in excess of the amount set forth in the Wind-Down Budget for the purposes set forth in of the Plan, including any fees, expenses, and disbursements associated with the prosecution of Commercial Tort Claims, if any.

34.      "*Committee*" means the statutory committee of unsecured creditors, appointed on August 12, 2020 in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee [Docket No. 177].

35.      "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

36.      "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

37.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

38.      "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

39.      "*Consultant Agreement*" means that certain store closing agreement by and among the Debtors and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC to conduct store closing sales at all 38 Lord & Taylor stores.

40.      "*Consummation*" means the occurrence of the Effective Date.

41.      "*Containers"* means the approximately 300 trailers and other pieces of other trucking equipment located outside certain of the Debtors' stores and certain of the HBC Parties' facilities.

42.      "*Contract Rejection Orders*" means any order rejecting Executory Contracts or Unexpired Leases pursuant to the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* Filed at Docket No. 267.

43.      "*Credit Agreement Documents*" means the Credit Agreements and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, and other security agreements.

44.      "*Credit Agreements*" means the ABL Credit Agreement, the Term Loan Credit Agreement, and the Seller Note.

45.    "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

46.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

47.    "*Cure/Assumption Objection Deadline*" means the date that is 14 days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors or Post-Effective Date Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification and (b) the date of the scheduled Confirmation Hearing.

48.    "*D&O Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

49.    "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

50.    "*Debtors*" means, collectively:  (a) Le Tote, Inc.; (b) French Tote LLC; (c) Le Tote, LLC; (d) Lord & Taylor LLC; and (e) LT Card Company LLC.

51.    "*Disbursing Agent*" means the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan, which will be identified in the Plan Supplement.

52.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

53.    "*Disputed*" means, with respect to a Claim or Interest, a Claim or Interest that is not yet Allowed or disallowed.

54.    "*Distributable Cash*" means all Available Cash, after giving effect to the funding of the Priority Claims Reserve, the Professional Fee Escrow Account, and the Wind-Down Reserve and the reserve or payment in full of all Other Secured Claims, the TSA Shortfall Claim, and the Independent Director Fee Claims.

55.    "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which shall be the later of (a) thirty-days after the Effective Date or (b) such other date as designated in a Final Order of the Bankruptcy Court.

56.    "*Distribution Reserve Accounts*" means the Priority Claims Reserve, and the Wind-Down Reserve established pursuant to this Plan.

57.    "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

58.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

59.    "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

60.    "*Exculpated Party*" means, collectively:  (a) the Debtors and Post-Effective Date Debtors; (b) the Plan Administrator; (c) the ABL Agent; (d) the ABL Lenders; (e) the Term Loan Agent; (f) the Term Loan Lenders; (e) the Committee and each of its members; (f) the HBC Parties; (g) the HBS Parties; (h) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through this clause (i), each in their capacity as such.

61.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

62.    "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

63.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

64.    "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

65.    "*Financed Landlords*" means:  (a) LT Eastchester LLC; (b) LT Ridgewood LLC; (c) LT Stamford LLC; (d) LT Westfield LLC; (e) LT Garden City LLC; (f) LT Bridgewater LLC; (g) LT King of Prussia LLC; (h) LT Fair Oaks LLC; (i) LT Freehold Raceway LLC; (j) LT Rockaway Town LLC; (k) LT Willowbrook LLC; (l) LT Woodfield LLC; (m) LT Twelve Oaks LLC; (n) LT Columbia LLC; (o) LT Walden Galleria LLC; (p) LT Quakerbridge Leasehold LLC; (q) LT Garden State Leasehold LLC; (r) LT Walt Whitman Leasehold LLC; (s) LT Burlington Leasehold LLC; (t) LT Livingston Leasehold LLC; (u) LT Braintree Leasehold LLC; (v) LT Natick Leasehold LLC; (w) LT Bay Shore Leasehold LLC; and (x) LT Northbrook Leasehold LLC.

66.    "*Financed Master Lease Guaranty*" means that certain Guaranty of the Financed Master Lease, dated as of July 22, 2015.

67.    "*Financed Master Lease*" means that certain amended and restated lease governing 24 store locations, dated as of July 22, 2015, by and among Lord & Taylor, as tenant, and the 24 wholly-owned affiliates of HBS Global Properties LLC as landlords, which was assumed and assigned to LT Propco LLC or its designee as of December 31, 2020 pursuant to the amended Order of the Court Filed at Docket No. 1000.

68.    "*General Unsecured Claim*" means any unsecured Claim that is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Intercompany Claim; (d) an Other Priority Claim; (e) a Priority Tax Claim; (f) a Professional Fee Claim; (g) a Seller Note Secured Claim; or (h) a Section 510(b) Claim.

69.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

70.     "*HBC Indemnification Claim*" means a claim, if any, by the HBC Parties against the Debtors or the Post-Effective Date Debtors, as the case may be, pursuant to the Le Tote APA and Article V.E herein.

71.     "*HBC Parties*" means, collectively, HBC US Propco Holdings LLC and HBC US Holdings Inc.

72.     "*HBC Settlement*" means the settlement between the Debtors and the HBC Parties pursuant to Bankruptcy Rule 9019 as set forth in the Settlement Term Sheet and approved by the 9019 Order.

73.     "*HBS Parties*" means HBS Global Properties LLC and each of its 24 wholly-owned subsidiaries that are landlords under the Financed Master Lease.

74.     "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

75.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

76.     "*Independent Director Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to the Independent Directors pursuant to their respective director agreements with the Debtors.

77.     "*Independent Directors*" means Pamela B. Corrie and Matthew R. Kahn.

78.     "*Initial Distribution Date*" means the date on which the Debtors or the Disbursing Agent, as applicable, make initial distributions to Holders of Allowed Claims pursuant to the Plan.

79.     "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

80.     "*Intercompany Interest*" means, other than an Interest in Le Tote, any Interest held by a Debtor in another Debtor.

81.     "*Interest*" means the common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire the common stock (including convertible debt), preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

82.     "*Interim Compensation Order*" means the order of the Bankruptcy Court establishing procedures for interim compensation and reimbursement of expenses for professionals (as amended, modified or supplemented from time to time in accordance with the terms thereof).

83.     "*Investigation*" means the investigation into certain potential claims and Causes of Action held by the Debtors' Estates conducted by the independent directors of Le Tote.

