IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILMINGTON TRUST, NATIONAL ASSOCIATION
        Appellant,

v.                                                Civil Action No. 3:20cv878

LORD & TAYLOR LLC, et al.,
        Appellees.

## OPINION

Wilmington Trust (the "Trust") appeals a bankruptcy court Order denying the Trust standing to enforce the provisions of a master lease. Lord & Taylor, LLC ("L&T"); Le Tote, Inc. ("Le Tote"); Hudson's Bay Company ULC, HBC US Propco Holding LLC, and HBC Global Properties LLC (together, "HBC"); and the Borrower Landlords[1] move to dismiss the appeal pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure. (ECF No. 12.) For the reasons that follow, the Court will grant the motion to dismiss.

## I. STANDARDS OF REVIEW

### A. *Appeals from Bankruptcy Court*

On appeal from a bankruptcy court, the district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Midland Funding LLC v. Thomas*, 606 B.R. 687, 692 (W.D. Va. 2019) (quoting *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985)). Final orders of a bankruptcy court

---

[1] The Borrower Landlords include LT Bay Shore Leasehold LLC, LT Braintree Leasehold LLC, LT Bridgewater LLC, LT Burlington Leasehold LLC, LT Columbia LLC, LT Eastchester LLC, LT Fair Oaks LLC, LT Freehold Raceway LLC, LT Garden City LLC, LT Garden State Leasehold LLC, LT King of Prussia LLC, LT Livingston Leasehold LLC, LT Natick Leasehold LLC, LT Northbrook Leasehold LLC, LT Quakerbridge Leasehold LLC, LT Ridgewood LLC, LT Rockaway Town LLC, LT Stamford LLC, LT Twelve Oaks LLC, LT Walden Galleria LLC, LT Walt Whitman Leasehold LLC, LT Westfield LLC, LT Willowbrook LLC, and LT Woodfield LLC.

are appealable to a district court pursuant to 28 U.S.C. § 158(a). To be considered a final order, a bankruptcy court order need only dispose of discrete issues within a specific case. *Gold v. Guberman (In re Comput. Learning Ctrs., Inc.)*, 407 F.3d 656, 660 (4th Cir. 2005) (internal quotations omitted).

When reviewing a bankruptcy court's decision on appeal, a district court functions as an appellate court and applies the standards of review usually applied in federal courts of appeal. *Cal. Self-Insurers' Sec. Fund v. Siegel*, No. 3:18cv619, 2019 U.S. Dist. LEXIS 167399, at *19–20 (E.D. Va. Sept. 27, 2019). The district court reviews the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Stancill v. Harford Sands, Inc (In re Harford Sands Inc)*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous when a court reviewing it, taking into account all of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). In cases where the issues present mixed questions of law and fact, the court will apply the clearly erroneous standard to the factual portion of the inquiry and de novo review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

### B. Motions to Dismiss

Under Rule 12(b)(6), a motion to dismiss gauges a complaint's sufficiency without resolving any questions about the facts or testing the claims' merits.[2] *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering the motion, the court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

---

[2] Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12. *See, e.g., S. Bank & Trust Co. v. Alexander*, 524 B.R. 82, 89 (E.D. Va. 2014).

The principle that the court must accept all allegations as true, however, does not apply to conclusory statements and legal conclusions. *See Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. BACKGROUND

This appeal concerns the Trust's rights under several connected lease documents, some of which date back to 2015. To raise capital for various business ventures, HBC undertook a sale-leaseback transaction in 2015 with its 99%-owned subsidiary, HBS Global Properties LLC ("HBS"). (ECF No. 8-8, at 26.) First, HBC, through HBS, sold twenty-four L&T stores to the twenty-four Borrower Landlords. (*Id.*) The parent company of each Borrower Landlord was HBC-owned company Saks-LT Master Mezzanine, LLC. (ECF No. 2-2, at 215.) L&T, then a wholly owned subsidiary of HBC, leased twenty-four stores from the Borrower Landlords. (ECF No. 2-4, at 28–123.)