84.     "*KEIP Order*" means the order of the Bankruptcy Court approving the Debtors' key employee incentive plan Filed at Docket No. 395.

85.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

86.     "*Le Tote APA*" means that certain asset purchase agreement, dated August 27, 2019, by and between Le Tote and the HBC Parties.

87.     "*Le Tote Interests*" means any Interests in Le Tote.

88.    "*Le Tote*" means Le Tote, Inc.

89.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

90.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

91.    "*Lord & Taylor*" means Lord & Taylor LLC.

92.    "*Notice and Claims Agent*" means Bankruptcy Management Solutions, Inc. d/b/a Stretto, solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

93.    "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

94.    "*Other Secured Claim*" means any Secured Claim (including Secured Tax Claims) against any of the Debtors, other than a Seller Note Secured Claim.

95.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

96.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

97.    "*Plan Administrator Assets*" means on the Effective Date, all assets of the Estates vested in the Post-Effective Date Debtors to be administered by Plan Administrator, and, thereafter, all assets held from time to time by Post-Effective Date Debtors to be administered by Plan Administrator.

98.    "*Plan Administrator Oversight Board*" means the board charged with overseeing the Plan Administrator.

99.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors, in consultation with the Committee and the HBC Parties, to administer the Plan Administrator Assets.

100.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least ten (10) days prior to the Voting Deadline and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases, if any; (b) the Contract Rejection Orders; (c) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (d) Schedule of Retained Causes of Action; (e) the Wind-Down Budget; (f) the identity of the Disbursing Agent; and (g) any other necessary documentation related to the Restructuring Transactions.

101.    "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified or supplemented from time to time in accordance with the terms hereof.)

102.    "*Post-Effective Date Debtors*" means the Debtors after the Effective Date or the Plan Administrator, as applicable.

103.    "*Preference Action*" means any and all claims or defenses of the Debtors or Post-Effective Date Debtors arising under section 547 of the Bankruptcy Code related to payments or transfers made within 90 days of the Petition Date (but excluding claims or defenses arising under section 547 of the Bankruptcy Code brought as counterclaims or defenses to Claims asserted against the Debtors).

104.    "*Priority Claims Reserve Amount*" means an amount equal to the total amount of Allowed Priority Claims (except for Professional Fee Claims, the TSA Shortfall Claim, and the Independent Director Fee Claims), and Disputed Priority Claims estimated by the Debtors in good faith (in consultation with HBC Parties and the Committee) to become Allowed Priority Claims.

105.    "*Priority Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Priority Claims Reserve Amount for distribution to the Holders of Administrative Claims and Priority Claims (except for Professional Fee Claims, the TSA Shortfall Claim, and the Independent Director Fee Claims) as set forth in Article II.A.

106.    "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

107.    "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

108.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

109.    "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

110.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Escrow Amount funded by the Debtors or Post-Effective Date Debtors, as applicable, on the Effective Date.

111.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

112.    "*Professional*" means an Entity (other than an Ordinary Course Professional):  (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

114.    "*Propco Lease*" means that certain amended and restated lease governing four store locations, dated as of November 6, 2019, by and among Lord & Taylor, as tenant, and LT Propco LLC, as landlord, which was rejected as of December 31, 2020 pursuant to the Order of the Court Filed at Docket No. 744.

115.    "*Quarterly Distribution Date*" means the first Business Day after the end of each quarterly calendar period (i.e., March 31, June 30, September 30, and December 31 of each calendar year) occurring after the Effective Date.

116.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

117.    "*Related Party*" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

118.    "*Released Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors and Post-Effective Date Debtors; (b) the ABL Agent; (c) the ABL Lenders; (d) the Term Loan Agent; (e) the Term Loan Lenders; (f) the HBC Parties; (g) the HBS Parties; (h) the Committee and each of its members; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) each Related Party of each Entity in clause (a) through this clause (j), each in their capacity as such (unless any such Entity or Related Party has opted out of the releases contained in Article VIII.E of the Plan, in which case such Entity or Related Party, as applicable, shall not be a Released Party).

119.    "*Released Preference Action Parties*" means, each of, and in each case in its capacity as such, Holders of General Unsecured Claims against which the Debtors possess Preference Actions.

120.    "*Releasing Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors and Post-Effective Date Debtors; (b) the ABL Agent; (c) the ABL Lenders; (d) the Term Loan Agent; (e) the Term Loan Lenders; (f) the HBC Parties; (g) the HBS Parties; (h) all Holders of Claims or Interests who vote to accept the Plan; (i) all Holders of Claims or Interests that are deemed to accept the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan *and* who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do <u>not</u> affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m), each in their capacity as such.

121.    "*Residual Reserves*" means (a) any amounts remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims, (b) any amounts remaining in the Priority Claims Reserve after payment in full of all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims, the TSA Shortfall Amount, and the Independent Director Fee Claims) and/or (c) any amounts remaining in the Wind-Down Reserve after entry of a final decree closing the last of the Chapter 11 Cases.  In each case, the term Residual Reserves shall include amounts determined in good faith by the Plan Administrator, in consultation with the HBC Parties, to be in excess of those required to be maintained in the Professional Fee Escrow Account, the Priority Claims Reserve, or the Wind-Down Reserve as of any particular time following the Effective Date,

122.    "*Restructuring Transactions*" means the transactions described in Article IV.F.

123.    "*Retained Causes of Action*" means those Causes of Action, which may include Commercial Tort Claims, that shall vest in the Post-Effective Date Debtors on the Effective Date.  For the avoidance of doubt, Retained Causes of Action shall not include any Causes of Action that are settled, released, or exculpated under the Plan.

124.    "*Sale Order*" means the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 473].

125.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed by the Post-Effective Date Debtors on behalf of the applicable Debtor pursuant to the Plan.

126.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

127.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

128.    "*Section 510(b) Claim*" means any Claim that is subordinated under section 510(b) of the Bankruptcy Code.

129.    "*Secured Tax Claim*" means any Secured Claim against any of the Debtors that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

130.    "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is:  (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

131.    "*Securities Act*" means the U.S. Securities Act of 1933.

132.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

133.    "*Seller Note Documents*" means any notes, certificates, agreements, security agreements, documents, or instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the Seller Note.