A series of documents memorialize these transactions. First, the master lease sets out the terms by which L&T rented twenty-four store locations from twenty-four different Borrower Landlords. The master lease details each of the twenty-four individual mortgages and obligates L&T to pay rent to each Borrower Landlord on each separate property. (*Id.* at 28, 60.) Second, the Subordination, Non-Disturbance and Attornment Agreement (the "SNDA") requires that L&T pay rent to a lockbox account rather than directly to the twenty-four Borrower Landlords. (ECF No. 2-5, at 3.) The SNDA does not directly mention the Trust. And third, the loan extension agreement extended an $846 million loan memorialized in the original loan agreement.

3

The original loan agreement set out the terms of a loan from lenders J.P. Morgan, Bank of America, and Column Financial, Inc. ("Column") to HBC-controlled special entities, including the Borrower Landlords. (ECF No. 2-3, at 1.) In the loan extension agreement, the lenders (J.P. Morgan, Bank of America, and Column) assigned the loans from themselves to the Trust, (*id.* at 55, 57, 60; ECF No. 2-7, at 1), thereby obligating the Borrower Landlords to pay the loan back in monthly payments to the Trust. (ECF No. 2-4, at 28–123; ECF No. 2-5, at 1–19; ECF No. 2-4, at 1–27.)

Several other documents further link HBC and the Trust to the master lease. A series of separate, recorded 2015 mortgage assignments with identical effective dates purport to convey "all right, title and interest of Assignor in" each of the Borrower Landlords' mortgages to the Trust.[3] And a loan guaranty states that HBC guarantees the loan on behalf of the Borrower Landlords. (ECF No. 2-7, at 15.)

Le Tote's acquisition of L&T in 2019 connected Le Tote to the lease documents. (ECF No. 8-9, at 1.) As part of the sale, LT Propco LLC ("LT Propco"), a subsidiary of HBC, promised Le Tote that it would pay the outstanding mortgages owed by L&T to the Trust-controlled lockbox account until November 2022. (ECF No. 8-9, at 24.) LT Propco did not make the same guarantee to the Trust, which was not a party to the sale agreement. (ECF. No. 8-8, at 36.) In a press release announcing the sale, HBC stated that it would "maintain economic responsibility for the rent payments owed by Lord + Taylor at the 38 locations operated by Le Tote for the initial three years post-closing" and that the company "expect[ed] to continue to be

---

[3] (ECF No. 2-12, at 5; ECF No. 3-2, at 2; ECF No. 3-4, at 2; ECF No. 3-6, at 2; ECF No. 3-8, at 1; ECF No. 3-10, at 5; ECF No. 3-13, at 2; ECF No. 3-15, at 4; ECF No. 4-3, at 3; ECF No. 5-1, at 3; ECF No. 5-3, at 3; ECF No. 5-6, at 2; ECF No. 5-8, at 3; ECF No. 6-1, at 2; ECF No. 6-3, at 4; ECF No. 6-5, at 3; ECF No. 6-8, at 3; ECF No. 6-10, at 2; ECF No. 7-2, at 2; ECF No. 7-5, at 3; ECF No. 8-2, at 5; ECF No. 8-4, at 1; ECF No. 8-5, at 37; ECF No. 8-8, at 2.)

4

liable for approximately $77 million in Lord + Taylor total cash rent on an annual basis." (ECF No. 8-9, at 1.)

L&T paid its last rent installment in March 2020. (*Id.* at 140.) Shortly afterwards, HBC informed Situs, which serviced the loan for the Trust, of the default. (ECF No. 8-8, at 10.) No party has paid any rent since. (ECF No. 8-9, at 140.)

In April 2020, the Trust attempted to declare the loan in default, accelerate the loan, and revoke the Borrower Landlords' license to collect rents on behalf of the Trust. (ECF No. 8-8, at 21; ECF No. 8-9, at 140.)