134.    "*Seller Note Secured Claim*" means any Claim, other than a Claim under the Transition Services Agreement, arising out of, under, or in connection with the Seller Note and the Seller Note Documents and shall include any HBC Indemnification Claim and certain prepetition common area maintenance and real estate tax payments as described in the Settlement Term Sheet.

135.    "*Seller Note*" means that certain promissory note, dated as of November 8, 2019, issued by Le Tote to HBC US Propco Holdings LLC with a maturity of November 8, 2021.

136.    "*Settlement Term Sheet*" means that certain term sheet documenting the HBC Settlement attached as Exhibit D to the Disclosure Statement and approved by the 9019 Order.

137.    "*Store Closing Sales*" means the store closing sales implemented by the Debtors in accordance with section 363 of the Bankruptcy Code and the Consultant Agreement as approved by the Bankruptcy Court.

138.    "*Term Loan Agent*" means TCG BDC, Inc., in its capacity as administrative and collateral agent under the Term Loan Credit Agreement.

139.    "*Term Loan Credit Agreement*" means that certain Term Loan Agreement, dated as of November 8, 2019 (as amended by Amendment No. 1 to the Term Loan Agreement, dated as of January 9, 2020, and Amendment No. 2 to the Term Loan Agreement, dated as of March 23, 2020, and as further amended, restated, supplemented, or otherwise modified from time to time), by and among Le Tote., as lead borrower, French Tote, Le Tote, LLC and L&T, as additional borrowers, LT Card, as guarantor party thereto, the Term Loan Agent, and the Term Loan Lenders.

140.    "*Term Loan Lenders*" means each of the lenders from time to time party to the Term Loan Credit Agreement.

141.    "*Term Loan Termination Agreement*" means that certain agreement dated December 17, 2020, by and between Term Loan Agent and the Debtors documenting the repayment in full and termination of the Term Loan Credit Agreement.

142.    "*Termination Agreements*" means each of the ABL Termination Agreement and Term Loan Termination Agreement.

143.    "*Transition Services Agreement*" means that certain transition services agreement, dated as of November 8, 2019, and as amended from time to time, by and among Le Tote and the HBC Parties.

144.    "*TSA Shortfall Claim*" means certain incremental amounts due under the Transition Services Agreement pursuant to the HBC Settlement for November and December 2020, which total $1,484,762.

145.    "*U.S. Person*" has the meaning given to such term in rule 902 promulgated under the Securities Act.

146.    "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Virginia.

147.    "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

148.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

149.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

150.    "*Urban Outfitters Litigation*" means that certain litigation captioned *Le Tote, Inc. v. Urban Outfitters, Inc.*, No. 20 Civ. 3009 (E.D. Pa.).

151.    "*Urban Proceeds*" means the Cash proceeds, if any, of the Urban Outfitters Litigation, *less* any fees, expenses, and disbursements of the Debtors associated with the prosecution of the Urban Outfitters Litigation.

152.    "*Voting Deadline*" means March 10, 2021 at 5:00 p.m. (prevailing Eastern Time).

153.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and results of voting under the Plan, prepared and filed by the Notice and Claims Agent.

154.    "*Waterfall Recovery*" means distributions under the Plan in accordance with the priorities set forth in Article IV.E.

155.    "*Wind Down*" means the wind down and dissolution of the Debtors' Estates as set forth in Article IV.J.

156.    "*Wind-Down Amount*" means Cash in an amount set forth in the Wind-Down Budget to be determined by the Debtors, subject to the approval of the HBC Parties and in consultation with the Committee, which amount shall be funded out of Available Cash.

157.    "*Wind-Down Budget*" means that certain budget governing the fees, expenses, and disbursements required for the Wind Down.

158.    "*Wind-Down Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Wind-Down Amount to fund the Wind-Down in accordance with Article IV.J and for Plan Administrator purposes in accordance with Article IV.I.

**B.    Rules of Interpretation.**

For purposes of the Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation" (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (x) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xii) any effectuating provisions may be interpreted by the Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xiii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiv) except as otherwise provided in the Plan, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xv) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Post-Effective Date Debtors or the Plan Administrator, as applicable.

**C.    Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.    Governing Law.**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with the Laws of the State of New York, without giving effect to conflict of laws principles.

**E.    Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.        **Controlling Document.**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

# ARTICLE II
## ADMINISTRATIVE CLAIMS,
## PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.        **Administrative Claims and Priority Tax Claims.**

Except as otherwise provided in this Article II.A and except with respect to the TSA Shortfall Claim and the Independent Director Fee Claims, Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be Filed and served on the Plan Administrator and/or Post-Effective Date Debtors no later than the applicable Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.** Objections to such requests, if any, must be Filed and served on the Plan Administrator and/or Post-Effective Date Debtors and the requesting party on or before the Administrative Claim Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Except with respect to the TSA Shortfall Claim and the Independent Director Fee Claims, Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Priority Claims Reserve the unpaid portion of its Allowed Administrative Claim on the latest of:  (i)  the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (ii) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable, or with respect to a Holder of a Priority Tax Claim, treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be Filed or served).  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

The failure to object to Confirmation by a Holder of an Allowed Administrative Claim or Priority Tax Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

B.      **Professional Compensation.**

      1.      **Final Fee Applications and Payment of Professional Fee Claims.**

      All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than 45 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Post-Effective Date Debtors or the Plan Administrator, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

      2.      **Professional Fee Escrow Account.**

      On the Effective Date, the Post-Effective Date Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtors without any further action or order of the Bankruptcy Court, and shall thereupon become Distributable Cash.

      3.      **Professional Fee Escrow Amount.**

      Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Post-Effective Date Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

      4.      **Post-Confirmation Date Fees and Expenses.**

      Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Post-Effective Date Debtors or the Plan Administrator, as applicable, may employ and pay any professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

      5.      **Substantial Contribution.**

      Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

C.      **Statutory Fees.**

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, to the extent applicable, the Post- Effective Date Debtors shall pay and the Plan Administrator shall cause to be paid any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Post-Effective Date Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

D.      **TSA Shortfall Claim.**

The TSA Shortfall Claim is Allowed. On the Effective Date and following the funding of the Priority Claim Reserve, the TSA Shortfall Claim shall be paid in full in Cash.