The Trust has repeatedly sought to portray the Borrower Landlords, L&T, Le Tote, and HBC as one entity.[4] In bankruptcy court, the Trust insinuated that these parties had colluded or engaged in shadowy dealings with respect to the failure to compel rent payment under the master lease. (ECF No. 9-4, at 84.) Nothing in the record suggests that the Trust had evidence for these claims beyond charts showing HBC's corporate structure in 2015 and 2019. (ECF No. 2-1, at 108, 112.) The latter chart shows HBC's 25% stake in Le Tote and Le Tote's 100% ownership of L&T. (*Id.* at 112.)

On October 30, 2021, the bankruptcy court found that the Trust lacked standing to enforce the master lease provisions against L&T directly. (ECF No. 1-1, at 13.) In filing the

---

[4] The Trust included in the record a 2016 advisory memorandum prepared by law firm Lock & Lord on the question of whether, in the event of a bankruptcy proceeding involving L&T and the Borrower Landlords, the bankruptcy doctrine of substantive consolidation could be used to treat the various entities as one in a legal context, pooling their debts and assets together. (ECF No. 2-7, at 17; ECF No. 9-8, at 166.) The memorandum explained that it was unlikely using any of the widely accepted tests for substantive consolidation, which vary between circuits, because, *inter alia*, it would not be difficult to segregate the assets and liabilities of each entity; each borrower maintained separate books and financial records; the assets of the separate entities were not hopelessly commingled; there were only limited guarantees between the entities; and there was no evidence of egregious disregard for corporate formalities. (ECF No. 2-7, at 43, 45; ECF No. 2-8, at 1–17.)

motion to enforce the leases, the Trust relied on language in the SNDA that the Trust alleged independently established standing based on its status as a third-party beneficiary under Article XXXV of the master lease. (*Id.* at 18.) The bankruptcy court found that Article XXXV concerned only L&T's obligations to the parties designated as landlords under the loan documents, and that the operative language in the SNDA said L&T had to deliver rent funds to the lockbox account only as these funds were due to the Borrower Landlords, not the Trust. (*Id.* at 6–7.) In other words, the SNDA directed L&T to pay rent to the lockbox account but did not establish any direct L&T obligation to the Trust. The bankruptcy court also found that the part of the master lease concerning rent was in Article III, which gave the Borrower Landlords the right to change the due dates of the rent, and not Article XXXV, which conveyed some protections to the Trust that fell short of enforcement rights. (*Id.* at 18.)

The Trust attempted to assert ownership of the rents in default. (ECF No. 2-1, at 200.) The bankruptcy court held that under New York law, which all parties agreed governed the lease, no language in the assignment of rents to the Trust could convey title to the rents. (ECF No. 1-1, at 22.) The Trust had only a lien on rent payments. (*Id.* at 21.) A fundamental principle in bankruptcy law is that a debtor cannot owe identical debt to two different parties. 11 U.S.C.§ 502(e)(1)(B). The bankruptcy court found only that L&T owed rent to the Borrower Landlords, not the Trust. (ECF No. 1-1, at 18.)

On February 3, 2021, the bankruptcy court ordered the assumption and assignment of L&T's rights under the master lease to LT Propco. (ECF No. 10, at 7). The Trust concedes that L&T and Le Tote's Chapter 11 reorganization plan is substantially consummated. (ECF No. 17, at 12.)

6

The Trust now appeals the bankruptcy court's October 30 Order, which explained that the Trust lacked standing to enforce the rent provisions of the master lease against L&T. (ECF No. 10, at 9.)

The Trust and HBC are involved in ongoing litigation in New York state court (the "New York litigation") in which the Trust seeks to enforce HBC's promises to guarantee the loan. (ECF No. 9-4, at 219.) Neither L&T nor Le Tote is a party to the New York action. (*Id.* at 218.)