E.      **Independent Director Fee Claims.**

The Independent Director Fee Claims are Allowed. On the Effective Date and following the funding of the Priority Claim Reserve and payment in full in Cash of the TSA Shortfall Claim, the Independent Director Fee Claims shall be paid in full in Cash.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      **Summary of Classification.**

This Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Seller Note Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired / Impaired | Deemed to Accept / Deemed to Reject |
| 6 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 7 | Le Tote Interests | Impaired | Deemed to Reject |
| 8 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.      **Treatment of Claims and Interests.**

Except to the extent that the Debtors or the Plan Administrator, as applicable, and a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes Allowed.

1.    **Class 1—Other Priority Claims.**

(a)    *Classification*: Class 1 consists of all Other Priority Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired.

(c)    *Voting*: Class 1 is Unimpaired. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.    **Class 2—Other Secured Claims.**

(a)    *Classification*: Class 2 consists of all Other Secured Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtors:

(i)    payment in full in Cash of such Allowed Other Secured Claim;

(ii)    the Collateral securing such Allowed Other Secured Claim;

(iii)    Reinstatement of such Allowed Other Secured Claim, notwithstanding any contractual provision or applicable non-bankruptcy Law that entitles the holder of such claim to demand or to receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of default; or

(iv)    such other treatment rendering such Allowed Other Secured Claim Unimpaired.

(c)    *Voting*: Class 2 is Unimpaired. Each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 2 Other Secured Claim is not entitled to vote to accept or reject the Plan.

3.    **Class 3—Seller Note Secured Claims.**

(a)    *Classification*: Class 3 consists of the Seller Note Secured Claim.

(b)    *Allowance*: The Seller Note Secured Claim shall be Allowed in the aggregate amount of $35,151,108.68 plus accrued and unpaid interest through the Petition Date and the amount of the HBC Indemnification Claims, if any.

(c)    *Treatment*: On the Effective Date, except to the extent that the HBC Parties agree to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for the Allowed Seller Note Secured Claim, each Holder of an Allowed Seller Note Secured Claim shall receive its Pro Rata share of the Distributable Cash allocated to the Seller Note Secured Claim, if any, pursuant to the Waterfall Recovery.

(d)    *Voting*: Class 3 is Impaired. Holders of Allowed Seller Note Secured Claims are entitled to vote to accept or reject the Plan.

**4.    Class 4—General Unsecured Claims.**

(a)    *Classification*: Class 4 consists of all General Unsecured Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Distributable Cash allocated to Allowed General Unsecured Claims, if any, pursuant to the Waterfall Recovery.

(c)    *Voting*: Class 4 is Impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

**5.    Class 5—Intercompany Claims.**

(a)    *Classification*: Class 5 consists of all Intercompany Claims.

(b)    *Treatment*: In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated, distributed, contributed, set off, settled, cancelled and released or otherwise addressed at the option of the Debtors; provided, that no distributions shall be made on account of any such Intercompany Claims.

(c)    *Voting*: Class 5 is either Unimpaired, and the Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

**6.    Class 6—Intercompany Interests.**

(a)    *Classification*: Class 6 consists of all Intercompany Interests.

(b)    *Treatment*: In full and final satisfaction of each Allowed Intercompany Interest, each Intercompany Interest shall be Reinstated solely to maintain the Debtors' corporate structure.

(c)    *Voting*: Class 6 is Unimpaired. Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    **7.**    **Class 7—Le Tote Interests.**

        (a)    *Classification*: Class 7 consists of all Le Tote Interests.

        (b)    *Treatment*: Each Allowed Le Tote Interest shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Le Tote Interests shall be entitled to any recovery or distribution under the Plan on account of such Interests.

        (c)    *Voting*: Class 7 is Impaired. Holders of Le Tote Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    **8.**    **Class 8—Section 510(b) Claims.**

        (a)    *Classification*: Class 8 consists of all Section 510(b) Claims.

        (b)    *Treatment*: Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

        (c)    *Voting*: Class 8 is Impaired. Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**C.**    **Special Provision Governing Unimpaired Claims.**

    Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.**    **Elimination of Vacant Classes.**

    Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.**    **Voting Classes; Presumed Acceptance by Non-Voting Classes.**

    If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

**F.**    **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

    Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.        **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.        **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.        **General Settlement of Claims.**

Except as otherwise expressly provided herein, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion, proposed by the Debtors, to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.        **The HBC Settlement.**

The HBC Settlement was approved pursuant to the 9019 Order.    The Plan incorporates and implements the HBC Settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors and the HBC Parties designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. Except as otherwise expressly set forth herein, the HBC Settlement constitutes a settlement of all potential issues and Claims between and among the Debtors and the HBC Parties.

C.        **Cancellation of Securities and Agreements.**

On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of any Debtor under the Credit Agreement Documents and any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised. Notwithstanding the foregoing, (i) no executory contract or unexpired lease that (x) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (y) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated

20

or cancelled on the Effective Date, (ii) the Seller Note shall continue in effect solely for the purpose of allowing the HBC Parties to receive the distributions provided for under the Plan, and (iii) the Le Tote APA shall continue in effect solely for the purpose of the continuing indemnification obligations as set forth in Article V.E herein.

**D.      Exemption from Certain Taxes and Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**E.      Sources of Plan Consideration and Priority Waterfall.**

Distributions to holders of Allowed General Unsecured Claims and the Seller Note Secured Claim will be funded from Distributable Cash. All Distributable Cash, other than any Urban Proceeds, shall be allocated as follows: (i) first, to holders of the Seller Note Secured Claim, until the such holders receive $8 million on account of the Seller Note Secured Claim; (ii) second, to holders of Allowed General Unsecured Claims, until such holders have received $3 million on account of such claims; (iii) third, split 50/50 between holders of the Seller Note Secured Claim and the holders of Allowed General Unsecured Claims until the Seller Note Secured Claim is paid in full; and (iv) fourth, to the holders of Allowed General Unsecured Claims.

The Urban Proceeds shall be allocated as follows: (i) first to holders of Allowed General Unsecured Claims until such holders have received $1 million on account of the Allowed General Unsecured Claims; (ii) second, split 75% to holders of Allowed General Unsecured Claims and 25% to holders of the Seller Note Secured Claim until the Seller Note Claim is paid in full; and (iii) third, to holders of Allowed General Unsecured Claims (together with the immediately preceding paragraph, the "Waterfall Recovery").