## III. DISCUSSION

L&T, Le Tote, the Borrower Landlords, and HBC argue that the Court should dismiss the Trust's appeal for three reasons. First, the Trust lacks standing to appeal the October 30 Order to this Court under the heightened requirements for standing in bankruptcy appeals. Second, the appeal is constitutionally moot because the October 30 Order related solely to the Trust's ability to compel rent from L&T, and L&T is no longer a party to the lease documents. And third, the appeal is equitably moot because it is imprudent to disturb the finality of L&T and Le Tote's confirmed Chapter 11 reorganization plan.

### *A. Standing to Appeal*

The test for standing to appeal a bankruptcy court's order to the district court is well-established: the appellant must be a person aggrieved by the bankruptcy order. *White v. Univision of Va. Inc. (In re Urban Broad. Corp.)*, 401 F.3d 236, 243–44 (4th Cir. 2005); *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S., LLC*, 469 F. Supp. 3d 505, 508 (E.D. Va. 2020). Likewise, it is well established that a "person aggrieved" is a party whose pecuniary interests are directly and adversely affected, or who has a financial stake in the bankruptcy court's order. *In re Urban Broad. Corp.*, 401 F.3d at 243–44; *Mar-Bow*, 469 F. Supp. 3d at 523. To demonstrate an order's direct and adverse pecuniary effect, a party must

7

show that the bankruptcy order "diminishes its property, increases its burdens, or impairs its rights." *Mar-Bow*, 469 F. Supp. 3d at 523 (quoting *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, 578 B.R. 325, 354 (E.D. Va. 2017)).

Appellate standing in the bankruptcy context is significantly more restrictive than either Article III standing[5] or bankruptcy standing in bankruptcy courts.[6] *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (noting that parties involved in bankruptcy proceedings can lack standing to appeal); *Mar-Bow*, 469 F. Supp. 3d at 523, 529 (rejecting appellant creditor's contention that parties held to lack standing in a bankruptcy court always have standing to appeal the ruling). The heightened standards for appealing a bankruptcy order reflect the policy concern that bankruptcy litigation could become "mired in endless appeals brought by the myriad of parties who are indirectly affected." *Mar-Bow*, 578 B.R. at 354, *aff'd sub nom. In re Alpha Nat. Res., Inc.*, 736 F. App'x 412 (4th Cir. 2018) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)).

Here, the Borrower Landlords, Le Tote, L&T, and HBC argue that the Trust does not have standing to appeal the bankruptcy order because this litigation does not affect the Trust's pecuniary interests. In support, the Borrower Landlords point out that the Trust cannot enforce the provisions of the master lease against L&T because L&T has already assigned the lease to a new tenant assignee, an HBS affiliate.

---

[5] Article III standing requires (1) a concrete and particularized injury, which need not be financial, (2) that is fairly traceable to the challenged action, and (3) that a court order can redress. *Id.* at 532 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

[6] The Bankruptcy Code states that in a Chapter 11 proceeding, "[a] party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

8

The Trust concedes that it cannot enforce the lease provisions against L&T. Still, it argues that the bankruptcy litigation affects its pecuniary interests because of its involvement in the New York litigation, and because the Trust may wish to enforce the provisions of the lease against the tenant assignee. Put simply, the Trust contends that because the bankruptcy court's October 30 Order could have res judicata effect on other litigation, the Order affects the Trust's pecuniary interests.

Res judicata, which serves to preclude subsequent litigation of matters when there has been a prior judgment between the same parties, encompasses both claim preclusion and collateral estoppel. *Schwartz v. J.J.F. Mgmt. Servs.*, 922 F.3d 558, 566 (4th Cir. 2019); *CentraArchy Rest. Mgmt. Co. v. Angelo*, 806 F. App'x 176, 178 (4th Cir. 2020). To assert claim preclusion, a party must establish three elements: that (1) there exists a prior final judgment on the merits of the suit; (2) the parties to the second matter are identical to or in privity with the parties to the first matter; and (3) the claims in the second matter are based on the same cause of action as those in the first matter. *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017) (quoting *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015)). For parties to be considered in privity for the purposes of claim preclusion, the parties' interests must be "so identical . . . that representation by one party is representation of the other's legal right." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (quoting *State Water Control Bd. v. Smithfield Foods, Ind.*, 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001)).