Distributions on account of the Seller Note Secured Claim shall only be made from amounts allocated to the Seller Note Secured Claim pursuant to the Waterfall Recovery and not from amounts allocated to the holders of Allowed General Unsecured Claims therein.

In addition, all Residual Reserves shall become Distributable Cash and shall be distributed in accordance with the Waterfall Recovery.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Post-Effective Date Debtors and shall be subject to administration by the Plan Administrator, and the net proceeds thereof shall be Distributable Cash. The Debtors have granted certain releases to the Released Preference Action Parties with respect to Avoidance Actions and such Avoidance Actions against the Released Preference Action Parties shall not vest in the Post-Effective Date Debtors.

**F.      Restructuring Transactions.**

Before, on, and after the Effective Date, the Debtors or Post-Effective Date Debtors, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) such other

transactions that are required to effectuate the Restructuring Transactions; and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### G.    Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including all actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan or corporate structure of the Debtors or Post-Effective Date Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors.  The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non bankruptcy law.

### H.    Post-Effective Date Debtors.

On and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for purposes of (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible including overseeing the Store Closing Sales in accordance with the Consultant Agreement as authorized by the Bankruptcy Court, in accordance with the Wind-Down Budget, (ii) resolving Disputed Claims, (iii) making distributions on account of Allowed Claims as provided hereunder, (iv) establishing and funding the Distribution Reserve Accounts in accordance with the Wind-Down Budget, (v) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (vi) filing appropriate tax returns, (vii) complying with any continuing obligations under the Asset Purchase Agreement and (viii) administering the Plan in an efficacious manner.  The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

### I.    Plan Administrator.

The Plan Administrator shall act for the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or sale director of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Post-Effective Date Debtors, and shall succeed to the powers of the Post-Effective Date Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors.  The foregoing shall not limit the authority of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer.  The Debtors, after the Confirmation Date, and the Post-Effective Date Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and to implement additional employee programs and make payments thereunder, without any further notice to or action, order, or approval of the Bankruptcy Court.

The powers of the Plan Administrator shall, subject to the powers and authority of the Plan Administrator Oversight Board, include any and all powers and authority to implement the Plan and to administer and distribute the

Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Post-Effective Date Debtors, including:  (i) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Post-Effective Date Debtors in accordance with the Wind-Down Reserve; (ii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts in accordance with the Wind-Down Budget; (iii) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (iv) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtors; (v) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (vi) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (vii) except as otherwise provided for herein, enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in accordance with Article IV.O; *provided*, however, that with respect to the Urban Outfitters Litigation, the member of the Plan Administrator Oversight Board appointed by the Committee shall have the exclusive right to direct the Plan Administrator with respect to enforcement, prosecution, and all other matters pertaining to the management and disposition of the Urban Outfitters Litigation, except for expenditures of the Post-Effective Date Debtors, which shall remain within the purview of the entire Plan Administrator Oversight Board); (viii) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (ix) representing the interests of the Post-Effective Date Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (x) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.

### 1.  Plan Administrator Oversight Board

On the Effective Date, the Plan Administrator Oversight Board shall be appointed.  The Plan Administrator Oversight Board shall consist of two members appointed by the HBC Parties and one member appointed by the Committee.  The members of the Plan Administrator Oversight Board shall not receive any additional compensation on account of serving in such capacity.

### 2.  Retention of Professionals.

The Plan Administrator shall have the right, subject to the Wind-Down Budget, to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties for the Post-Effective Date Debtors.  The reasonable fees and expenses of such professionals shall be paid from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Post-Effective Date Debtors' retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

### 3.  Compensation of the Plan Administrator.

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

### 4.  Plan Administrator Expenses.

All costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Post-Effective Date Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Post-Effective Date Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid in accordance with the Wind-Down Budget.  Such costs, expenses and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

## 5.  Exculpation, Indemnification, Insurance & Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtors.  The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

## 6.  Tax Returns.

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

## 7.  Dissolution of the Post-Effective Date Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtors shall be deemed to be dissolved without any further action by the Post-Effective Date Debtors, including the filing of any documents with the secretary of state for the state in which each Post-Effective Date Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtors in and withdraw the Post-Effective Date Debtors from applicable state(s).

## J.  Wind Down.

On and after the Effective Date, the Plan Administrator will be authorized, subject to the authority of the Plan Administrator Oversight Board, to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall, subject to the authority of the Plan Administrator Oversight Board:  (i) cause the Debtors and the Post-Effective Date Debtors, as applicable, to comply with, and abide by, the terms of the Asset Purchase Agreement and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Post-Effective Date Debtors as set forth herein, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to this Plan all Interests, and

(z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

**K.      Continued HBC Support.**

**1.      Transition Services Agreement.**

Notwithstanding anything to the contrary in the Plan, the Transition Services Agreement shall be deemed terminated as of February 28, 2021; *provided* that if for any reason one or more of the Debtors' stores remains open following February 28, 2021, a charge of $513,017 for March 2021 (and any subsequent months for which such stores remain open) would apply.  If no stores remain open following February 28, 2021, but the Debtors determine that other transition services are required after such date, the Debtors and the HBC Parties shall negotiate in good faith the cost of such services.

**2.      HBC Operational Support.**

To the extent not already completed prior to the Effective Date, the HBC Parties shall ship Lord & Taylor-owned inventory located at the HBC Parties' Pottsville facility to brick and mortar Lord & Taylor stores, as the Debtors may reasonably request and at the Debtors' cost (a) at a cost per unit of $0.35 and (b) with shipping supplies and transportation costs passed through to Lord & Taylor at cost.

**3.      Containers.**

The Containers shall be deemed property of the HBC Parties, and title to such Containers, if in the name of any Debtor, shall be transferred to the HBC Parties at the HBC Parties' sole cost.  The Debtors shall provide such cooperation as may reasonably be required to implement such title transfers, including a limited power of attorney authorizing the HBC Parties to effect such title transfers.

**4.      Further Assurances.**

The Debtors shall use commercially reasonably efforts to transfer certain utility accounts for non-Debtor locations to the HBC Parties identified on Annex A to the Settlement Term Sheet, and assist the HBC Parties as required with respect to the in the assumption and assignment and/or rejection of certain contracts pursuant to the HBC Settlement, in each case at the HBC Parties' sole cost and expense.