In order to establish the second element of claim preclusion, the Court would have to regard L&T as essentially the same party, with exactly the same interests, as the tenant assignee. The Trust, which alleges that a "web of complex, incestuous, conflicted, and insider relationships" exist between L&T, Le Tote, HBC, and the Borrower Landlords, clearly regards

9

them as one party. (ECF No. 2, at 102.) Nothing in the record, however, proves that any court would do the same. Thus, the Court finds the Trust's claim preclusion concern wanting.

The Trust also raises the possibility that a tenant assignee might invoke the doctrine of collateral estoppel to prevent the Trust from asserting its rights under the lease documents. Collateral estoppel, also known as issue preclusion, bars the relitigation of issues of fact or law identical to issues which have been actually determined and necessarily decided in previous litigation where the party against whom it is asserted had a full, fair opportunity to litigate. *CentraArchy Rest. Mgmt.*, 806 F. App'x at 178. It applies when

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party *against whom* collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Behrmann v. Houk*, No. 1:16-cv-1228, 2017 U.S. Dist. LEXIS 6465, at *12 (E.D. Va. Jan. 17, 2017) (emphasis added) (finding that collateral estoppel "need not be mutual" because "only the party against whom the doctrine is invoked . . . must be bound by the prior proceeding").

Because the parties do not have to be identical to stop an issue from being relitigated under the doctrine of collateral estoppel, it is conceivable—but not certain—that a different assignee could successfully invoke collateral estoppel to prevent the Trust from litigating its rights under the lease documents. *Liberty Life Ins. Co. v. W. R. Grace & Co., C/A*, No. 87-3147-17, 1990 U.S. Dist. LEXIS 20203, at *5–6 (D.S.C. Jan. 12, 1990) ("Non-mutual issue preclusion is not available as a matter of right. It is a matter of equitable discretion within the court."). Nonetheless, any effect on hypothetical future litigation is "rank speculation" that is too remote to establish standing for appealing a bankruptcy court's order. *In re Urban Broad. Corp.*, 401 F.3d at 245 ("[I]t is not the responsibility of the district court . . . to predict the *res judicata* effect of its orders on a hypothetical future case."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414

10

(2013) (finding that a "speculative chain of possibilities" cannot establish injury in fact even for Article III standing). "Potential pecuniary harm that requires the completion of several steps does not constitute a direct pecuniary impact." *Mar-Bow*, 469 F. Supp. 3d at 532 (collecting cases). The Court, therefore, finds too remote the Trust's concern about the invocation of collateral estoppel by a tenant assignee.

The Trust also worries that HBC could invoke res judicata in the New York litigation between the Trust and HBC. In this New York litigation, the Trust is attempting to enforce HBC's loan guaranty to Le Tote. The Trust worries that HBC could argue that res judicata arising from this litigation prevents the Trust from asserting its rights to the rent in the New York litigation. The Court finds, however, that res judicata with respect to the New York litigation is too remote a possibility to pose a direct and adversary pecuniary harm. Neither L&T nor Le Tote is a party to the New York litigation. While the New York litigation involves HBC's guaranty to pay the rent owed under the master lease, the litigation before this Court concerns the Trust's rights to compel rent from L&T or a tenant assignee. Thus, both the issue (the Trust's rights under the loan guaranty) and the adverse party (HBC) are different from those addressed by the bankruptcy court's October 30 Order on appeal. Res judicata does not apply when the parties and issues are so different. *See CentraArchy Rest. Mgmt.*, 806 F. App'x at 178 (listing criteria for collateral estoppel to apply); *LVNV Funding*, 852 F.3d 367 at 371 (listing criteria for claim preclusion to apply).