**5.      Wind-Down Support.**

In order to assist with the Wind Down, the HBC Parties will deliver the following information to Le Tote in exchange for an incremental payment of $115,000:  (a) trial balance as of January 2, 2021, including reconciliations by account; (b) accounts payable aging as of January 2, 2021; (c) the latest "Vendor Master" file; and (d) historical data from November 9, 2019 for (i) AP invoice detail, (ii) vendor payment/cash receipts detail, (iii) inventory receipts/proofs of delivery, and (iv) vendor allowance detail, to the extent such data is available.

The HBC Parties shall make commercially reasonable efforts to cooperate with requests, if any, from taxing authorities exercising audit rights with respect to historical Lord & Taylor audits at a reasonable rate based on hours incurred to procure and provide requested data during the Wind Down.

**L.      Dissolution and Board of Directors.**

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.  Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

Following the Effective Date, the Independent Directors of the Debtors shall retain authority solely with respect to matters related to Professional Fee Claim requests by Professionals acting at their authority and direction in accordance with the terms of the Plan.  The foregoing persons in their capacity as independent directors shall not have any of their privileged and confidential documents, communications or information transferred (or deemed transferred) to the Post-Effective Date Debtors, the Plan Administrator, or the Plan Administrator Oversight Board.

**M.      Management Payments.**

Upon the Effective Date, the members of the Debtors' management who are "KEIP Participants" as defined in the KEIP Order shall receive payments in the same proportion and amount as set forth in the "Plan Goals" of the KEIP Order.

**N.      Effectuating Documents; Further Transactions.**

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and the officers and members thereof are, authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

**O.      Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article IV.O and Article VIII hereof, the Post-Effective Date Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan, except for the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, which shall be deemed released and waived by the Debtors and the Post-Effective Date Debtors as of the Effective Date.

The Post-Effective Date Debtors, on and after the Effective Date, may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action (other than the Causes of Action  released by the Debtors pursuant to the releases and exculpations contained in the Plan and those that have been settled pursuant to either Bankruptcy Rule 9019 or section 1123 of the Bankruptcy Code), whether arising before or after the Petition Date, and the Post-Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may, in its reasonable business judgment, subject to the authority of the Plan Administrator Oversight Board, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Post-Effective Date Debtors or the Plan Administrator will not pursue any and all available Causes of Action. Unless any Cause of Action against an Entity is waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Post-Effective Date Debtors expressly reserve all Causes of Action for later

adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Post-Effective Date Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Post-Effective Date Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

**P.      Closing the Chapter 11 Cases.**

For the avoidance of doubt, upon the occurrence of the Effective Date, the Plan Administrator shall be permitted to file a motion for entry of an order closing all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Le Tote, upon notice and hearing with all parties rights preserved to object to said motion, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Le Tote, irrespective of whether such Claim(s) were filed against a Debtor whose Chapter 11 Case was closed.  When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Le Tote in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (ii) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (iii) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (v) is a D&O Policy.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of:  (i) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (ii) 30 days after the Debtors provide notice of surrender of possession to a landlord of a rejected lease where surrender occurs after entry of an order approving such rejection; and (iii) 30 days after notice of any rejection that occurs after the Effective Date.  **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (x) be treated as a creditor with respect to such Claim, (y) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (z) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Post-Effective Date Debtors, or the property for any of the foregoing without the need for any objection by the Debtors, Post-Effective Date Debtors, or the Plan Administrator, as**

**applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

Notwithstanding anything to the contrary in the Plan, any Proof of Claim arising from the rejection of the Propco Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity and Holders of such Claims may not receive any distributions on account of such Claims.

C.      **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (i) the amount of any Cure Claim; (ii) the ability of the Post-Effective Date Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment. Notwithstanding the foregoing, nothing herein shall prevent the Post-Effective Date Debtors from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

Unless otherwise provided by an order of the Bankruptcy Court, if any, at least seven days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim. To the extent that the Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to, or action, order, or approval of, the Bankruptcy Court.

D.      **D&O Policies.**

The D&O Policies shall be assumed by the Post-Effective Date Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Policies including the coverage for defense and indemnity under any of the D&O Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.

E.       **Indemnification Obligations**

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Post-Effective Date Debtors on behalf of the applicable Debtor, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; *provided* that, notwithstanding anything herein to the contrary, the Post-Effective Date Debtors' obligation to fund such indemnification obligations shall be limited to the extent of coverage available under any insurance policy, including any D&O Policy.

Notwithstanding anything to the contrary in the Plan, the obligation of the HBC Parties to indemnify the Debtors pursuant to Section 9.02(a) of the Le Tote APA and the obligation of the Debtors to indemnify the HBC Parties pursuant to Section 9.02(b)(iii) of the Le Tote APA, as well as the relevant provisions of Section 9.01, 9.03, 9.04 and 9.05 of the Le Tote APA and any defined terms used therein, shall survive Confirmation and Consummation and shall be assumed by the Post-Effective Date Debtors on behalf of the applicable Debtor.

F.       **Termination Agreements.**

Notwithstanding anything to the Contrary in the Plan, the Termination Agreements shall be assumed by the Post-Effective Date Debtors on behalf of the applicable Debtor effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.

G.       **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

H.       **Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

I.       **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Initial Distribution Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the next Quarterly Distribution Date after such Claim becomes Allowed or as soon as reasonably practicable thereafter) or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim against or Allowed Interest in, as applicable, the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**B.      Rights and Powers of the Disbursing Agent.**

**1.      Powers of the Debtors and the Disbursing Agent.**

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

The Debtors and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Disbursing Agent is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.

**2.      Fees of Disbursing Agent and Expenses Incurred On or After the Effective Date.**

Except as otherwise ordered by the Bankruptcy Court, the reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Disbursing Agent in connection with such person's duties shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash from the Wind-Down Amount.

**C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**1.      Record Date for Distribution.**

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed and the Debtors and the Disbursing Agent, or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    **Delivery of Distributions in General.**

(a)    Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims, or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim agree otherwise.

(b)    Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim or Disputed Interest have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)    Initial Distribution Date.

Except as otherwise provided herein, on the Initial Distribution Date, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such holder, or, if no Proof of Claim or Proof of Interest has been Filed, the address set forth in the Schedules.