Because the possibility of claim preclusion or collateral estoppel is too remote to pose a direct and adverse pecuniary harm to the Trust, the Trust does not have standing to appeal the bankruptcy order.

11

## B. Mootness

Even if the Trust had standing to appeal, the Court would still dismiss this appeal as constitutionally moot. Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. It is well established that, under the case or controversy requirement, a federal court may exercise jurisdiction over a particular claim only if the claim remains "alive throughout the course of litigation, to the moment of final appellate disposition." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (quoting *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1088 (4th Cir. 1991)). "A case becomes moot, and thus deprives federal courts of subject matter jurisdiction, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013)). In other words, a case becomes moot when the appellate court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter." *Id.* (quoting *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010)). When the implementation of a confirmed reorganization plan modifies the rights of the parties such that it is no longer possible to provide effective judicial relief to parties on appeal, courts must dismiss the appeal as moot. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988). Otherwise, courts risk issuing impermissible advisory opinions on a moot issue. *Norfolk S. Ry. Co.*, 608 F.3d at 161; *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (finding that courts do not have the authority to "give opinions upon . . . abstract propositions" that "cannot affect the matter in issue in the case before it" (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Although courts lack the authority to issue advisory opinions, they have the authority to adjudicate disputes where the practical consequences of a decision are not assured, such as disputes in which an indigent civil

12

defendant is financially unable to make a plaintiff whole. *See Chafin v. Chafin*, 568 U.S. 165, 175–76 (2013) (finding that although it was not certain a foreign country would return a minor to the United States, the court could still rule on the issue as long as the judgment was not "simply a matter of academic debate").

Here, the Borrower Landlords, L&T, Le Tote, and HBC assert that the appeal should be dismissed as moot because L&T assigned the lease to a new tenant and neither L&T nor Le Tote remains a party to the lease. Even if the Trust had standing to assert the Borrower Landlords' rights against the tenant assignee, the Borrower Landlords, L&T, Le Tote, and HBC argue there are no rights against the L&T or Le Tote left to enforce.

The Trust argues that the appeal is not moot because the assignment of the lease to a new tenant does not change the Trust's rights under the lease and loan documents. According to the Trust, it still holds the loan; the stores are leased to a different entity associated with HBC; and the loan is in default. Moreover, the Trust argues that its consent to the assignment of the lease does not make the appeal moot.

The Court agrees that the issue of whether the Trust has rights under the lease remains a live controversy. Hypothetically, the Trust could seek to compel rent from the new tenant assignee under the same set of documents. *Cf. Walker v. Grigsby*, No. 06-62, 2006 U.S. Dist. LEXIS 94888, at *6 (D. Md. Apr. 11, 2006) (finding an appeal not constitutionally moot when appellant could "collect [monetary damages] from the Debtors, Appellee, or a third party"). An assignment of an agreement only changes who must perform the agreement's obligations, not the underlying obligations themselves. *In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007).

By contrast, L&T and Le Tote no longer have any legally cognizable interest in the outcome of this dispute; the bankruptcy court's October 30 Order deals only with the Trust's

13

rights against L&T, not the new tenant assignee. Moreover, all parties admit that this Court cannot grant the Trust any relief beyond the hypothetical use of its decision to produce a res judicata effect in other litigation. *Cf. Carr v. King (In re Carr)*, 321 B.R. 702, 707 (E.D. Va. 2005) (finding an appeal constitutionally moot because the monetary relief appellant sought had already been distributed to a third party).

Thus, even if the Court found that the Trust had standing for this appeal, the Court would dismiss the appeal as constitutionally moot.