(d)    Quarterly Distribution Date

Except as otherwise determined by the Plan Administrator, subject to the oversight of the Plan Administrator Oversight Board, on each Quarterly Distribution Date or as soon thereafter as is reasonably practicable, the Disbursing Agent shall make the distributions required to be made on account of Allowed Claims under the Plan on such date. Any distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that distribution is not an Allowed Claim on such date, shall be distributed on the first Quarterly Distribution Date after such Claim or Interest is Allowed. Subject to Article VI.E, no interest shall accrue or be paid on the unpaid amount of any distribution paid on a Quarterly Distribution Date pursuant to the Plan.

3.    **Minimum;** *De Minimis* **Distributions.**

No Cash payment of less than $100, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim, and each Claim to which this limitation applies shall be satisfied pursuant to Article VIII of the Plan, and its Holder shall be forever barred pursuant to Article VIII of the Plan from asserting that Claim against the Post-Effective Date Debtors or their property.

4.    **Undeliverable Distributions and Unclaimed Property.**

With respect to any Undeliverable Distribution, no distribution to the relevant Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Post-Effective Date Debtors and shall

become Distributable Cash, automatically and without need for a further order by the Bankruptcy Court and the Claim or Interest of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### 5.    Manner of Payment Pursuant to the Plan.

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

### D.    Compliance with Tax Requirements/Allocations.

In connection with the Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  All Persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

### E.    Allocation of Plan Distributions Between Principal and Interest.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

### F.    Setoffs and Recoupment.

Except as otherwise expressly provided herein, the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.

### G.    Claims Paid or Payable by Third Parties.

#### 1.    Claims Paid by Third Parties.

The Debtors shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    **Claims Payable by Insurance, Third Parties.**

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' insurance policies, including the D&O Policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers or non-Debtor-payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    **Applicability of Insurance Policies.**

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies (including the D&O Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

**H.    Indefeasible Distributions.**

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

**A.    Allowance of Claims and Interests.**

On and after the Effective Date, and except with respect to Claims that are Allowed pursuant to the Plan, the Debtors or Post-Effective Date Debtors, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

**B.    Claims and Interests Administration Responsibilities.**

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors or Post-Effective Date Debtors, as applicable, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests:  (i) to File, withdraw, or litigate to judgment objections to Claims and Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      **Estimation of Claims and Interests.**

As of the Effective Date, the Post-Effective Date Debtors or the Plan Administrator, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim or Interest is estimated.  Each of the foregoing Claims or Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      **Adjustment to Claims or Interests without Objection.**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors shall provide any Holder of such a Claim or Interest with fourteen (14) days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result as the result of a Claim or Interest being paid, satisfied, amended or superseded.

E.      **Time to File Objections to Claims.**

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.      **Disallowance of Claims.**

Other than with respect to Claims Allowed under the Plan, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

**G.      Amendments to Claims.**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided that* a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late filing.

**H.      No Distributions Pending Allowance.**

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in Article VII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**I.      Distributions After Allowance.**

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.B of the Plan.

**J.      Single Satisfaction of Claims.**

Holders of Allowed Claims may assert such Claims against the Debtor(s) obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

**ARTICLE VIII**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.      Discharge of Claims and Termination of Interests.**

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(9),502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective

Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**B.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**C.      Release of Liens.**

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  In addition, the ABL Agent, the Term Loan Agent, and the HBC Parties shall execute and deliver all documents reasonably requested by the Debtors, Post-Effective Date Debtors, or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

**D.      Releases by the Debtors.**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, (i) each Released Party is deemed released and discharged by the Debtors, their Estates, the Post-Effective Date Debtors, and the Plan Administrator from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, or their Estates, the Post-Effective Date Debtors or the Plan Administrator would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in a Debtor, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Le Tote APA, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Asset Sale, the Investigation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the Asset Purchase Agreement, the Asset Sale, the Le Tote APA, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between and Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to constitute willful misconduct, fraud or gross negligence and (ii) each Released Preference Action Party is deemed released and discharged by the Debtors, their Estates, the Post-Effective Date Debtors, and the Plan Administrator from any and all Preference Actions.  Notwithstanding the inclusion of any Released Parties as a potential party to any Retained Causes of Action, such parties shall remain Released Parties.**

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release the Debtors or the HBC Parties from the mutual indemnification obligations as set forth in Article V.E herein.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases herein, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases herein are:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors asserting any claim released by the releases herein against any of the Released Parties.

E.    Releases by Holders of Claims and Interests.

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released and discharged each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Le Tote APA, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Asset Sale, the Investigation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, or the Plan, the Chapter 11 Cases, the Asset Purchase Agreement, the Asset Sale, the Le Tote APA, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to constitute willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases contained in the Plan and Confirmation Order do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, (iv) release the Debtors or the HBC Parties from the mutual indemnification obligations as set forth in Article V.E herein, or (v) release the HBC Parties, LT Propco LLC, HBS Leasehold LLC, the Financed Landlords, HBC L.P., Hudson's Bay Company ULC, or any Related Party of any of the foregoing from their respective obligations arising at any time under or from the Financed Master Lease, the Financed Master Lease Guaranty, or the documents and other instruments governing and/or securing that certain loan to the Financed Landlords and certain of their affiliates in the original principal amount of $846,229,966, currently held by Wilmington Trust, National Association, as Trustee in Trust for the holders of Hudson's Bay Simon JV Trust 2015-HBS, Commercial Mortgage Pass-Through Certificates, Series 2015-HBS.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the Releasing Parties; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after notice and opportunity for hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

F.      Exculpation.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Asset Purchase Agreement, the Asset Sale, the Investigation, or any Restructuring Transaction, contract, instrument, release or other agreement or document  (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the Asset Purchase Agreement, the Investigation, the Asset Sale, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that constitutes willful misconduct, actual fraud, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary herein, nothing in this Article VIII.F shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date or after the Effective Date.

G.      Injunction.

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to Exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the Exculpation provided pursuant to the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely filed proof of claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or non-bankruptcy law; and (v) commencing or continuing in any manner any action

38

or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.  **Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors until the closing of these Chapter 11 Cases.**

H.    **Limited Substantive Consolidation.**

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating each of the Estates of the Debtors into a single consolidated Estate solely for purposes of voting, Confirmation, and distribution.  For the avoidance of doubt, the Plan shall not serve as a motion by the Debtors seeking entry of an order substantively consolidating the Debtors for any other purposes.  Notwithstanding anything in this Article VIII.H of the Plan, all distributions under the Plan shall be made in accordance with Article VI of the Plan.