### C. Equitable Mootness

Even if the Trust had standing to appeal and this appeal were not constitutionally moot, the Court would still dismiss this appeal as equitably moot. The doctrine of equitable mootness is appropriate when reviewing a judgment that may, after time has passed and the judgment has been implemented, prove impractical, imprudent, and therefore inequitable. *Retired Pilots Ass'n of US Airways, Inc. v. US Airways Grp., Inc. (In re US Airways Grp., Inc.)*, 369 F.3d 806, 809 (4th Cir. 2004). Equitable mootness is appropriate when a court is constitutionally able to grant a remedy but chooses not to for prudential reasons. *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) ("There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ('equitable mootness')."); *Walker*, 2006 U.S. Dist. LEXIS 94888, at *8 (noting that a court can find an issue equitably moot when it is not constitutionally moot). The burden is on the party asserting the equitable mootness doctrine to prove that it applies. *In re Anderson*, 349 B.R. 448, 454 n.8 (E.D. Va. 2006) (quoting *S. Pac. Transp. Co. v. Voluntary Purchasing Grps.*, 246 B.R. 532, 534 (E.D. Tex. 2000)).

Equitable mootness often applies in bankruptcy appeals because "bankruptcy judgments frequently result in complex business reorganizations or distributions of assets that would be

difficult for an appellate court to unravel." *Huntington Nat'l Bank v. Shawnee Hills (In re Shawnee Hills, Inc.)*, No. 2:02-0872, 2002 U.S. Dist. LEXIS 23143, at *5 (S.D.W. Va. Nov. 19, 2002) (quoting *Mac Panel Corp. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). While equitable mootness normally applies to appeals of debtor's confirmation plans, it can also apply to appeals of related bankruptcy court orders. *See In re Carr*, 321 B.R. at 702, 707; *McLean Square Assocs., G.P. v. J.W. Fortune, Inc.*, 200 B.R. 128, 132 (E.D. Va. 1996) (finding an appeal of an order allowing lessor appellee to move lessee out of premises equitably moot after it had already been carried out).

> Factors that may aid in a court's determination of equitable mootness include:
>
> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated;[7] (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel Co.*, 283 F.3d at 625. When considering a question of equitable mootness, the court should consider whether all of the factors, "taken together, suggest that, irrespective of the merits of the appeal, it would be imprudent to disturb the Plan" at such a late date. *Mar-Bow*, 578 B.R. at 348 (quoting *In re Anderson*, 349 B.R. at 454). The Fourth Circuit requires lower courts to analyze the factors considering the totality of the circumstances. *Mac Panel*, 283 F.3d at 625.

Although courts must consider all of the factors together, the first and fourth factors are particularly important. A party's failure to seek or obtain a stay of a bankruptcy order is

---

[7] The Bankruptcy Code defines substantial consummation as (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan. 11 U.S.C. § 1101(2). Here, the parties do not dispute that the plan has been substantially consummated.

15

sometimes enough to render an appeal equitably moot.[8] "[W]here the reorganization plan involves intricate transactions or has affected third parties, greater weight may be given to whether the plan has been substantially consummated." *In re Anderson*, 349 B.R. at 457. Courts must dismiss an appeal as equitably moot "when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *Lennar Metro D.C. Partners, Ltd. P'shp. v. McLean Square Assocs. (In re McLean Square Assocs., G.P.)*, No. 95-3161, 1997 U.S. App. LEXIS 3307, at *8 (4th Cir. Feb. 24, 1997) (quoting *Cent. Transp., Inc.*, 841 F.2d at 96). But substantial consummation alone is only enough to justify dismissing an appeal when either "the remedy sought will affect the success of the plan" or substantially "alter the rights of third parties" not before the court. *Mac Panel*, 283 F.3d at 626 (cleaned up) (quoting *Ins. Subrogation Claimants v. U.S. Brass Corp. (In re U.S. Brass Corp.)*, 169 F.3d 957, 961 (5th Cir. 1999)).[9]