If the Debtors' Estates are substantively consolidated in accordance with this Article VIII.H, then, on and after the Effective Date, all assets and liabilities (including Allowed Claims) of the Debtors shall be treated as though they were merged into one Estate solely for purposes of voting, Confirmation, and distribution.  The limited substantive consolidation described herein shall not affect the legal and organizational structure of the Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or, with respect to Executory Contracts or Unexpired Leases that were assumed or entered into during the Chapter 11 Cases, if any.  **Moreover, any alleged defaults under any applicable agreement with the Debtors or their respective Affiliates arising from substantive consolidation under the Plan shall be deemed waived or otherwise cured as of the Effective Date.**

If the Debtors' Estates are not substantively consolidated in accordance with this Article VIII.H, then the Plan shall constitute a motion to approve a 9019 settlement with respect to the distributions on account of General Unsecured Claims (the "9019 Settlement"), which reflects a compromise and settlement of Claims that such creditors may hold against the respective Debtors.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the 9019 Settlement pursuant to Bankruptcy Rule 9019 and a finding by the Bankruptcy Court that the 9019 Settlement is in the best interests of the Debtors and their Estates.  If the Effective Date does not occur, the 9019 Settlement shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

If the 9019 Settlement is approved pursuant to the Confirmation Order, then, on and after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive it Pro Rata share of the portion of Distributable Cash allocated to holders of Allowed General Unsecured Claims in accordance with Article IV.E without giving effect to the proportion that the amount of Allowed Claims against any one Debtor bears to the aggregate amount of Allowed Claims against all of the Debtors.

Notwithstanding the limited substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay the quarterly fees to the U.S. Trustee until such time as a particular Chapter 11 Case is closed, dismissed, or converted.

I.    **Protection Against Discriminatory Treatment.**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

**J.      Recoupment.**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**K.      Subordination Rights.**

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**L.      Reimbursement or Contribution.**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**A.      Conditions Precedent to the Effective Date.**

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

1.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other Restructuring Transactions;

2.      all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

3.      the Distribution Reserve Accounts shall have been established and funded with the Priority Claims Reserve Amount and the Wind-Down Amount;

4.      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan;

5.      the Bankruptcy Court shall have entered the Confirmation Order and which shall have become a Final Order that has not been stayed or modified or vacated and shall:

(a)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

(b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)    authorize the implementation of the Plan in accordance with its terms; and

(d)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

6.    with respect to all actions, documents and agreements necessary to implement the Plan: (a) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (b) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (c) such documents and agreements shall have been effected or executed, and in each case all such actions, documents and agreements shall be consistent with the terms of the Plan.

**B.    Waiver of Conditions.**

The conditions to Consummation set forth in Article IX.A may be waived by the Debtors at any time with the consent of the HBC Parties and the Committee, not to be unreasonably withheld, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

**C.    Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**D.    Effect of Non-Occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

**ARTICLE X**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.    Modification and Amendments.**

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan, with the consent of the HBC Parties and the Committee, not to be unreasonably withheld, as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, with the consent of the HBC Parties and the Committee, not to be unreasonably withheld, with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

**B.**     **Effect of Confirmation on Modifications.**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.**     **Revocation or Withdrawal of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date, with the consent of the HBC Parties and the Committee, not to be unreasonably withheld.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (x) constitute a waiver or release of any Claims or Interests; (y) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (z) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.     Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.     Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.     Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.     Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.G;

14.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.    Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.    Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.    Hear and determine matters concerning section 1145 of the Bankruptcy Code;

22.    Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.    Enforce all orders previously entered by the Bankruptcy Court;

24.      Hear any other matter not inconsistent with the Bankruptcy Code; and

25.      Enter an order concluding or closing the Chapter 11 Cases.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**A.      Immediate Binding Effect.**

Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.      Additional Documents.**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.      Payment of Statutory Fees.**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**D.      Dissolution of Statutory Committees.**

On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Following the Effective Date, and notwithstanding the foregoing, the Committee shall remain in place with respect to the Debtors solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

**E.      Reservation of Rights.**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**F.      Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**G.      Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

**If to the Debtors:**

Le Tote, Inc.
250 Vesey Street, 22nd Floor
New York, New York 10281
Attention:  Michael van den Berg
Email address:  mvandenberg@letote.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Steven N. Serajeddini, P.C.
Email addresses:  steven.serajeddini@kirkland.com

-and-

Kirkland & Ellis LLP
300 N. LaSalle
Chicago, Illinois 60654
Attention:  David L. Eaton and Jaimie Fedell
Email addresses: deaton@kirkland.com
                          jaimie.fedell@kirkland.com


**If to the ABL Agent:**

Otterbourg P.C.
230 Park Avenue
New York, New York
Attention:  David W. Morse and David J. Impastato
Email addresses:  dmorse@otterbourg.com
                          dimpastato@otterbourg.com

**If to the Term Loan Agent:**

Choate Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
Attention:  Kevin J. Simard and Jennifer Conway Fenn
Email addresses:  ksimard@choate.com
                          jfenn@choate.com

**If to the HBC Parties:**

Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, New York
Attention:  John C. Longmire and Weston T. Eguchi
Email addresses:  JLongmire@willkie.com
                  WEguchi@willkie.com

After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.      Enforcement of Confirmation Order.**

On and after the Effective Date, the Debtors and the Post-Effective Date Debtors, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

**I.      Compensation and Benefits Programs.**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall pay all compensation and benefit obligations under any present compensation, benefit, or incentive programs, including any programs approved pursuant to an Order of the Bankruptcy Court.

**J.      Entire Agreement.**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**K.      Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at www.cases.stretto.com/letote or the Bankruptcy Court's website at www.vaeb.uscourts.gov.

**L.      Nonseverability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided that* at the request of the Debtors, with the consent of the HBC Parties and the Committee, not to be unreasonably withheld, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided, further*, that any such alteration or interpretation shall be acceptable to the Debtors.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

**M.**    **Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**N.**    **Waiver.**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted,

Dated:  March 23, 2021                    Le Tote, Inc.
                                          on behalf of itself and all other Debtors


                                          /s/ *Ed Kremer*
                                          _____
                                          Name:       Ed Kremer
                                          Title:      Chief Restructuring Officer
                                          Company:    Le Tote, Inc.