---

[8] *See, e.g., Drawbridge Special Opp. Fund, L.P. v. Shawnee Hills, Inc.*, 125 F. App'x 466, 470 (4th Cir. 2005) (finding that after a bankruptcy court order forcing banks to honor employee payroll checks was fully consummated, the appellant's failure to seek a stay of the order made the appeal equitably moot); *Clark v. Council of Unit Owners of the 100 Harborview Drive Condo.*, No. 18-03542, 2019 U.S. Dist. LEXIS 163940, at *10 (D. Md. Sept. 25, 2019) ("In the instances where courts have found that an appeal is not equitably moot, the appellants typically have not only sought a stay, but also obtained one"). *But see U.S. Tr. v. Off. Comm. of Equity Sec. Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338, 346 n.4 (3d Cir. 2003) (declining to heavily weigh the stay factor in an equitable mootness analysis because the appeal did not "necessitate an unraveling of the [reorganization] plan").

[9] *See Bate Land Co. LP v. Bate Land & Timber LLC (In re Bate Land & Timber LLC)*, 877 F.3d 188 (4th Cir. 2017) (finding that when the appellant requests relief that does not seek to undo any aspect of the confirmation plan, the appeal is not equitably moot); *In re Envirodyne Indus.*, 29 F.3d 301, 304 (7th Cir. 1994) (defining equitable mootness as "an application of the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties"); *In re Zenith Elecs. Corp.*, 329 F.3d at 340 (explaining that a court should only invoke equitable mootness when it would otherwise have to "unscrambl[e] complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract" (quoting *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001))).

16

As to the first factor, the parties do not dispute that the Trust neither sought nor obtained a stay against the final order. The Borrower Landlords, Le Tote, L&T, and HBC argue that the Trust's failure to do so should be dispositive as to equitable mootness. The Trust says that the stay would have been futile because the October 30 Order granted no relief to L&T or Le Tote.

Regarding the second factor, all parties agree that the reorganization plan has been substantially consummated. The reorganization plan involves complicated transactions and several third parties, but it is not clear whether the appeal's success would have any effect on the plan because the appeal now involves only the Trust's rights against third parties.

As to the third factor, all parties concede that, regardless of this appeal's outcome, the Trust cannot compel rent from L&T or Le Tote. The Trust continues to dispute the bankruptcy court's October 30 Order because of its effect on the Trust's rights under the lease and loan documents and the res judicata effect it may have on other litigation.

Regarding the fourth factor, the outcome of this appeal will almost certainly affect the rights of third parties not before the Court. In fact, the Trust explicitly states that the reason for the appeal is to affect the rights of L&T's tenant assignee or future assignees. When the only remedies available would prejudice an innocent third party, rather than the debtors, the Court cannot grant relief. *See SBA v. XACT Telesolutions, Inc. (In re XACT Telesolutions, Inc.)*, No. 2005-1230, 2006 U.S. Dist. LEXIS 621, at *30 (D. Md. Jan. 10, 2006) (dismissing an appeal of a bankruptcy confirmation order as equitably moot when the only remedies available prejudiced a good-faith purchaser of the debtor's property, rather than the debtor).

The third and fourth factors weigh heavily in favor of equitable mootness. It would be imprudent to decide an appeal that solely concerns the rights of parties not before this Court without giving these absent parties a chance to be heard. As L&T's reorganization plan has

17

already been substantially consummated and all parties agree that L&T and Le Tote will not be compelled to pay rent under any circumstances, it remains unclear why either L&T or Le Tote should be a party to a proceeding on this issue.

Accordingly, even if the Court could grant a remedy, the Court would dismiss the appeal as equitably moot.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant L&T, HBC, and the Borrower Landlords' motion to dismiss.[10]

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 22 Jul 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[10] Because the Court finds that the Trust lacks standing to appeal the bankruptcy court's October 30 Order and that the appeal is constitutionally and equitably moot, the Court will not address the Trust's request for vacatur.

18